IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION

Civil Action No.: 2:20-cv-00010

| | | |
|---|---|---|
| SHRINERS HOSPITALS FOR CHILDREN, a nonprofit corporation, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | |
| THE PAUL F.M. SHAVER, III, INC. PROFIT SHARING PLAN, THE PAUL F. M. SHAVER, III, INC, EMPLOYEE TRUST, PAUL F. M. SHAVER III, INC., ESTATE OF PAUL F. M. SHAVER, III, JULIA P. LEE, SARAH K. MORRIS, BARRIER ISLAND STATION, INC., BARRIER ISLAND REALTY, INC., JOHN T. LANCASTER, THE JOHN T. LANCASTER, INC. PROFIT SHARING PLAN, PFMS HOLDING, INC., JTL HOLDING, INC., BLACK PELICAN SEAFOOD COMPANY, INC., BLACK PELICAN, LLC, BLACK PELICAN VENTURES, INC., SUGAR CREEK I, INC., SUGAR CREEK II, LLC, and SUGAR CREEK III, LLC, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **COMPLAINT** |
| Defendants. | ) ) ) | |

Plaintiff Shriners Hospitals for Children, by and through undersigned counsel, brings this action under 29 U.S.C. §§ 1132(a)(1)(B), 1132(a)(2) and 1132(a)(3), and under North Carolina law, to recover losses suffered with respect to its interests in The Paul F.M. Shaver, III, Inc. Profit Sharing Plan and The Paul F. M. Shaver, Inc. Employee Trust.

## INTRODUCTION

Plaintiff Shriners Hospitals for Children ("Shriners Hospitals") is a 501(c)(3) nonprofit charitable hospital that provides health care to seriously ill children in 22 locations across North

America, without regard to ability to pay, specializing in orthopedics, burn care, spinal cord injury, and cleft lip and palate. The ability of Shriners Hospitals to provide these services to tens of thousands of children each year depends in part upon the beneficence of its donors.

One of those donors was Paul F. M. Shaver III, a businessman from Dare County, North Carolina, who from time to time piloted transports for Shriners Hospitals to assist burned and injured children. Mr. Shaver died in 2006, and left a substantial portion of his assets to Shriners Hospitals to assist in its mission – a share estimated to be more than $6,000,000 in his estate tax return. However, Shriners Hospitals has not received a single distribution of any amount to date.

At the time of his accidental death at age 65, one of Mr. Shaver's business associates, Julia Lee ("Lee"), served as co-trustee with Mr. Shaver under a profit sharing plan (which owned or controlled the bulk of his business assets) sponsored by Mr. Shaver's company. Lee was also named as a co-executor of Mr. Shaver's estate, along with his companion Sarah Morris ("Morris"). As co-executors of Mr. Shaver's estate, Lee and Morris also controlled Paul F.M. Shaver III, Inc., the sponsor and Plan Administrator of the profit sharing plan, and Lee was the President of that Company. Lee (20%) and Morris (40%) were also beneficiaries of Mr. Shaver's interest in the profit sharing plan, along with Shriners Hospitals (40%). Lee and Morris held personal ownership interests in a number of businesses as well, some of which were also owned in part by the profit sharing plan.

The Estate of Paul F. M. Shaver, III reported that the fair market value of the assets held by the profit sharing plan totaled $14,287,850.00 as of January 30, 2007. Since Mr. Shaver's death, Defendant Lee, while acting in different capacities, has all but completely depleted the profit sharing plan. Defendant Lee has informed Shriners Hospitals that the profit sharing plan now only holds approximately $1,000,000.00 in liquid investments and a note receivable in the form of a

promissory note executed by related parties partially owned by Lee in the approximate amount of $2,360,000.00 which has been past due since March 31, 2014. Defendant Lee, acting as trustee under and president of the plan administrator of the profit sharing plan, has caused this substantial loss in value through transfers in the form of distributions to herself and Sarah Morris as beneficiaries of Mr. Shaver's account in the profit sharing plan, and extremely risky loans to and investments in related companies under severe financial distress with little to no expectation of repayment or return. All distributions were made exclusively to Julia Lee and Sarah Morris even though Shriners Hospitals is entitled to 40% of all of the assets held in Mr. Shaver's account in the profit sharing plan.

The substantial depletion of the assets held by the profit sharing plan was made possible by the multiple fiduciary positions Lee held in the profit sharing plan and as an officer of various related businesses or trustee of other related entities. Lee utilized her multiple fiduciary positions to gain substantial advantage for herself, Morris and other family or friends, to the great detriment of Shriners Hospitals. Lee has engaged in numerous transactions where she acted as fiduciary for different entities with directly conflicting interests, and in which she held an interest – and has always ensured that her interests and Morris' interests were protected, while disregarding the interests of Shriners Hospitals.

Lee's responsibility as trustee under the profit sharing plan was to marshal its assets, convert them to liquid assets if feasible, and distribute them to the beneficiaries of Mr. Shaver's account in the profit sharing plan in accordance with the terms of the profit sharing plan. Instead, Lee raided the profit sharing plan of more than $8,000,000 in cash to support a failing business, reported to Shriners Hospitals that the loans would be repaid upon sale of the business, and then wrote off the loans in their entirety at closing, while repaying herself for loans she made, and

without informing Shriners as to any of her actions. Lee's responsibility as trustee under the profit sharing plan was to assess its liability for the losses associated with the failing business, apply the assets of the profit sharing plan to its debts in proper priority, and call upon the four guarantors of the bank debt to pay their respective portions of any remaining debt, which would have resulted in relatively small losses for the profit sharing plan. Instead, Lee used profit sharing plan assets to fund, almost exclusively, the operations of the failing business, failed to call upon any other guarantors to share liability, and paid herself and other creditors millions from closing while writing off the loans made by the profit sharing plan.

Why would Lee have favored other creditors (besides herself) over the profit sharing plan, when she served as its fiduciary? Lee was the fiduciary for three of the four guarantors, was President of the failing business, and owned a personal interest in, or was a fiduciary for, other creditors that received funds in preference to the profit sharing plan. These multiple conflicts of interest, and Lee's failure to inform Shriners Hospitals of her conflicts and transactions, her deceptive statements in financial statements sent to Shriners Hospitals, and her absence of any effort to gain consent from Shriners Hospitals or the court for any of her acts, allowed her to proceed as she wished among all of her directly conflicting fiduciary positions, to achieve whatever result she desired.

These facts have come to light over the last several months as Shriners Hospitals ultimately was forced to file suit in Dare County, North Carolina to gain access to documents and facts concerning Lee's actions. Through those documents, Shriners Hospitals learned of Lee's numerous conflicts, and that Lee distributed the business assets of the profit sharing plan only to herself and Morris to the exclusion of Shriners Hospitals, in direct violation of the express terms of the Shaver profit sharing plan. Lee distributed to herself and Morris cherry-picked interests in

valuable real estate and businesses to enhance their positions, while distributing nothing to Shriners Hospitals.

Lee raided the Shaver profit sharing plan of more than $8,000,000 in cash, and has paid or distributed exclusively to herself and Morris millions of dollars, while Shriners has received absolutely nothing. Despite this, Lee and Morris as executrices of the Estate of the Paul F.M. Shaver, III have falsely represented to the IRS that Shriners Hospitals has received millions of dollars and is claiming a charitable deduction based on this misrepresentation to the IRS. Shriners Hospitals brings this action to honor the intentions and desires of Paul F. M. Shaver to dedicate a substantial part of his assets to the benefit of its charitable mission, and to recover from Lee, Morris and other recipients of funds, most of whom she served as a fiduciary, the amounts that Mr. Shaver intended to provide to Shriners Hospitals for the purpose of providing excellent charitable medical care for seriously ill children.

## I. PARTIES

### A. *Plaintiff*

1. Plaintiff Shriners Hospitals for Children ("Plaintiff") is a Colorado nonprofit corporation qualified to do business in Florida, and its principal place of business is in Tampa, Florida. Shriners Hospitals has no place of business in North Carolina.

### B. *The Shaver Plan and the Shaver Plan Trust*

2. Defendant The Paul F.M. Shaver, III, Inc. Profit Sharing Plan ("the Shaver Plan") is an employee benefit plan governed by the laws of the State of North Carolina pursuant to the terms of the plan and by the Employee Retirement Income Security Act, 29 U.S.C. § 1001, et. seq. ("ERISA").

3.     Upon information and belief, Paul F. M. Shaver, III ("Paul Shaver") was a participant in the Shaver Plan until his death on July 30, 2006. The interest and account held by Paul Shaver in the Shaver Plan shall hereinafter be referred to as the "Shaver Account."

4.     The following are beneficiaries of the Shaver Account: (i) Plaintiff is entitled to 40% of Paul Shaver's account; (ii) Morris is entitled to 40% of Paul Shaver's account; and (iii) Lee is entitled to 20% of Paul Shaver's account.

5.     Section 9.06(c) of the Shaver Plan, as amended, requires that following Paul Shaver's death, the account balance held by Paul Shaver in the Shaver Plan had to be divided into separate accounts for each beneficiary, gains and losses to be allocated to the account of each beneficiary on a pro-rata basis, and any distribution made to a beneficiary to be allocated to the account of the beneficiary receiving the distribution. Furthermore, Section 9.03 of the Shaver Plan requires Lee as Plan Administrator of the Shaver Plan, to act in a uniform and non-discriminatory manner. Section 6.02(D)(2) of the Shaver Plan and Internal Revenue Code regulations required the entire interest of Shriners Hospitals in the Shaver Plan to be distributed to it within five (5) years of Paul Shaver's death, or by July 30, 2011. Plaintiff has never received an annual statement of its interest in the Shaver Plan, showing gains and losses thereto.

6.     Defendant The Paul F. M. Shaver, Inc. Employee Trust (the "Shaver Plan Trust") is a trust upon information and belief situated in North Carolina and established pursuant to Section 1.31 of the Shaver Plan which holds, and has held, the funds, assets and property of the Shaver Plan at all relevant times.

7.     Plaintiff joins the Shaver Plan and the Shaver Plan Trust as party defendants pursuant to Rule 19(a) of the Federal Rules of Civil Procedure to ensure that complete relief may

be granted to Plaintiff. Throughout this Complaint the Shaver Plan and the Shaver Plan Trust are collectively referred to as the "Shaver Plan."

### C. *Defendants*

8. Defendant Paul F. M. Shaver, III, Inc. ("PFMS, Inc.") is a corporation duly formed and existing under the laws of the State of North Carolina, with its principal office in Dare County, North Carolina.

9. At all relevant times, Defendant PFMS, Inc. has been the plan administrator and the employer sponsoring the Shaver Plan, and a fiduciary of the Shaver Plan under ERISA and North Carolina law.

10. Defendant PFMS Inc. is one hundred percent (100%) owned by Defendant Estate of Paul F.M. Shaver, III (the "Shaver Estate"), which is currently open and being administered in Dare County, North Carolina under File No. 06-E-33.

11. The Shaver Plan was established by Defendant PFMS Inc. effective May 1, 1981.

12. Paul Shaver died on or about July 30, 2006, leaving a Last Will and Testament which has been duly admitted to probate in Dare County, North Carolina under File No. 06-E-33. The Will names Julia P. Lee and Sarah K. Morris as Executrices, and on or about 16 August 2006, they were qualified to serve as such and granted letters testamentary by the Dare County, North Carolina Clerk of Superior Court.

13. Defendant Julia P. Lee ("Lee") at all relevant times has been the sole trustee under the Shaver Plan and a fiduciary of the Shaver Plan under ERISA and North Carolina law.

14. Upon information and belief, Defendant Lee at all relevant times has been an employee of and the president of, and has exercised exclusive control over, Defendant PFMS, Inc., the administrator of the Shaver Plan.

15.    Upon information and belief, Defendant Lee is a citizen and resident of Dare County, North Carolina.

16.    Upon information and belief, Defendant Morris is a citizen and resident of Dare County, North Carolina.

17.    Defendant Barrier Island Station, Inc. ("BIS, Inc.") is a corporation duly formed and existing under the laws of the State of North Carolina, with its principal office in Dare County, North Carolina.

18.    Defendant Barrier Island Realty, Inc. ("BIR, Inc.") is a corporation duly formed and existing under the laws of the State of North Carolina, with its principal office in Dare County, North Carolina.

19.    Upon information and belief, Defendant John T. Lancaster ("John Lancaster") is a citizen and resident of Dare County, North Carolina.

20.    Upon information and belief, Defendant The John T. Lancaster, Inc. Profit Sharing Plan (the "Lancaster Plan") is a profit sharing plan governed by the law of the State of North Carolina pursuant to its terms.

21.    Defendant PFMS Holding, Inc. is a corporation duly formed and existing under the laws of the State of North Carolina, with its principal office in Dare County, North Carolina, and is being named as a party defendant pursuant to Rule 19(a) of the Federal Rules of Civil Procedure to ensure that complete relief may be granted and that all proper parties are before the Court.  Upon information and belief, Defendant PFMS Holding, Inc. owns a 49% interest in BIS, Inc. and is owned 100% by the Shaver Plan.

22.    Defendant JTL Holding, Inc. is a corporation duly formed and existing under the laws of the State of North Carolina, with its principal office in Dare County, North Carolina, and

is being named as a party defendant pursuant to Rule 19(a) of the Federal Rules of Civil Procedure to ensure that complete relief may be granted and that all proper parties are before the Court. Upon information and belief, Defendant JTL Holding, Inc. owns a 49% interest in BIS, Inc. and is owned 100% by the Lancaster Plan.

23.     Defendant Black Pelican Seafood Company, Inc. is a corporation duly formed and existing under the laws of the State of North Carolina, with its principal office in Dare County, North Carolina.

24.     Defendant Black Pelican, LLC is a limited liability company duly formed and existing under the laws of the State of North Carolina, with its principal office in Dare County, North Carolina. Upon information and belief, Defendant Lee and Defendant Morris are each 50% member/managers of Defendant Black Pelican, LLC, and as alleged above, Defendants Lee and Morris are citizens and residents of Dare County, North Carolina.

25.     Defendant Black Pelican Ventures, Inc. is a corporation duly formed and existing under the laws of the State of North Carolina, with its principal office in Dare County, North Carolina.

26.     Defendants Black Pelican Seafood Company, Inc., Black Pelican, LLC, and Black Pelican Ventures, Inc. are sometimes hereinafter referred to collectively as "the Black Pelican Defendants."

27.     Defendant Sugar Creek I, Inc. ("Sugar Creek I") is a corporation duly formed and existing under the laws of the State of North Carolina, with its principal office in Dare County, North Carolina.

28.     Defendant Sugar Creek II, LLC ("Sugar Creek II") is a limited liability company duly formed and existing under the laws of the State of North Carolina, with its principal office in

Dare County, North Carolina. Upon information and belief, Ervin Bateman and Teresa Bateman are each 50% member/managers of Defendant Sugar Creek II, LLC, and they are citizens and residents of Dare County, North Carolina.

29. Defendant Sugar Creek III, LLC ("Sugar Creek III") is a limited liability company duly formed and existing under the laws of the State of North Carolina, with its principal office in Dare County, North Carolina. Upon information and belief, Defendant Lee and Defendant Morris are each member/managers of Sugar Creek III, LLC, and as alleged above, Defendants Lee and Morris are citizens and residents of Dare County, North Carolina.

D. *Positions, Capacities and Interests of Defendant Lee*

30. Defendant Lee at all relevant times held, upon information and belief, the following positions, capacities, and interests:

> a. President of the Sponsor and Plan Administrator of the Shaver Plan;
>
> b. 20% beneficiary of the Shaver Account;
>
> c. Trustee of the Shaver Plan Trust under the Shaver Plan;
>
> d. President of Defendant PFMS, Inc.
>
> e. Co-Executrix of Defendant Shaver Estate;
>
> f. Beneficiary of Defendant Shaver Estate;
>
> g. Co-Trustee under Defendant Lancaster Plan;
>
> h. President and 2% Shareholder of Defendant BIS, Inc.;
>
> i. President and 2% Shareholder of Defendant BIR, Inc.;
>
> j. President and sole Director of Defendant PFMS Holding, Inc.;
>
> k. Secretary and treasurer of Defendant JTL Holding, Inc.;

l.      President, one of two Directors, and 34.8% Shareholder of Defendant Black Pelican Seafood Company, Inc.;

m.      Member/Manager and 50% owner of Defendant Black Pelican, LLC;

n.      Secretary, treasurer, one of three Directors, and 25% Shareholder of Defendant Black Pelican Ventures, Inc.;

o.      Treasurer, one of two Directors, and 10% Shareholder of Defendant Sugar Creek I; and

p.      Member/Manager and 50.001% owner of Defendant Sugar Creek III.

## II.      JURISDICTION AND VENUE

31.      The Court has jurisdiction over the subject matter of this case (a) pursuant to 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331; and (b) pursuant to 28 U.S.C. § 1332(a), and the amount in controversy exceeds $75,000.00.

32.      Venue of this case is proper pursuant to 29 U.S.C. § 1132(e)(2) or 28 U.S.C. § 1391(b).

## III.      FACTUAL ALLEGATIONS

**1.      The Barrier Island Station Condominium Project**

*A.      More than $8,000,000.00 in Unsecured Loans Made by Shaver Plan to Barrier Island Station, Inc. and Payoff of RBC Centura Bank Loan.*

33.      Paul Shaver and Defendant John Lancaster partnered together in a condominium project known as Barrier Island Station ("BIS Condo Project").

34.      Upon information and belief, Paul Shaver and Defendant John Lancaster established identical ownership structures through various companies for their respective interests in the BIS Condo Project.

35.     Upon information and belief, prior to the death of Paul Shaver, the Shaver Plan and Defendant Lancaster Plan each owned an undivided one-half (1/2) interest as tenants in common in certain real property in Dare County, North Carolina which was intended to be used for the purpose of development as part of the BIS Condo Project ("BIS Real Estate").

36.     Upon information and belief, the BIS Real Estate consisted of (a) two office buildings known as the Kitty Hawk Office Building and Duck Office Building (the "Offices"); and (b) undeveloped real property (the "Undeveloped Land").

37.     Upon information and belief, the Shaver Plan and Defendant Lancaster Plan from time to time would transfer parcels of the Undeveloped Land to Defendant BIS, Inc., which would develop said property for the sale of timeshare interests.

38.     Upon information and belief, at all times from the death of Paul Shaver until its assets were sold in 2015, BIS, Inc. owned the developed portion of the property described in Paragraph 37 above and the business operations of the BIS Condo Project.

39.     At the time of Paul Shaver's death, Defendant BIS, Inc. was owned 49% by Defendant PFMS Holding, Inc., 49% by Defendant JTL Holding, Inc and 2% by Defendant Lee.

40.     The Shaver Plan owned 100% of PFMS Holding, Inc. and upon information and belief Defendant Lancaster Plan owned 100% of Defendant JTL Holding, Inc.

41.     Upon information and belief, Defendant Lee was at all relevant times a co-trustee and fiduciary under Defendant Lancaster Plan under ERISA and North Carolina law.

42.     Upon information and belief, Defendant Lee was at all relevant times a trustee under both the Shaver Plan and Defendant Lancaster Plan.

43.     Upon information and belief, at all relevant times Defendant Lee was employed by and was president and one of two directors, along with Defendant John Lancaster, of Defendant BIS, Inc.

44.     Upon information and belief, prior to 2006, Defendant BIS, Inc. obtained a line-of-credit or other form of loan from RBC Centura Bank ("the RBC BIS Loan") to fund the development and/or operations of the BIS Condo Project.

45.     Upon information and belief, the RBC BIS Loan was guaranteed jointly and severally by (i) the Shaver Plan, (ii) Defendant Lancaster Plan, (iii) Paul Shaver individually (subsequently Defendant Shaver Estate upon his death on July 30, 2006), (iv) Defendant John Lancaster individually and (v) Defendant BIR, Inc.

46.     Defendant PFMS, Inc. and Defendant Lee, as trustee of the Shaver Plan and president and sole director of Defendant PFMS, Inc., upon information and belief, caused the Shaver Plan to make loans up to and in excess of $8,000,000.00 to Defendant BIS, Inc. (the "Shaver Plan BIS Loans").

47.     Upon information and belief, in recognition of the Shaver Plan BIS Loans, Defendant Lee as President of Defendant BIS, Inc. issued an unsecured promissory note dated April 16, 2009 in favor of the Shaver Plan under which she was trustee, in the amount of at least $8,181,163.00.

48.     Upon information and belief, the Shaver Plan BIS Loans constituted a substantial majority, or substantially all, of the liquid assets of the Shaver Plan.  Upon information and belief, in order to make these loans, Defendant Lee sold assets of the Shaver Plan, borrowed monies against assets of the Shaver Plan, and disbursed the cash balance in the Shaver Plan at the time of

Paul Shaver's death, transferring these proceeds and liquid assets to Defendant BIS, Inc. or to third parties on behalf of Defendant BIS, Inc.

49.     Upon information and belief, Defendant PFMS, Inc. and Defendant Lee, as trustee of the Shaver Plan and as president and sole director of Defendant PFMS, Inc., failed to protect the Shaver Plan by failing to secure the Shaver Plan BIS Loan in any fashion.

50.     Upon information and belief, using a portion of the Shaver Plan BIS Loans, Defendant Lee as president and sole director of Defendant BIS, Inc. paid off the entirety of the RBC BIS Loan of more than $3,000,000.00 in 2014 without contribution or payment from any of the co-guarantors, Defendant Lancaster Plan, Defendant Shaver Estate, Defendant John Lancaster and Defendant BIR, Inc.  The Shaver Plan was one of five guarantors of the RBC BIS Loan, and as such the Shaver Plan was not responsible for paying off the entirety of the RBC BIS Loan, but rather only its pro-rata share, despite Defendant Lee's wrongful act of using Shaver Plan funds to pay off the entire loan.

51.     Defendant PFMS, Inc.'s and Defendant Lee's payoff of the RBC BIS Loan with Shaver Plan assets unjustly benefitted—to the detriment of Plaintiff and the Shaver Plan—the guarantors of the loan, including Defendant Lancaster Plan, Defendant Shaver Estate, Defendant John Lancaster and Defendant BIR, Inc., none of whom made payments on the RBC BIS Loan.

52.     After the payoff of the RBC BIS Loan with Shaver Plan funds, Defendant PFMS, Inc. and Defendant Lee have failed to pursue any right of subrogation that the Shaver Plan has had against Defendant BIS, Inc. and any right of contribution that the Shaver Plan has had against any of the co-guarantors of the RBC BIS Loan.

53.     Upon information and belief, between 2006 and 2014, Defendant Lee, while serving as both co-trustee and co-fiduciary under the Lancaster Plan and trustee under the Shaver

Plan, caused the Defendant Lancaster Plan to make loans of approximately $1,000,000.00 to Defendant BIS, Inc., and during the same period Defendant Lee caused the Shaver Plan to make the Shaver Plan BIS Loans in excess of $8,000,000.00 to Defendant BIS, Inc.

54. Upon information and belief, the BIS Condo Project was operating at a loss before the death of Shaver, and at all times when the Shaver Plan made loans to Defendant BIS, Inc., Defendant Lee had no expectation (i) that the BIS Condo Project would produce income or value for the Shaver Plan, or (ii) that Defendant BIS, Inc. would be able to repay the loans in excess of $8,000,000.00 made to it by the Shaver Plan.

55. Upon information and belief, in or around September 2015 all assets and real property of the BIS Condo Project, including the BIS, Inc. assets and business, the Offices, and the Undeveloped Land, were sold to a third party, Heritage Investments, LLC, a Virginia limited liability company.

56. The estate tax return of the Shaver Estate reported a value for the Plan's assets on July 30, 2006 of $15,411,472.00. By January 15, 2016, the assets of the Shaver Plan were depleted to $2,314,814.00 according to its Form 5500 return. Shriners Hospitals, a 40% beneficiary of the Shaver Account, has yet to receive any distribution of any kind from the Shaver Plan.

**B.** **_Distribution and Subsequent Conveyance of the Black Pelican Restaurant Property_**

57. Defendant Black Pelican Seafood Company, Inc. owns the operating business of a restaurant known as Black Pelican Oceanfront Restaurant in Dare County, North Carolina.

58. Black Pelican Seafood Company, Inc. leased the building and land for Black Pelican Oceanfront Restaurant (the "Black Pelican Restaurant Property") from the Shaver Plan until, upon information and belief on November 13, 2008, Defendant Lee, acting as president of the plan administrator, Defendant PFMS, Inc. and as trustee and fiduciary under the Shaver Plan,

distributed a one-half undivided interest in the Black Pelican Restaurant Property to each of Defendant Lee and Defendant Morris as beneficiaries of the Shaver Account, while failing to make a transfer or distribution of the same asset or other plan assets of equivalent value to Plaintiff as beneficiary, as required by the terms of Paul Shaver's beneficiary designation.

59.     Upon information and belief, Defendant Lee and Defendant Morris, acting in their individual capacities, transferred their interests in the Black Pelican Restaurant Property to Black Pelican, LLC, of which Defendant Lee is a member/manager and 50% owner and Defendant Morris is a member and 50% owner, respectively. This transfer was made in the same deed as the distribution of the Black Pelican Restaurant Property from the Shaver Plan to Defendant Lee and Defendant Morris.

60.     On October 10, 2008, one month before the distribution of the Black Pelican Restaurant Property, Defendant Lee acting as Trustee under the Shaver Plan executed a deed of trust in favor of RBC Centura Bank. A security interest in the Black Pelican Restaurant Property was granted to RBC Centura Bank in exchange for a loan of an amount of at least $2,460,000.00 according to the deed of trust executed by Lee as trustee of the Shaver Plan.

61.     The Shaver Plan financial statements for year end March 31, 2009 state that the Black Pelican Restaurant Property was "valued at $3,430,000 on July 30, 2006, and was distributed out at that value less related debt on December 31, 2008." Defendant Lee as trustee under the Shaver Plan distributed the Black Pelican Restaurant Property to herself and Morris at a total value of $190,000.00. Thus, according to the financial statements, there is $780,000 of value unaccounted for in this distribution.

62.     Upon information and belief, the loan proceeds were not properly accounted for as plan assets, no portion was distributed to Plaintiff as beneficiary of the Shaver Account, and the financial statements of the Shaver Plan do not state what the loan proceeds were used for.

63.     Upon information and belief, the loan proceeds were improperly used for the benefit of or transferred to Defendant Lee, Defendant Morris, and/or an entity in which Defendant Lee and/or Defendant Morris held an interest in or acted on behalf of in a fiduciary capacity.

## C.     *Loans by Defendant Lee and Defendant Black Pelican Seafood Company, Inc.*

64.     The shareholders of Defendant Black Pelican Seafood Company, Inc. and their respective interests are listed as follows:

    a.      Defendant Lee owns 34.8%

    b.      The Shaver Estate owns 19.6%

    c.      Defendant Morris owns 26%

    d.      Sarah Morris Trust owns 19.6%

65.     Defendant Lee effectively controls over 50% of Defendant Black Pelican Seafood Company, Inc. due to her individual ownership interests, and her positions as executor of Defendant Shaver Estate and trustee of the Sarah Morris Trust.

66.     Defendant Lee is and was at all relevant times also the President of Defendant Black Pelican Seafood Company, Inc.

67.     Upon information and belief, Defendant Lee personally loaned $600,000.00 to Defendant BIS, Inc. and, in return, Defendant BIS, Inc. (with Defendant Lee as President) granted Lee a security interest for the entire amount of her loan that gave Lee a priority position to the Shaver Plan.

68.     Upon information and belief, Defendant Black Pelican Seafood Company, Inc. loaned approximately $2,000,000.00 to Defendant BIS, Inc. and, in return, Defendant BIS, Inc. (with Defendant Lee as President) granted Defendant Black Pelican Seafood Company, Inc. a security interest in the entire amount of its loan that gave the Black Pelican a priority position to the Shaver Plan.

### D.     _Defendant Lee's Distributions of Sale Proceeds of Defendant BIS, Inc._

69.     Upon information and belief, the assets of Defendant BIS, Inc. were sold for approximately $5,800,000.00 to Heritage Investments, LLC in or around September 2015.

70.     Upon information and belief, Defendant Lee as President of Defendant BIS, Inc. paid and/or allocated $2,750,000.00 of the $5,800,000.00 for closing expenses and "deductions" from the sale of the assets of Defendant BIS, Inc.  Plaintiff has not been informed and is not aware of the disposition of approximately $2,133,000.00 of the deductions.  The net proceeds paid after closing expenses and deductions is approximately $2,956,000.00.

71.     The amount owed to the Shaver Plan at the time the closing proceeds were paid was upon information and belief in excess of $8,000,000.00.

72.     Defendant Lee paid $615,594.69 of the proceeds from the sale of the assets of Defendant BIS, Inc. to herself personally, upon information and belief in full repayment of her $600,000.00 secured loan to Defendant BIS, Inc.

73.     Upon information and belief, Defendant Lee paid approximately $1,559,010.34 of the proceeds from the sale of the assets of Defendant BIS, Inc. to Defendant Black Pelican Seafood Company, Inc., Defendant Black Pelican, LLC and/or Defendant Black Pelican Ventures, Inc. in repayment of the $2,000,000.00 secured loan made by Defendant Black Pelican Seafood Company, Inc. to Defendant BIS, Inc.

74.     Upon information and belief, Defendant Lee in her fiduciary capacities for Black Pelican Seafood Company, Inc., Defendant Black Pelican, LLC and/or Defendant Black Pelican Ventures, Inc. accepted her distribution of $1,559,010.34 of the proceeds from the sale of the assets of Defendant BIS, Inc.

75.     Upon information and belief, Defendant Lee as President of Defendant BIS, Inc. paid $262,087.59 of proceeds from the sale of the assets of Defendant BIS, Inc. each to the Shaver Plan and Defendant Lancaster Plan.

76.     Upon information and belief, Defendant PFMS, Inc. and Defendant Lee, as trustee and fiduciary under the Shaver Plan and as president and sole director of Defendant PFMS, Inc., accepted for the Shaver Plan the distribution of $262,087.59 of the proceeds from the sale of the assets of Defendant BIS, Inc. and did not seek full repayment or contest this allocation of sales proceeds.

77.     Upon information and belief, Defendant Lee, as co-trustee and co-fiduciary of Defendant Lancaster Plan, accepted for Defendant Lancaster Plan the distribution of $262,087.59 of the proceeds from the sale of the assets of Defendant BIS, Inc.

78.     At the time of these distributions, upon information and belief, Defendant BIS, Inc. owed in excess of $8,000,000.00 to the Shaver Plan, and approximately $1,500,000.00 to the Defendant Lancaster Plan.  Upon information and belief, Defendant PFMS, Inc. and Defendant Lee as trustee of the Shaver Plan and president and sole director of Defendant PFMS, Inc., caused the Shaver Plan to forgive all sums owed to the Shaver Plan and Defendant Lancaster Plan, and made the distributions described in Paragraph 75 above to the two plans as equal owners.

79.     Upon information and belief, the remaining distributions of the proceeds from the sale of the assets of Defendant BIS, Inc. were made by Defendant Lee as follows:

a. $91,791.00 to Gray and Lloyd, LLP for a past invoice;

b. $25,000.00 to Sammy Moore;

c. $25,000.00 to Eddie Goodrich; and

d. $966.67 to "Calfee" for an invoice.

80. Defendant PFMS, Inc. and Defendant Lee, as trustee of the Shaver Plan and president and sole director of Defendant PFMS, Inc., made no effort to recoup from the sale proceeds the vast majority of the more than $8,000,000.00 in loans made by the Shaver Plan to Defendant BIS, Inc., although she controlled and made all distributions of the proceeds from the sale of the assets of Defendant BIS, Inc.

81. Defendant Lee did not inform Plaintiff that the transaction had been closed, despite Plaintiff's repeatedly expressed desire to be informed regarding matters affecting the Shaver Plan and the sale of the BIS Condo Project.

82. Plaintiff's first notice of the closing of the sale of the BIS Condo Project in September 2014, and of Defendant Lee writing off the loans owed to the Shaver Plan, came from Plaintiff's review of a financial statement for the Shaver Plan received from Defendant Lee in response to a request from Plaintiff in 2016, well over a year after the sale of the assets. Plaintiff had made numerous requests prior to receiving said financial statement to be kept apprised of the status of the sale of the project by Lee, through her counsel, but was not informed when the sale was closed, or at any other time, discovering the same only through requesting financial documents for the Shaver Plan.

E. *Defendant Lee's Distributions of Sale Proceeds of Real Estate Related to BIS Condo Project*

83.     Upon information and belief, the Shaver Plan and Defendant Lancaster Plan each owned a one-half undivided interest in the Offices and the remaining Undeveloped Land during or about September 2014.

84.     Upon information and belief, the Offices and the remaining Undeveloped Land were sold concurrently with the other business and assets of the BIS Condo Project to Heritage Investments, LLC in or around September 2014.

85.     Upon information and belief, the total purchase price for the Offices and the remaining Undeveloped Land was approximately $2,825,000.00 and net proceeds after payment of liens and closing expenses was approximately $2,078,000.00.

86.     Upon information and belief, Defendant Lee paid half of these net proceeds (or approximately $1,039,000.00) each to the Shaver Plan and Defendant Lancaster Plan.

F.      ***Defendant Lee's Concealment, Misrepresentations, Misinformation and Failure to Disclose Information to Shriners Hospitals relating to the Black Pelican Restaurant Property and BIS Condo Project***

87.     Defendant PFMS, Inc. as plan administrator, and Defendant Lee as trustee under the Shaver Plan and as president and sole director of Defendant PFMS, Inc., breached their fiduciary duties to Plaintiff by failing to disclose and actively concealing from Plaintiff, despite Plaintiff's prior requests to be informed on all aspects and matters relating to distributions and transfers from the Shaver Plan, at least the following information:

        a.      The transfer of the Black Pelican Restaurant Property from the Shaver Plan to Defendant Lee and Defendant Morris, and their subsequent transfer of the same to Defendant Black Pelican, LLC, owned 50/50 by Defendant Lee and Defendant Morris without distribution of property of equivalent value to Plaintiff.

b.     Upon information and belief, the improper use or transfer in loan proceeds from RBC Centura Bank, secured by the Black Pelican Restaurant Property, to Defendant Lee, Defendant Morris, and/or an entity in which Defendant Lee and/or Defendant Morris held an interest in or acted on behalf of in a fiduciary capacity.

88.     Defendant PFMS, Inc. and Defendant Lee as president and sole director of Defendant PFMS, Inc. failed to provide and actively concealed information requested of Defendant Lee by Plaintiff concerning the sale of the BIS Condo Project and the distribution of proceeds from the same.

89.     Prior to the sale of the BIS Condo Project, Defendant PFMS, Inc. and Defendant Lee failed to disclose and actively concealed from Plaintiff the details of the sale, including but not limited to the identity of the purchaser, the assets to be sold, the agreed sale price, the purchase-sale agreement and any terms thereof, the intended distributions of sale proceeds, the fact that Defendant Lee and her controlled entities had also made loans and had secured herself and her controlled entities with respect thereto in superior position to the Shaver Plan, and all negotiations and plans relating to the same, despite Plaintiff's request to Defendant Lee to be kept informed of all these matters before the sale of the BIS Condo Project.

90.     Plaintiff was forced to file an action before the Clerk of Dare County, North Carolina in order to gain information through discovery relative to the assets of the Shaver Estate and the Shaver Plan.

91.     Prior to the sale of the BIS Condo Project, Defendant Lee as trustee and fiduciary under the Shaver Plan and as president and sole director of Defendant PFMS, Inc., the plan administrator, through her attorney, informed Plaintiff that the sale of the BIS Condo Project needed to be closed so the parties would know how much money would be available to the Shaver

Plan to distribute to the beneficiaries, and provided Plaintiff with financial statements for the Shaver Plan that showed the loans from the Shaver Plan due in full, with no reserve or adjustment of any kind. Said financial statements included notes stating that the proceeds of the sale would be used to repay a portion of the loans that the Shaver Plan made to Defendant BIS, Inc. However, Defendant Lee wrote off the Shaver Plan's loans to Defendant BIS, Inc. in their entirety, upon information and belief concurrently with the closing of the sale.

92. Defendant PFMS, Inc. as plan administrator, and Defendant Lee as trustee under the Shaver Plan and as president and sole director of Defendant PFMS, Inc., breached her fiduciary duty to Plaintiff by failing to disclose and actively concealing from Plaintiff, despite Plaintiff's prior requests to be informed on all aspects and matters of the sales of the BIS Condo Project at least the following information:

a. Her plans and intentions for distributing the proceeds from the sale of Defendant BIS, Inc. and the real estate of the BIS Condo Project, and her execution of these plans and intentions;

b. Her plan and intention to write off the loans in excess of $8,000,000.00 made by the Shaver Plan to Defendant BIS, Inc., and her execution of this plan and intention;

c. Her positions as officers and fiduciaries of Defendant Lancaster Plan and the Black Pelican Defendants, whose interests were directly adverse to the interests of the Shaver Plan in the sale of the BIS Condo Project and the distributions of the proceeds for the same;

d. The existence of the secured loans made by Defendant Lee personally and Defendant Black Pelican Seafood Company, Inc. to Defendant BIS, Inc., and that said loans had priority over the unsecured loans in excess of $8,000,000.00 that Defendant Lee caused the Shaver Plan to make to Defendant BIS, Inc.; and

e.      The payoff of the RBC BIS Loan of more than $3,000,000.00 solely with Shaver Plan funds, thereby ignoring the loan guarantees of Defendant Shaver Estate, Defendant Lancaster, Defendant Lancaster Plan, and Defendant BIR, Inc. and unjustly benefitting these Defendants.

**2.      The Sugar Creek Restaurant Project**

      *A.      **Transfers of Funds from Shaver Plan to Sugar Creek III and/or Sugar Creek II***

93.      Upon information and belief, at all relevant times Defendant Sugar Creek III and Defendant Sugar Creek II have each owned as tenants in common an undivided one-half interest in two tracts of real property in Dare County, North Carolina ("the Sugar Creek II and III Real Property"), which they have leased to Defendant Sugar Creek I since 2005 for the operation of a restaurant known as Sugar Creek Seafood Restaurant, upon information and belief without a written lease agreement.

94.      Defendant Sugar Creek III was owned 100% by the Shaver Plan until on or around December 31, 2007, when upon information and belief Defendant Lee as trustee and fiduciary under the Shaver Plan distributed Defendant Sugar Creek III to herself and Defendant Morris as beneficiaries of the Shaver Account (while failing, and continuing to fail, to make a distribution of the same or of assets of equivalent amount to Plaintiff as beneficiary).

95.      Upon information and belief, since on or about December 31, 2007, Defendant Lee has owned approximately 50.001% and is member/manager of Defendant Sugar Creek III, and Defendant Morris has owned approximately 49.999% and is a member of Defendant Sugar Creek III.

96.      According to an appraisal prepared by Gregory Bourne on behalf of the Shaver Estate dated October 15, 2008 (the "Bourne 2008 Appraisal"), the value of the fee simple interest

of the Sugar Creek II and III Real Property with improvements was $1,955,000.00 on January 30, 2007.

97.     According to an appraisal prepared by Banister Financial, Inc. on behalf of the Shaver Estate dated October 8, 2008 (the "Banister 2008 Appraisal"), the value of Defendant Sugar Creek III's one-half undivided interest in the Sugar Creek II and III Real Property with improvements was $500.00 on January 30, 2007.

98.     Upon information and belief, Defendant Lee as trustee and fiduciary under the Shaver Plan distributed an approximate 50% ownership interest in Defendant Sugar Creek III to herself and Defendant Morris, respectively, on December 31, 2007 without knowing the value of these distributions as the distributions predated the Bourne 2008 Appraisal by approximately nine months.

99.     According to an appraisal prepared by Banister Financial, Inc. on behalf of the Shaver Estate dated September 11, 2012 (the "Banister 2012 Appraisal"), the fair market value of the Sugar Creek II and III Real Property was $3,007,150.00 on June 1, 2010.

100.     RBC Centura Bank loaned Defendant Sugar Creek II and Defendant Sugar Creek III $1,700,000.00 on or before March 14, 2005 (the "RBC Sugar Creek Loan"), and the Sugar Creek II and III Real Property was encumbered by a deed of trust granted by Defendant Sugar Creek II and Defendant Sugar Creek III for the benefit of RBC Centura Bank in the amount $1,700,000.00, recorded on March 15, 2005 at Book 1619, Page 169 of the Dare County Registry.

101.     The Sugar Creek II and III Real Property is presently encumbered by an amended and restated deed of trust granted by Defendant Sugar Creek II and Defendant Sugar Creek III for the benefit of PNC Bank, National Association (the successor of RBC Centura Bank) in the amount of $1,001,573.02, recorded on March 5, 2015 at Book 2006, Page 137 of the Dare County Registry.

Upon information and belief, the balance due on the underlying note as of December 31, 2017 was $638,004.00.

102. Upon information and belief, Defendant Lee as trustee and fiduciary under the Shaver Plan transferred in excess of $2,360,000.00 from the Shaver Plan to Defendant Sugar Creek III and/or Defendant Sugar Creek II between 2005 and 2008, after the RBC Sugar Creek Loan was made, for renovations to the Sugar Creek II and III Real Property. Upon information and belief Defendant Lee as trustee and fiduciary under the Shaver Plan accepted a promissory note dated April 1, 2008 for some portion of this amount, but no payments have been made in accordance with said note since the funds were transferred by Lee. Upon information and belief, the full balance of the note in the approximate amount of $2,360,000.00 was due and payable in full March 31, 2014. Upon information and belief, no amount has been paid to date on this promissory note.

103. As trustee under the Shaver Plan, Defendant Lee's failure to enforce the promissory note of $2,360,000.00 due on March 31, 2014 effectively constitutes the forgiveness of this debt and an outright transfer of these funds from the Shaver Plan to Defendant Sugar Creek III and/or Defendant Sugar Creek II.

104. The Shaver Plan's transfers in excess of $2,360,000.00 to Defendant Sugar Creek III and/or Defendant Sugar Creek II are not, and have never been, secured by a deed of trust on record in the Dare County Registry.

105. Upon information and belief, Defendant Lee as trustee and fiduciary under the Shaver Plan has not attempted to enforce the promissory note dated April 1, 2008 against Defendant Sugar Creek II or Defendant Sugar Creek III.

106. Upon information and belief, Defendant Lee knew or should have known when the Shaver Plan transferred in excess of $2,360,000.00 to Defendant Sugar Creek III and/or Defendant

Sugar Creek II between 2005 and 2008 that the Shaver Plan would not receive repayment in accordance with the terms of the promissory note to the Shaver Plan.

107.    Upon information and belief, the approximately $2,360,000.00 the Shaver Plan transferred to Defendant Sugar Creek III and/or Defendant Sugar Creek II between 2005 and 2007 was originally characterized as an investment by the Shaver Plan, but in September 2008 the Shaver Plan attempted to reclassify approximately half of this investment as a loan made by the Shaver Plan.

108.    According to the financial statement prepared by Debbie J. Burgess, CPA for the Shaver Plan (the "Shaver Plan Financial Statements") for year-end March 31, 2007, the Shaver Plan invested $648,000.00 in Defendant Sugar Creek III on March 15, 2005, $47,002.00 in Defendant Sugar Creek III in 2006 and $1,204,570.00 in Defendant Sugar Creek III in 2007.

109.    In 2008 the Shaver Plan appears to have tried to reclassify the investment of $1,204,570.00 in 2007 as a loan, as the Shaver Plan Financial Statements for year-end March 31, 2008 states:

    a.    "On March 15, 2005, the Trust [Shaver Plan] invested $648,064.00 in Sugar Creek III, LLC.  Since this initial investment, further investments of $47,603.00 were made, and cumulative profits of $7,273.00 were recognized.  The investment was valued at $500.00 on July 30, 2006 and distributed out at that value on December 31, 2007"; and

    b.    "In addition the trust [Shaver Plan] loaned the LLC [Sugar Creek III, LLC] of $1,743,561.00 for renovations, which was reported in prior years combined with the investment."

110.    The Shaver Plan Financial Statement for year-end March 31, 2010 contradicts the Shaver Plan Financial Statements for years-end March 31, 2007, March 31, 2008 and March 31, 2009 by stating that the March 15, 2005 investment was $456,626.00 as opposed to $648,064.00.

111.    The Shaver Plan Financial Statements for year-end March 31, 2010 contradicts the Shaver Plan Financial Statements for years-end March 31, 2007, March 31, 2008 and March 31, 2009 by stating that the amount loaned to Defendant Sugar Creek III was for the amount of $1,935,600.00 as opposed to $1,743,561.00.

###    B.    *Shaver Plan Loans to Sugar Creek I*

112.    Upon information and belief, the shareholders of Sugar Creek I are and were at all relevant times as follows:

   a.    Defendant Lee – 10% shareholder;

   b.    Ervin and Teresa Bateman – 50% shareholders; and

   c.    Defendant Shaver Estate – 40% shareholder.

113.    Upon information and belief, the officers of Defendant Sugar Creek I were at all relevant times as follows:

   a.    President: Ervin M. Bateman;

   b.    Secretary: Teresa Bateman; and

   c.    Treasurer: Defendant Lee.

114.    Upon information and belief, at all relevant times Defendant Lee effectively held 50% of the voting interest of Defendant Sugar Creek I, as she personally owned 10% of its shares and Defendant Shaver Estate (of which Defendant Lee was and is a co-executrix) owned 40% of its shares.

115.    Upon information and belief, Defendant Lee as trustee under the Shaver Plan loaned $186,539.00 to Defendant Sugar Creek I between March 31, 2007 and March 31, 2008 (the "Sugar Creek I Loan").

116.    Upon information and belief, the amount of the Sugar Creek I Loan increased to $491,864.00 between March 31, 2008 and March 31, 2009.

### C.    *Lee's Concealment, Misrepresentations, Misinformation and Failure to Disclose Information to Shriners Hospitals relating to Sugar Creek I, Sugar Creek II, and Sugar Creek III*

117.    Defendant PFMS, Inc., the plan administrator, and Defendant Lee as president and sole director of Defendant PFMS, Inc., failed to provide and actively concealed at least the following information:

a.    The distribution of Defendant Sugar Creek III and the value of the assets held by Defendant Sugar Creek III at the time of distribution;

b.    The positions and interest of Defendant Lee in Defendant Sugar Creek I, and the conflict of interest arising therefrom;

c.    The Shaver Plan's investment in Defendant Sugar Creek II and/or Sugar Creek III and said investment's reclassification as a loan;

d.    The inability of Defendant Sugar Creek II and/or Defendant Sugar Creek III to repay the transfers of funds made by the Shaver Plan;

e.    The effective transfer by the Shaver Plan of an amount in excess of $2,360,000.00 to Defendant Sugar Creek III and/or Defendant Sugar Creek II by failing to enforce the promissory note dated April 1, 2008; and

f.    The Shaver Plan's loan to Defendant Sugar Creek I.

### 3.    Defendant PFMS, Inc. and Defendant Lee's Failure to Make Distributions to Plaintiff

118. Upon information and belief, Defendant Lee as trustee and fiduciary under the Shaver Plan distributed a total of approximately $2,375,000.00 of cash and other assets to herself and Defendant Morris from 2007 to 2011 as beneficiaries of the Shaver Account.

119. Defendant Lee, as trustee and fiduciary under the Shaver Plan, has not informed Plaintiff of any Shaver Plan distributions to Defendant Lee or Defendant Morris from 2012 to the present.

120. Defendant Lee, as trustee and fiduciary under the Shaver Plan, has not made any distributions to Plaintiff since Paul Shaver's death on July 30, 2006.

121. On June 26, 2013, Defendant Lee's attorney, on behalf of Defendant Lee, forwarded to Plaintiff a copy of a purported promissory note (the "Note") payable by the Shaver Plan in the amount of $2,456,350.00.

122. Defendant Lee's attorney, on behalf of Defendant Lee, stated in an email dated June 26, 2013 that the amount of the Note was the value of Plaintiff's share as beneficiary of the Shaver Account as of July 30, 2011. Defendant Lee, however, has consistently represented to the Internal Revenue Service that Plaintiff's distribution, to be used as a charitable deduction, exceeds $6,000,000.00.

123. The attempted distribution by Defendant Lee of the Note to Plaintiff as Plaintiff's share of the Shaver Plan was a violation of her fiduciary duty to Plaintiff to maintain sufficient liquidity in the Plan to make distributions to participants and beneficiaries when due.

124. Upon information and belief, the promissory note was actually drafted in 2013 but back-dated to July 30, 2011.

125. The promissory note prepared by Defendant Lee's attorney contained a space for Plaintiff to sign and accept the note. Plaintiff did not and has never signed the note. Plaintiff did

not and has not accepted the promissory note by any act, statement, or failure to act, and has never waived its rights to distributions from the Shaver Plan.

126.    Defendant Lee as trustee and fiduciary under the Shaver Plan has not tendered any payments due to Plaintiff under the Note and, upon information and belief, Defendant Lee never intended to pay Plaintiff in accordance with the terms of the promissory note.

127.    Defendant PFMS, Inc. as the plan administrator and Defendant Lee as trustee under the Shaver Plan and president and sole director of PFMS, Inc., have violated the terms of the plan and the Internal Revenue Code by failing to make timely distributions to the beneficiaries of the Shaver Account, to the detriment of Plaintiff.

128.    Upon information and belief, Defendant Lee's attempted distribution of the Note was an attempt by her to convert Plaintiff's interest in the Shaver Plan from that of a beneficiary to that of a creditor. Defendant Lee, as President and sole director of the plan administrator and trustee under the Shaver Plan, has informed Plaintiff through counsel as recently as 2016 that Plaintiff is no longer a beneficiary of the Shaver Account but is being treated as a creditor of the Shaver Plan.

129.    Defendant PFMS, Inc. and Defendant Lee have failed to distribute to Plaintiff the entire value of its account in the Shaver Plan within five (5) years of Shaver's date of death July 30, 2006, as required by Sections 6.01(B) and 6.02(D)(2) of the Shaver Plan and Section 401(a)(9) of the Internal Revenue Code of 1986 and the regulations thereunder.

130.    Upon information and belief, Defendant Lee has orchestrated in kind distributions of assets from the Shaver Plan to herself and Defendant Morris, excluding Plaintiff, at times when such assets would have a low value and thereby increase the ultimate share of value received by

Defendant Lee and Defendant Morris and making it difficult, if not impossible, to determine whether Plaintiff receives the full 40% of Plan assets to which Plaintiff is entitled.

131.     Upon information and belief, Defendant Lee further diminished the value of the Shaver Plan to the detriment of Plaintiff by making high risk loans to entities in which Defendant Lee and Defendant Morris, but not Plaintiff, received interests from the Shaver Plan, with knowledge that such loans may never be repaid by such entities.  Upon information and belief, no payments have been made by such entities to the Shaver Plan with respect to such loans.

132.     Upon information and belief, Defendant PFMS, Inc., the plan administrator, and Defendant Lee, the trustee under the Shaver Plan and president and sole director of PFMS, Inc., failed to abide by the accounting rules required by the Shaver Plan by failing to maintain after December 31, 2007 a separate account for each beneficiary reflecting their balance in the Shaver Account.

133.     Defendant PFMS, Inc., the plan administrator, and Defendant Lee as trustee under the Shaver Plan and as president and sole director of Defendant PFMS, Inc., breached their fiduciary duties to Plaintiff by failing to follow the terms of the Shaver Plan with respect to distributions to beneficiaries following Paul Shaver's death, and by failing to maintain sufficient liquid assets in the plan in order to make the required distributions within the period required by the Shaver Plan and Section 401(a)(9) of the Internal Revenue Code of 1986 and the regulations thereunder.

134.     Upon information and belief, Defendant PFMS, Inc., and Defendant Lee as trustee of the Shaver Plan and as president and sole director of Defendant PFMS, Inc., are now taking the position that Plaintiff is not a 40% beneficiary of the Shaver Plan and that Plaintiff may not receive any distributions as a Shaver Plan beneficiary due to the terms of a certain Beneficiary Designation

Form for the Shaver Plan. Said Defendants informed Plaintiff of this position in 2018, despite Defendant Lee representing to Plaintiff that it is a 40% beneficiary of the Shaver Plan at all times up until 2018, and despite Defendant Lee at all times representing to the IRS that Plaintiff is a 40% beneficiary of the Shaver Plan, and further misrepresenting to the IRS that Plaintiff has already received millions of dollars in distributions as a 40% beneficiary of the Shaver Plan. Plaintiff has in fact received no distributions of any kind as beneficiary of the Shaver Plan.

135. Plaintiff maintains that it is a 40% beneficiary of the Shaver Plan and has made this position known to Defendant Lee, in part because the Beneficiary Designation Form should not be enforced due to the doctrine of quasi-estoppel, as Defendant Lee has at all times represented, and continues to represent, to the IRS that Plaintiff is a 40% beneficiary of the Shaver Plan. The Shaver Plan, Defendant Lee, Defendant Morris and Defendant Shaver Estate have benefitted from the representation to the IRS that Plaintiff is a 40% beneficiary of the Shaver Plan.

136. Defendant PFMS, Inc. and Defendant Lee, as trustee of the Shaver Plan and as president and sole director of Defendant PFMS, Inc., have failed to request or to file a Declaratory Judgment Action on behalf of the Shaver Plan and Plaintiff for a court of appropriate jurisdiction to interpret the Beneficiary Designation Form and to determine whether Plaintiff is in fact a 40% beneficiary of the Shaver Plan, even though there are patent ambiguities as to this issue in the terms of the Beneficiary Designation Form and the Paul F. M. Shaver, III Trust dated May 24, 2002, which is necessary for a proper interpretation of the Beneficiary Designation Form.

**4.** **Futility of Demand**

137. A demand by Plaintiff on Defendant Lee, as President of the plan administrator and trustee under the Shaver Plan, and on Defendant PFMS, Inc., to bring suit against themselves for the foregoing wrongful acts and omissions would be futile.

## FIRST CAUSE OF ACTION
### (Breach of Fiduciary Duties, Failure to Disclose and Concealment, and Knowing Participation in Breaches of Fiduciary Duties, Under ERISA)

138.    Plaintiff realleges and incorporates by reference Paragraphs 1 through 137.

139.    Upon information and belief, the Shaver Plan is an employee benefit plan within the meaning of 29 U.S.C. § 1002(3) and is subject to the Employee Retirement Income Security Act ("ERISA") pursuant to 29 U.S.C. § 1003(a).

140.    Upon information and belief, at all relevant times, Defendant PFMS, Inc. has been the plan administrator and the sponsor of the Shaver Plan, and has been a "fiduciary" of the Shaver Plan within the meaning of 29 U.S.C. § 1002(21)(A), and a "party in interest" to the Shaver Plan within the meaning of 29 U.S.C. §§ 1002(14)(A) and (C).

141.    Upon information and belief, at all relevant times, Defendant Lee has been the sole trustee under the Shaver Plan and a "fiduciary" of the Shaver Plan within the meaning of 29 U.S.C. § 1002(21)(A), and a "party in interest" to the Shaver Plan within the meaning of 29 U.S.C. §§ 1002(14)(A) and (H) and at various times a "party in interest" to the Shaver Plan within the meaning of 29 U.S.C. § 1002(14)(G).

142.    Upon information and belief, at all relevant times, Defendant Lee has been a co-trustee and "fiduciary" under Defendant Lancaster Plan within the meaning of 29 U.S.C. § 1002(21)(A).

143.    As fiduciaries of the Shaver Plan,  under 29 U.S.C. §§ 1104(a)(1)(A), (B), (C) and (D), Defendant PFMS, Inc. and Defendant Lee are required to exercise their duties with respect to the Shaver Plan solely in the interest of the Plan participants and beneficiaries and

a.    for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying the reasonable expenses of administering the plan;

b. with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;

c. by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and

d. in accordance with the documents and instructions governing the plan insofar as such documents and instruments are consistent with the provisions of ERISA.

144. Defendant PFMS, Inc. as plan administrator and/or Defendant Lee, as trustee under the Shaver Plan and as president and sole director of Defendant PFMS, Inc., breached their fiduciary duties to Plaintiff and the Shaver Plan by failing to act solely in the interest of the beneficiaries of the Shaver Account and in violation of 29 U.S.C. §§ 1104(a)(1)(A), (B), (C), and (D), and by failing to disclose and by actively concealing information Plaintiff requested, in the following ways:

a. By failing to manage and invest the assets of the Shaver Plan for the purpose of distributing the assets to the beneficiaries after the death of Paul Shaver on July 30, 2006;

b. By failing to pay and/or recover for the Shaver Plan its pro rata share, and up to all proceeds (excluding reasonable closing costs) from the 2015 sale of the BIS Condo Project, including the sale of the assets of Defendant BIS, Inc. and the real property owned together by the Shaver Plan and Defendant Lancaster Plan, in repayment of the Shaver Plan BIS Loans;

c. By writing off the Shaver Plan BIS Loans to Defendant BIS, Inc. in their entirety;

d. By Defendant Lee's making of excessive distributions of the sale proceeds of the BIS Condo Project to one or more of the Black Pelican Defendants, Defendant Lee

personally, Defendant Lancaster Plan, Gray and Lloyd, LLP, Sammy Moore, Eddie Goodrich and "Calfee";

e.     By Defendant Lee knowingly making a personal loan to Defendant BIS, Inc. of approximately $600,000.00 in a manner that guaranteed the loan had higher priority than the loans made by the Shaver Plan to Defendant BIS, Inc.

f.     By Defendant Lee as President of Defendant Black Pelican Seafood Company, Inc. knowingly making a loan to Defendant BIS, Inc. in a manner that guaranteed the loan had higher priority that the loans made by the Shaver Plan to BIS, Inc.

g.     By causing the Shaver Plan to lend more than $8,000,000.00 in unsecured loans to Defendant BIS, Inc., knowing that full or even substantial repayment to the Shaver Plan was improbable or impossible, as Defendant BIS, Inc. and the BIS Condo Project were a failing business venture;

h.     By using Shaver Plan funds to pay off the entirety of the RBC BIS Loan of more than $3,000,000.00 to Defendant BIS, Inc. in 2014, thereby depleting the Shaver Plan's liquid assets which could have been distributed to beneficiaries and ignoring the RBC BIS Loan guarantees of Defendant Lancaster Plan, Defendant Shaver Estate, Defendant John Lancaster, and Defendant BIR, Inc. without any payment or contribution from these Defendants, and by failing to demand and make claims for contribution from the co-guarantor Defendants and by failing to enforce the Shaver Plan's subrogation rights against Defendant BIS, Inc.;

i.     Defendant Lee as Trustee under the Shaver Plan failed to demand and enforce any claims for contribution against Defendant Lancaster Plan even though (i) the Shaver Plan loaned more than eight times more money than the Lancaster Plan for the BIS Condo Project; (ii) in excess of $8,000,000.00 in loans remained, at the time of such distribution, due and owing

to the Shaver Plan; (iii) Defendant Lancaster Plan was a co-guarantor of the RBC BIS Loan and possessed ownership interests identical to that held by the Shaver Plan in the BIS Condo Project; and (iv) Defendant Lee knew half of the net proceeds, approximately $1,039,184.34, from the sale of the real estate of the BIS Condo Project was distributed to Defendant Lancaster Plan.

j.     By causing the Shaver Plan to transfer the Black Pelican Restaurant Property to herself and Defendant Morris, who simultaneously conveyed this property in the same deed to Defendant Black Pelican, LLC, while failing, and continuing to fail, to make a distribution of equivalent value to Plaintiff as a beneficiary of the Shaver Account;

k.     By causing the Shaver Plan to incur a debt of at least $2,460,000.00, failing to use said funds for the benefit of the Shaver Plan, distributing the encumbered Black Pelican Restaurant Property to Defendant Lee and Defendant Morris at a value of $190,000.00, asserting that the value of the Black Pelican Restaurant Property is the value per an appraisal which pre-dated the loan, minus the amount of the loan;

l.     By improperly using or transferring the said loan proceeds secured by the Black Pelican Restaurant Property to Defendant Lee, Defendant Morris, and/or an entity in which Defendant Lee and/or Defendant Morris held an interest in or acted on behalf of in a fiduciary capacity;

m.     By failing to account for $780,000.00 of value in the distribution of the Black Pelican Restaurant Property as described in Paragraph 61.

n.     By failing to disclose and actively concealing from Plaintiff the following information which Defendant PFMS, Inc. the plan administrator and Defendant Lee as trustee under the Shaver Plan and president of PFMS, Inc., had an affirmative duty as a fiduciary to

provide following Plaintiff's requests to be kept informed about the following distributions and transfers made by the Shaver Plan:

(i)     The transfer of the Black Pelican Restaurant Property to Defendant Lee and Defendant Morris, and their contemporaneous transfer of the same to Defendant Black Pelican, LLC, owned 50/50 by Defendant Lee and Defendant Morris; and

(ii)     Upon information and belief, the improper use or transfer of the loan proceeds to Defendant Lee, Defendant Morris, and/or an entity in which Defendant Lee and/or Defendant Morris held an interest in or acted on behalf of in a fiduciary capacity.

(iii)     The failure to account for $780,000.00 of value in the distribution of the Black Pelican Restaurant Property as described in Paragraph 61.

o.     By misrepresenting to Plaintiff that a substantial portion of the sale proceeds of the BIS Condo Project would be used to repay the loans in excess of $8,000,000.00 made by the Shaver Plan to Defendant BIS, Inc.;

p.     By failing to disclose and actively concealing from Plaintiff prior to the sale of the BIS Condo Project the following information which Defendant PFMS, Inc. the plan administrator and Defendant Lee as trustee under the Shaver Plan and president of PFMS, Inc., had an affirmative duty as a fiduciary to provide following Plaintiff's requests to be kept informed about the sale of the BIS Condo Project:

(i)     Defendant Lee's plans and intentions for distributing the proceeds from the sale of Defendant BIS, Inc. and the real estate of the BIS Condo Project in the manner in which she did so, as alleged above;

(ii)    Defendant Lee's plan and intention to write off the loans in excess of $8,000,000.00 made by the Shaver Plan to Defendant BIS, Inc. in the manner in which she did so, as alleged above;

(iii)   Defendant Lee's positions as officers and fiduciaries of Defendant Lancaster Plan and the Black Pelican Defendants, whose interests were directly adverse to the interests of the Shaver Plan in the sale of the BIS Condo Project and the distributions of the proceeds for the same;

(iv)    The existence of the secured loans made by Defendant Lee personally and Defendant Black Pelican Seafood Company, Inc. to Defendant BIS, Inc., and that said loans had priority over the unsecured loans in excess of $8,000,000.00 that the Shaver Plan made to Defendant BIS, Inc.;

(v)     The payoff of the RBC BIS Loan of more than $3,000,000.00 solely with Shaver Plan funds, unjustly benefitting the co-guarantors, Defendant Shaver Estate, Defendant Lancaster, Defendant Lancaster Plan, and Defendant BIR, Inc. to the detriment of the Shaver Plan and Plaintiff.

q.    By causing the Shaver Plan to lease its one-half undivided interest in the real property of Defendant Sugar Creek III to Defendant Sugar Creek I without a written lease agreement;

r.    By contending the distributions of the ownership interest in Defendant Sugar Creek III to Defendant Lee and Defendant Morris had a total value of $500.00 in 2008, even though Defendant Sugar Creek III owns a one-half undivided in real property that was appraised at more than $3,000.000.00 in 2010;

s.      By personally accepting as a beneficiary of the Shaver Account the distribution of Defendant Sugar Creek III by the Shaver Plan to her;

t.      By contending the distributions of Sugar Creek III to Defendant Lee and Defendant Morris had a total value of $500.00 in 2008, though Sugar Creek III owns a one-half undivided in real property that was appraised at more than $3,000,000.00 in 2010;

u.      By causing the Shaver Plan to transfer, and/or to lend without security and as a subordinate loan, in excess of $2,360,000.00 between 2005 and 2008 to Defendant Sugar Creek II and/or Defendant Sugar Creek III, knowing that full or even substantial repayment or a return on the investment for the Shaver Plan was improbable or impossible, and despite Defendant Lee's contention that Defendant Sugar Creek III had a total value of $500.00 in 2008;

v.      By failing to enforce the promissory note in favor of the Shaver Plan dated April 1, 2008 against Defendant Sugar Creek II and Defendant Sugar Creek III, and/or by failing to pursue legal remedies against Defendant Sugar Creek II and Defendant Sugar Creek III for recovery of damages for their breach of said promissory note, which failure effectively constitutes the forgiveness of the debt and an outright transfer of the funds from the Shaver Plan to Defendant Sugar Creek II and Defendant Sugar Creek III;

w.      By causing the Shaver Plan to lend $491,864.00 to Defendant Sugar Creek I (of which Defendant Lee is a corporate officer and a 10% shareholder, and of which the Shaver Estate, with Defendant Lee as co-executrix, is a 40% shareholder);

x.      By failing to provide and actively concealing from Plaintiff information concerning: (i) the distribution of Sugar Creek III and the value of the assets held by Sugar Creek III at the time of distribution; (ii) the nature of Defendant Lee's interest in Sugar Creek I and the conflict of interest arising therefrom; (iii) the Shaver Plan's investment in Sugar Creek III and said

investment's "re-characterization" as a loan; (iv) the inability of Sugar Creek III to repay the loan made by the Shaver Plan; (v) the effective transfer by the Shaver Plan of an amount in excess of $2,360,000.00 to Defendant Sugar Creek III and/or Defendant Sugar Creek II by failing to enforce the promissory note dated April 1, 2008; and (vi) the loan made by the Shaver Plan to Sugar Creek I;

       y.     By failing to make distributions of the Shaver Plan assets to Plaintiff as a 40% beneficiary of the Shaver Account;

       z.     By making discriminatory and inequitable distributions of the Shaver Plan assets to Defendant Lee and Defendant Morris and by making such distributions in kind rather than in cash, rendering it impossible to accurately divide Paul Shaver's interest in the Shaver Plan among all three beneficiaries in the proportions he directed;

       aa.     By executing a promissory note on behalf of the Shaver Plan in favor of Plaintiff in the amount of $2,456,350.00 in lieu of proper plan distributions, which Plaintiff did not and has not accepted;

       bb.     By failing to distribute all assets held in the Shaver Account to the beneficiaries, or any distributions due to Plaintiff, within five (5) years of Paul Shaver's date of death on July 30, 2006, as required by the terms of the Shaver Plan and Section 401(a)(9) of the Internal Revenue Code of 1986 and the regulations thereunder;

       cc.     By informing Plaintiff as recently as October 2016 that Defendant Lee no longer considers Plaintiff a beneficiary of the Shaver Account, but a mere creditor, a statement never made by Defendant Lee or anyone on her behalf, prior to that time;

dd.     By, upon information and belief, failing to maintain after December 31, 2007 a separate account for each beneficiary of the Shaver Account reflecting each beneficiary's account balance in the funds held therein;

ee.     By failing to file suit against the other defendants in this matter to recover monetary amounts due to Plaintiff, the Shaver Plan, as alleged hereinafter;

ff.     By failing to request or to file a Declaratory Judgment Action on behalf of the Shaver Plan and Plaintiff for a court of appropriate jurisdiction to interpret the Beneficiary Designation Form and to determine whether Plaintiff is in fact a 40% beneficiary of the Shaver Plan even though there are patent ambiguities as to this issue in the terms of the Beneficiary Designation Form and the Paul F. M. Shaver, III Trust dated May 24, 2002, while suddenly in 2018 changed their position and informed Plaintiff that it is not a 40% beneficiary of the Shaver Plan (despite continuing to represent to the IRS that Plaintiff is indeed a 40% beneficiary of the Shaver Plan); and

gg.     In such other ways as Plaintiff discovers during the course of litigation and at the trial of this matter.

145.    Upon information and belief, Defendant PFMS Holding, Inc. was holding plan assets of the Shaver Plan under 29 C.F.R. 2510.3-101, and Defendant Lee, as president and sole director of PFMS Holding, Inc. breached her fiduciary duties to Plaintiff and the Shaver Plan by failing to act solely in the interest of the Shaver Plan participants and beneficiaries and in violation of 29 U.S.C. §§ 1104(a)(1)(A), (B), (C) and (D) as set forth in Paragraph 141.

146.    Upon information and belief, Defendant JTL Holding, Inc. was holding plan assets of Defendant Lancaster Plan under 29 C.F.R. 2510.3-101.

147.     Upon information and belief, Defendant BIS, Inc., by virtue of its ownership by PFMS Holding, Inc. was holding plan assets of the Shaver Plan under 29 § C.F.R. 2510.3-101.

148.     Upon information and belief, Defendant BIS, Inc. by virtue of its ownership by JTL Holding Inc. was holding plan assets of the Lancaster Plan under 29 C.F.R. § 2510.3-101.

149.     Defendant Lee, as President of BIS, Inc. breached her fiduciary duties to Plaintiff and the Shaver Plan by failing to act solely in the interest of the Shaver Plan participants and beneficiaries and in violation of 29 U.S.C. §§ 1104(a)(1)(A), (B), (C) and (D) due to her conflicting duty to act solely in the interest of the Lancaster Plan participants and beneficiaries, and, upon information and belief, as set forth in Paragraph 141.

150.     Defendant BIS, Inc. was a knowing participant in the breaches of fiduciary duties set forth in Paragraph 141 as these breaches involved assets, debts and sale proceeds distributions of Defendant BIS, Inc. Upon information and belief, the assets of Defendant BIS, Inc. are considered assets of the Shaver Plan under 29 C.F.R. § 2510.3-101, and Defendant Lee, as an officer and employee of Defendant BIS, Inc. operated and controlled Defendant BIS, Inc. at all relevant times. All knowledge of Defendant Lee while committing these breaches is imputed to Defendant BIS, Inc.

151.     One or more of the Black Pelican Defendants were knowing participants in the breaches of fiduciary duties as set forth in Paragraph 144 as these breaches involved excessive payments received by one or more of the Black Pelican Defendants, and upon information and belief Defendant Lee operated and controlled these companies at all relevant times. All knowledge of Defendant Lee while committing these breaches is imputed to them.

152.     Defendant Black Pelican, LLC was a knowing participant in the breach of fiduciary duty set forth in Paragraph 144 as these breaches involved the transfer of real property to Defendant

Black Pelican, LLC, and Defendant Lee operated and controlled it at all relevant times. All knowledge of Defendant Lee while committing these breaches is imputed to it.

153. Defendant Lancaster Plan was a knowing participant in the breaches of fiduciary duties set forth in Paragraph 144 as these breaches involved the excessive distributions of the sale proceeds of the BIS Condo Project to Defendant Lancaster Plan, and its failure to pay off any portion of the RBC BIS Loan. Defendant Lee was the co-trustee under Defendant Lancaster Plan at all relevant times, and Defendant Lee's knowledge while committing these breaches is imputed to it.

154. Defendant Lancaster was a knowing participant in the breach of fiduciary duties set forth in Paragraph 144, as this breach involved Defendant Lancaster's failure to pay off any portion of the RBC BIS Loan. Upon information and belief, Defendant Lancaster knew or should have known that the Shaver Plan paid off his share of the RBC BIS Loan, and he has intentionally failed to pay back the Shaver Plan for the same.

155. Defendant Shaver Estate was a knowing participant in the breach of fiduciary duties set forth in Paragraph 144, as this breach involved Defendant Shaver Estate's failure to pay off any portion of the RBC BIS Loan. Defendant Lee was a co-executrix of Defendant Shaver Estate at all relevant times, and Defendant Lee's knowledge while committing this breach is imputed to it.

156. Defendant BIR, Inc. was a knowing participant in the breach of fiduciary duties set forth in Paragraph 144, as this breach involved Defendant BIR Inc.'s failure to pay off any portion of the RBC BIS Loan. Defendant Lee operated and controlled Defendant BIR, Inc. at all relevant times, and Defendant Lee's knowledge while committing this breach is imputed to it.

157.    Defendant Morris was a knowing participant in the breaches of fiduciary duties alleged in Paragraph 144.  Defendant Morris accepted the distributions described in said paragraph and, upon information and belief, knew Shriners Hospitals had not been distributed an equivalent distribution.

158.    Defendant Sugar Creek I was a knowing participant in the breaches of fiduciary duties alleged in Paragraph 144.  Defendant Lee partially owned and was an officer/employee of Defendant Sugar Creek I at all relevant times.  Defendant Lee's knowledge while committing these breaches is imputed to Defendant Sugar Creek I.

159.    Upon information and belief, Defendant Sugar Creek II was a knowing participant in the breaches of fiduciary duties alleged in Paragraph 144.

160.    Defendant Sugar Creek III was a knowing participant in the breaches of fiduciary duties alleged in Paragraph 144.  Defendant Lee was an owner and manager of Defendant Sugar Creek III at all relevant times.  Defendant Lee's knowledge while committing these breaches is imputed to Defendant Sugar Creek III.

161.    As a direct and proximate result of the breaches of fiduciary duty owed to the Shaver Plan, its participants and beneficiaries, including Plaintiff, by Defendant PFMS, Inc., Defendant PFMS Holding, Inc., BIS, Inc., and Defendant Lee under ERISA and the plan asset regulations of 29 C.F.R. §2510.3-101, and of the knowing participation in these breaches by the other named Defendants set forth in this cause of action, the Shaver Plan has suffered losses upon information and belief in excess of $10,000,000.00 and seeks all available equitable and remedial relief against Defendant PFMS, Inc., Defendant Lee, Defendant PFMS Holding, Inc., Defendant BIS, Inc., the Black Pelican Defendants, Defendant Lancaster Plan, Defendant BIR, Inc., Defendant Shaver Estate, Defendant Morris, Defendant Sugar Creek I, Defendant Sugar Creek II

and Defendant Sugar Creek III, to have these losses restored to the Shaver Plan, and to have Defendant Lee removed immediately and permanently as trustee under the Shaver Plan, pursuant to 29 U.S.C. §§ 1109(a), 1132(a)(2) and/or 1132(a)(3).

162. As a direct and proximate result of the breaches of fiduciary duty owed to the Shaver Plan, its participants and beneficiaries, including Plaintiff, by Defendant PFMS, Inc.'s, PFMS Holding, Inc., BIS, Inc., and Defendant Lee under ERISA and the plan asset regulations of 29 C.F.R. §2510.3-101, and the knowing participation in these breaches by the other named Defendants as set forth in this cause of action, Plaintiff has suffered damages upon information and belief in excess of $4,000,000.00 and seeks all available equitable remedies against Defendant PFMS, Inc., Defendant Lee, Defendant PFMS Holding, Inc., Defendant BIS, Inc., the Black Pelican Defendants, Defendant Lancaster Plan, Defendant BIR, Inc., Defendant Shaver Estate, Defendant Morris, Defendant Sugar Creek I, Defendant Sugar Creek II and Defendant Sugar Creek III, to recover Plaintiff's losses, and to have Defendant Lee removed immediately and permanently as trustee of the Shaver Plan and to have a receiver appointed to take over the operations of Defendant PFMS, Inc., the Shaver Plan's employer, and a new trustee appointed to administer Shaver Plan, pursuant to 29 U.S.C. §§ 1109(a), 1132(a)(2) and/or 1132(a)(3).

## SECOND CAUSE OF ACTION
### (Prohibited Transactions and Knowing Participation Claims, under ERISA)

163. Plaintiff realleges and incorporates by reference Paragraphs 1 through 162.

164. The following parties are "parties in interest" in respect to the Shaver Plan within the meaning of 29 U.S.C. §1002(14):

a. Defendant Lee at all relevant times has been the sole trustee under the Shaver Plan and a "fiduciary" of the Shaver Plan within the meaning of 29 U.S.C. § 1002(21)(A) and a "party in interest" within the meaning of 29 U.S.C. §§ 1002(14);

b.     Upon information and belief, Defendant Shaver Estate at all relevant times was a "party in interest" within the meaning of 29 U.S.C. §§ 1002(14);

c.     Defendant Black Pelican, LLC at all relevant times was a "party in interest" within the meaning of 29 U.S.C. §§ 1002(14);

d.     Upon information and belief, Defendant Sugar Creek II at all relevant times was a "party in interest" within the meaning of 29 U.S.C. § 1002(14); and

e.     Defendant Sugar Creek III at all relevant times was a "party in interest" to the Shaver Plan within the meaning of 29 U.S.C. §§ 1002(14).

165.     The loans in excess of $8,000,000 made by the Shaver Plan to BIS, Inc. set forth in Paragraph 46 constitute a prohibited transaction within the meaning of 29 U.S.C. § 1106(a)(1)(D) and 29 U.S.C. §§ 1106(b)(1) and (2), and Defendant BIS, Inc. was a knowing participant in the transaction.  Defendant Lee, as an officer and employee of Defendant BIS, Inc. operated and controlled Defendant BIS, Inc. at all relevant times.  All knowledge of Defendant Lee is imputed to Defendant BIS, Inc.

166.     The incurrence of debt and execution of the deed of trust that secured the debt incurred by the Shaver Plan in relation to the Black Pelican Restaurant Property described in Paragraph 60 is a prohibited transaction within the meaning of 29 U.S.C. §§ 1106(a)(1)(D) and 29 U.S.C. § 1106(b)(1) and (2).  Defendant Lee, Defendant Morris and Defendant Black Pelican, LLC were knowing participants in the transaction.  Defendant Lee was a member-manager of Defendant Black Pelican, LLC at all relevant times.  The knowledge of Defendant Lee is imputed to Defendant Black Pelican, LLC.  Defendant Morris executed the deed transferring the Black Pelican Restaurant Property from Defendant Lee and herself, to Defendant Black Pelican, LLC.  The deed specifically referenced the Deed of Trust encumbering the Black Pelican Restaurant Property.

167.     The grant of a security interest by Defendant BIS, Inc. to Defendant Lee described in Paragraph 67 is a prohibited transaction within the meaning of 29 U.S.C. §1106(b)(1) and (2), and Defendant BIS, Inc. was a knowing participant in this prohibited transaction.  Further, the grant of the security interest was a breach of Lee's fiduciary duty to the Shaver Plan, its participants and beneficiaries under 29 C.F.R. § 2510.3-101.

168.     The sale of the assets of Defendant BIS, Inc. is a prohibited transaction within the meaning of 29 U.S.C. § 1106(b)(2), a breach of Lee's fiduciary duty to the Shaver Plan, its participants and beneficiaries under 29 C.F.R. § 2510.3-101, and Defendant BIS, Inc., Defendant PFMS Holding, Inc., Defendant JTL Holding, Inc., Defendant Lancaster Plan, Defendant Lee, and the Black Pelican Defendants were knowing participants in the transaction.  Upon information and belief, at all relevant times, Defendant Lee was an officer/employee of, and exercised control over, Defendant BIS, Inc., Defendant PFMS Holding, Inc., Defendant JTL Holding, Inc., and the Black Pelican Defendants, a co-trustee under the Defendant Lancaster Plan, and an owner of each of the Black Pelican Defendants.  Defendant Lee's knowledge relating to this prohibited transaction is imputed to the defendants named in this paragraph.  Further, said distribution was a breach of Lee's fiduciary duty to the Shaver Plan, its participants and beneficiaries under 29 C.F.R. § 2510.3-101.

169.     The distribution of $262,087.59 by Defendant Lee as President of BIS, Inc. to the Defendant Lancaster Plan described in Paragraph 75 is a prohibited transaction within the meaning of 29 U.S.C. §§ 1106(a)(1)(D) and 1106(b)(1) and (2), and Defendant Lancaster Plan was a knowing participant in the transaction.  Further, said distribution was a breach of Lee's fiduciary duty to the Shaver Plan, its participants and beneficiaries under 29 C.F.R. § 2510.3-101.

170.    The distribution of $615,594.69 by Defendant Lee as President of BIS, Inc. to Defendant Lee described in Paragraph 72 is a prohibited transaction within the meaning of 29 U.S.C. §§ 1106(a)(1)(D) and 1106(b)(1) and (2), and Defendant Lee was a knowing participant in the transaction.  Further, said distribution was a breach of Lee's fiduciary duty to the Shaver Plan, its participants and beneficiaries under 29 C.F.R. § 2510.3-101.

171.    The distribution of approximately $1,559,010.34 by Defendant Lee as President of BIS, Inc. to Defendant Black Pelican Seafood Company, Inc., Defendant Black Pelican, LLC and/or Defendant Black Pelican Ventures, Inc. described in Paragraph 73 is a prohibited transaction within the meaning of 29 U.S.C. §§ 1106(a)(1)(D) and 1106(b)(1) and (2), and Defendant Black Pelican Seafood Company, Inc., Defendant Black Pelican, LLC and/or Defendant Black Pelican Ventures, Inc. were knowing participants in the transactions.  Further, said distribution was a breach of Lee's fiduciary duty to the Shaver Plan, its participants and beneficiaries under 29 C.F.R. § 2510.3-101.

172.    The division and distribution of sales proceeds of certain real estate owned by the Shaver Plan and the Defendant Lancaster Plan in the amount of $1,039,184.34 by Defendant Lee as Trustee under the Defendant Lancaster Plan to the Defendant Lancaster Plan described in Paragraphs 85 and 86 is a prohibited transaction within the meaning of 29 U.S.C. §§ 1106(a)(1)(D) and 1106(b)(1) and (2), and Defendant Lancaster Plan was a knowing participant in this prohibited transaction.

173.    The distribution of the 50% ownership interest in Defendant Sugar Creek III by Defendant Lee as fiduciary of the Shaver Plan to herself, individually as described in Paragraph 94, without an equivalent distribution to the Shaver Plan is a prohibited transaction within the

meaning of 29 U.S.C. §§ 1106(a)(1)(D), 1106(b)(1) and (2), and Defendant Morris and Defendant Sugar Creek III are knowing participants in this prohibited transaction.

174.    The transfers of funds in excess of $2,360,000.00 made by Defendant Lee as fiduciary of the Shaver Plan to Defendant Sugar Creek III and/or Defendant Sugar Creek II described in Paragraph 102 are prohibited transactions within the meaning of 29 U.S.C. §§ 1106(a)(1)(B) and (D) and 1106 (b)(1) and (2), and Defendant Sugar Creek III was a knowing participant in these prohibited transactions.  Defendant Lee was a member-manager of Defendant Sugar Creek III at all relevant times.  All knowledge of Defendant Lee is imputed to Defendant Sugar Creek III.

175.    The loans of approximately $491,864.00 made by Defendant Lee as fiduciary of the Shaver Plan to Defendant Sugar Creek I described in Paragraphs 115 and 116 are prohibited transactions within the meaning of 29 U.S.C. §§ 1106(a)(1)(D) and 29 U.S.C. §§ 1106(b)(1) and (2).  Defendant Lee was an owner, officer and employee of Defendant Sugar Creek I at all relevant times.  All knowledge of Defendant Lee is imputed to Defendant Sugar Creek I.

176.    The write off by Defendant Lee as trustee under the Shaver Plan of the loans in excess of $8,000,000.00 made by the Shaver Plan to Defendant BIS, Inc. is a prohibited transaction within the meaning of 29 U.S.C. §§ 1106(a)(1)(D), 1106(b)(1) and (b)(2).

177.    The grant of a security interest by Defendant BIS, Inc. to Defendant Black Pelican Seafood Company, Inc. described in Paragraph 68 is a prohibited transaction within the meaning of 29 U.S.C. §1106(b)(1) and (2).  Defendant Black Pelican Seafood Company, Inc. and Defendant BIS, Inc. were knowing participants in this prohibited transaction, as Defendant Lee was an officer and employee of, and exercised control over these companies at all relevant times, and Defendant

Lee's knowledge is imputed to them. Further, this transaction was a breach of Lee's fiduciary duty to the Shaver Plan, its participants and beneficiaries under 29 C.F.R. § 2510.3-101.

178.     Plaintiff and the Shaver Plan have been damaged by these prohibited transactions and breaches of fiduciary duty and are entitled to an order requiring all involved Defendants, pursuant to 29 U.S.C. §§ 1132(a)(3) and 1106, to rescind and unwind any and all such prohibited transactions in which they have engaged as parties in interest and/or knowing participants, and requiring all involved Defendants set forth in this cause of action to restore to the Shaver Plan all assets transferred therefrom in relation to or as a part of any prohibited transaction.

### THIRD CAUSE OF ACTION
### (Failure to Make Distributions to Plaintiff, Under ERISA)

179.     Plaintiff realleges and incorporate by reference Paragraphs 1 through 178.

180.     As set forth in Paragraphs 118 through 136 Defendant PFMS, Inc., as Plan Administrator of the Shaver Plan, has failed to direct Defendant Lee, as Trustee under the Shaver Plan, to make any distribution to Plaintiff in accordance with the terms of the Shaver Plan, and Defendant Lee, as Trustee under the Shaver Plan has failed to make any distribution to the Shaver Plan in accordance with the terms of the Shaver Plan.

181.     Pursuant to 29 U.S.C. § 1132(a)(1)(B), Plaintiff is entitled to and seeks to recover from the Shaver Plan all benefits due to Plaintiff under the terms of the Shaver Plan.

### FOURTH CAUSE OF ACTION
### (Breach of Fiduciary Duties under North Carolina Law:  Against Defendant PFMS, Inc. and Defendant Lee)

182.     Plaintiffs realleges and incorporate by reference Paragraphs 1 through 181.

183.     Defendant PFMS, Inc. as plan administrator and Defendant Lee as trustee under the Shaver Plan and as president and sole director of Defendant PFMS, Inc. at all relevant times owed the fiduciary duties of utmost loyalty, good faith and due regard to Plaintiff and the Shaver Plan.

184.     As a 40% beneficiary of the Shaver Account, Plaintiff reposed a special trust and confidence in Defendant PFMS, Inc. and Defendant Lee that they would carry out their duties as administrator and trustee under the Shaver Plan in accordance with the terms of the Shaver Plan and with the fiduciary duties imposed on them by law.

185.     Defendant PFMS, Inc., as plan administrator, and Defendant Lee, as trustee of the Shaver Plan and president and sole director of Defendant PFMS, Inc., breached their fiduciary duties to the Shaver Plan and to Plaintiff, to the detriment of Plaintiff and the Shaver Plan in the following ways:

a.      By failing to manage and invest the assets of the Shaver Plan for the purpose of distributing the assets to the beneficiaries after the death of Paul Shaver on July 30, 2006;

b.      By failing to pay and/or recover for the Shaver Plan its pro rata share, and up to all proceeds (excluding reasonable closing costs) from the 2015 sale of the BIS Condo Project, including the sale of the assets of Defendant BIS, Inc. and the real property owned together by the Shaver Plan and Defendant Lancaster Plan, in repayment of the Shaver Plan BIS Loans;

c.      By writing off the Shaver Plan BIS Loans to Defendant BIS, Inc. in their entirety;

d.      By Defendant Lee's making of excessive distributions of the sale proceeds of the BIS Condo Project to one or more of the Black Pelican Defendants, Defendant Lee personally, Defendant Lancaster Plan, Gray and Lloyd, LLP, Sammy Moore, Eddie Goodrich and "Calfee";

e.      By Defendant Lee knowingly making a personal loan to Defendant BIS, Inc. of approximately $600,000.00 in a manner that guaranteed the loan had higher priority than the loans made by the Shaver Plan to Defendant BIS, Inc.

f.      By Defendant Lee as President of Defendant Black Pelican Seafood Company, Inc. knowingly making a loan to Defendant BIS, Inc. in a manner that guaranteed the loan had higher priority that the loans made by the Shaver Plan to BIS, Inc.

g.      By causing the Shaver Plan to lend more than $8,000,000.00 in unsecured loans to Defendant BIS, Inc., knowing that full or even substantial repayment to the Shaver Plan was improbable or impossible, as Defendant BIS, Inc. and the BIS Condo Project were a failing business venture;

h.      By using Shaver Plan funds to pay off the entirety of the RBC BIS Loan of more than $3,000,000.00 to Defendant BIS, Inc. in 2014, thereby depleting the Shaver Plan's liquid assets which could have been distributed to beneficiaries and ignoring the RBC BIS Loan guarantees of Defendant Lancaster Plan, Defendant Shaver Estate, Defendant John Lancaster, and Defendant BIR, Inc. without any payment or contribution from these Defendants, and by failing to demand and make claims for contribution from the co-guarantor Defendants and by failing to enforce the Shaver Plan's subrogation rights against Defendant BIS, Inc.;

i.      Defendant Lee as Trustee under the Shaver Plan failed to demand and enforce any claims for contribution against Defendant Lancaster Plan even though (i) the Shaver Plan loaned more than eight times more money than the Lancaster Plan for the BIS Condo Project; (ii) in excess of $8,000,000.00 in loans remained, at the time of such distribution, due and owing to the Shaver Plan; (iii) Defendant Lancaster Plan was a co-guarantor of the RBC BIS Loan and possessed ownership interests identical to that held by the Shaver Plan in the BIS Condo Project; and (iv) Defendant Lee knew half of the net proceeds, approximately $1,039,184.34, from the sale of the real estate of the BIS Condo Project was distributed to Defendant Lancaster Plan.

j. By causing the Shaver Plan to transfer the Black Pelican Restaurant Property to herself and Defendant Morris, who simultaneously conveyed this property in the same deed to Defendant Black Pelican, LLC, while failing, and continuing to fail, to make a distribution of equivalent value to Plaintiff as a beneficiary of the Shaver Account;

k. By causing the Shaver Plan to incur a debt of at least $2,460,000.00, failing to use said funds for the benefit of the Shaver Plan, distributing the encumbered Black Pelican Restaurant Property to Defendant Lee and Defendant Morris at a value of $190,000.00, asserting that the value of the Black Pelican Restaurant Property is the value per an appraisal which pre-dated the loan, minus the amount of the loan;

l. By improperly using or transferring the loan proceeds secured by the Black Pelican Restaurant Property to Defendant Lee, Defendant Morris, and/or an entity in which Defendant Lee and/or Defendant Morris held an interest in or acted on behalf of in a fiduciary capacity;

m. By failing to account for $780,000.00 of value in the distribution of the Black Pelican Restaurant Property as described in Paragraph 61.

n. By failing to disclose and actively concealing from Plaintiff the following information which Defendant PFMS, Inc. the plan administrator and Defendant Lee as trustee under the Shaver Plan and president of PFMS, Inc., had an affirmative duty as a fiduciary to provide following Plaintiff's requests to be kept informed about the following distributions and transfers made by the Shaver Plan:

(i) The transfer of the Black Pelican Restaurant Property to Defendant Lee and Defendant Morris, and their contemporaneous transfer of the same to Defendant Black Pelican, LLC, owned 50/50 by Defendant Lee and Defendant Morris; and

(ii)     Upon information and belief, the improper use or transfer of loan proceeds to Defendant Lee, Defendant Morris, and/or an entity in which Defendant Lee and/or Defendant Morris held an interest in or acted on behalf of in a fiduciary capacity.

(iii)     The failure to account for $780,000.00 of value in the distribution of the Black Pelican Restaurant Property as described in Paragraph 61.

n.     By misrepresenting to Plaintiff that a substantial portion of the sale proceeds of the BIS Condo Project would be used to repay the loans in excess of $8,000,000.00 made by the Shaver Plan to Defendant BIS, Inc.;

o.     By failing to disclose and actively concealing from Plaintiff prior to the sale of the BIS Condo Project the following information which Defendant PFMS, Inc. the plan administrator and Defendant Lee as trustee under the Shaver Plan and president of PFMS, Inc., had an affirmative duty as a fiduciary to provide following Plaintiff's requests to be kept informed about the sale of the BIS Condo Project:

(i)     Defendant Lee's plans and intentions for distributing the proceeds from the sale of Defendant BIS, Inc. and the real estate of the BIS Condo Project in the manner in which she did so, as alleged above;

(ii)     Defendant Lee's plan and intention to write off the loans in excess of $8,000,000.00 made by the Shaver Plan to Defendant BIS, Inc. in the manner in which she did so, as alleged above;

(iii)     Defendant Lee's positions as officers and fiduciaries of Defendant Lancaster Plan and the Black Pelican Defendants, whose interests were directly adverse to the interests of the Shaver Plan in the sale of the BIS Condo Project and the distributions of the proceeds for the same;

(iv)    The existence of the secured loans made by Defendant Lee personally and Defendant Black Pelican Seafood Company, Inc. to Defendant BIS, Inc., and that said loans had priority over the unsecured loans in excess of $8,000,000.00 that the Shaver Plan made to Defendant BIS, Inc.;

(v)    The payoff of the RBC BIS Loan of more than $3,000,000.00 solely with Shaver Plan funds, thereby ignoring the loan guarantees of Defendant Shaver Estate, Defendant Lancaster, Defendant Lancaster Plan, and Defendant BIR, Inc. and unjustly benefitting these Defendants to the detriment of the Shaver Plan and Plaintiff.

p.    By causing the Shaver Plan to lease its one-half undivided interest in the real property of Defendant Sugar Creek III to Defendant Sugar Creek I without a written lease agreement;

q.    By contending the distributions of the ownership interest in Defendant Sugar Creek III to Defendant Lee and Defendant Morris had a total value of $500.00 in 2008, even though Defendant Sugar Creek III owns a one-half undivided in real property that was appraised at more than $3,000.000.00 in 2010;

r.    By personally accepting as a beneficiary of the Shaver Account the distribution of Defendant Sugar Creek III by the Shaver Plan to her;

s.    By contending the distributions of Sugar Creek III to Defendant Lee and Defendant Morris had a total value of $500.00 in 2008, though Sugar Creek III owns a one-half undivided in real property that was appraised at more than $3,000,000.00 in 2010;

t.    By causing the Shaver Plan to transfer, and/or to lend without security and as a subordinate loan, in excess of $2,360,000.00 between 2005 and 2008 to Defendant Sugar Creek II and/or Defendant Sugar Creek III, knowing that full or even substantial repayment or a

return on the investment for the Shaver Plan was improbable or impossible, and despite Defendant Lee's contention that Defendant Sugar Creek III had a total value of $500.00 in 2008;

u.    By failing to enforce the promissory note in favor of the Shaver Plan dated April 1, 2008 against Defendant Sugar Creek II and Defendant Sugar Creek III, and/or by failing to pursue legal remedies against Defendant Sugar Creek II and Defendant Sugar Creek III for recovery of damages for their breach of said promissory note, which failure effectively constitutes the forgiveness of the debt and an outright transfer of the funds from the Shaver Plan to Defendant Sugar Creek II and Defendant Sugar Creek III;

v.    By causing the Shaver Plan to lend $491,864.00 to Defendant Sugar Creek I (of which Defendant Lee is a corporate officer and a 10% shareholder, and of which the Shaver Estate, with Defendant Lee as co-executrix, is a 40% shareholder);

w.    By failing to provide and actively concealing from Plaintiff information concerning: (i) the distribution of Sugar Creek III and the value of the assets held by Sugar Creek III at the time of distribution; (ii) the nature of Defendant Lee's interest in Sugar Creek I and the conflict of interest arising therefrom; (iii) the Shaver Plan's investment in Sugar Creek III and said investment's "re-characterization" as a loan; (iv) the inability of Sugar Creek III to repay the loan made by the Shaver Plan; (v) the effective transfer by the Shaver Plan of an amount in excess of $2,360,000.00 to Defendant Sugar Creek III and/or Defendant Sugar Creek II by failing to enforce the promissory note dated April 1, 2008; and (vi) the loan made by the Shaver Plan to Sugar Creek I;

x.    By failing to make distributions of the Shaver Plan assets to Plaintiff as a 40% beneficiary of the Shaver Account;

y.      By making discriminatory and inequitable distributions of the Shaver Plan assets to Defendant Lee and Defendant Morris and by making such distributions in kind rather than in cash, rendering it impossible to accurately divide Paul Shaver's interest in the Shaver Plan among all three beneficiaries in the proportions he directed;

z.      By executing a promissory note on behalf of the Shaver Plan in favor of Plaintiff in the amount of $2,456,350.00 in lieu of proper plan distributions, which Plaintiff did not and has not accepted;

aa.      By failing to distribute all assets held in the Shaver Account to the beneficiaries, or any distributions due to Plaintiff, within five (5) years of Paul Shaver's date of death on July 30, 2006, as required by the terms of the Shaver Plan and Section 401(a)(9) of the Internal Revenue Code of 1986 and the regulations thereunder;

bb.      By informing Plaintiff as recently as October 2016 that Defendant Lee no longer considers Plaintiff a beneficiary of the Shaver Account, but a mere creditor, a statement never made by Defendant Lee or anyone on her behalf, prior to that time;

cc.      By, upon information and belief, failing to maintain after December 31, 2007 a separate account for each beneficiary of the Shaver Account reflecting each beneficiary's account balance in the funds held therein;

dd.      By failing to file suit against the other defendants in this matter to recover monetary amounts due to Plaintiff and the Shaver Plan, as alleged hereinafter;

ee.      By failing to request or to file a Declaratory Judgment Action on behalf of the Shaver Plan and Plaintiff for a court of appropriate jurisdiction to interpret the Beneficiary Designation Form and to determine whether Plaintiff is in fact a 40% beneficiary of the Shaver Plan even though there are patent ambiguities as to this issue in the terms of the Beneficiary

Designation Form and the Paul F. M. Shaver, III Trust dated May 24, 2002, while suddenly in 2018 changed their position and informed Plaintiff that it is not a 40% beneficiary of the Shaver Plan (despite continuing to represent to the IRS that Plaintiff is indeed a 40% beneficiary of the Shaver Plan after having received a distribution in excess of $6,000,000.00); and

ff.     In such other ways as Plaintiff discovers during the course of litigation and at the trial of this matter.

186.     Upon information and belief, as a result of Defendant PFMS, Inc.'s and Defendant Lee's breaches of fiduciary duties, Plaintiff and the Shaver Plan have been damaged and are entitled to recover from Defendant PFMS, Inc. and Defendant Lee an amount in excess of $10,000,000.00, as well as punitive damages under N.C. Gen. Stat. § 1D-1, *et seq*., due to the fraudulent, malicious, and willful and wanton nature of their breaches of fiduciary duties, and all attorneys' fees and costs incurred by Plaintiff in prosecuting this action.

187.     Plaintiff and the Shaver Plan are further entitled to an order (i) requiring Defendant PFMS, Inc. and Defendant Lee to disgorge any monetary amounts they have received from the above-alleged breaches of fiduciary duties, (ii) requiring Defendant PFMS, Inc. and Defendant Lee to restore to the Shaver Plan all monetary amounts they have lost as a direct and proximate result of Defendant PFMS, Inc.'s and Defendant Lee's breaches of fiduciary duties, (iii) imposing restitutionary liens on Defendant Lee's real estate interest in the Black Pelican Seafood Restaurant owned by Black Pelican, LLC and her interest in the real property owned by Defendant Sugar Creek III, and all other real property interests of Defendant Lee, in favor of the Shaver Plan, in said amount, (iv) requiring Defendant Lee to convey her interest in Defendant Sugar Creek III back to the Shaver Plan, and (v) imposing constructive trusts on all property interests that any Defendant in this matter has obtained as a result of the above-alleged breaches of fiduciary duties.

188.    In addition thereto, Plaintiff and the Shaver Plan are entitled to and request an order granting (i) the immediate removal of Defendant Lee as trustee of the Shaver Plan and appointing a new receiver to take over operations of Defendant PFMS, Inc. and appointing a new trustee of the Shaver Plan, in order to protect the current assets held thereby until the conclusion of this matter, and/or (ii) a preliminary injunction to maintain the status quo of the Shaver Plan to prevent further distributions, transfers, and any waste of the funds currently owned by the Shaver Plan until the conclusion of this matter.

189.    Defendant PFMS, Inc.'s and Defendant Lee's breaches of fiduciary duties are imputed to the Shaver Plan, which are therefore jointly and severally liable with Defendant PFMS, Inc. and Defendant Lee for Plaintiff's damages proximately caused by the same.

## FIFTH CAUSE OF ACTION
### (Constructive Fraud:  Against Defendant Lee)

190.    Plaintiff realleges and incorporates by reference Paragraphs 1 through 189.

191.    Defendant Lee took advantage of her position and power as trustee under the Shaver Plan and as president and director of both Defendant PFMS, Inc. and BIS, Inc., and personally benefited herself by her breaches of fiduciary duties to the detriment of and at the expense of Plaintiff and the Shaver Plan in the following ways:

    a.    By Defendant Lee knowingly making a personal loan to Defendant BIS, Inc. of approximately $600,000.00 in a manner that guaranteed the loan had higher priority than the loans made by the Shaver Plan to Defendant BIS, Inc.

    b.    By distributing $615,594.69 of the proceeds from the sale of the assets of Defendant BIS, Inc. to herself personally, in repayment of the secured loan described in Paragraph 188(a), while failing to pay and/or recover for the Shaver Plan the amounts it loaned to Defendant BIS, Inc., and writing off the Shaver Plan loans to Defendant BIS, Inc.;

c.　By causing the Shaver Plan to transfer the Black Pelican Restaurant Property to herself and to Defendant Morris in equal shares and subsequently conveying the same with Defendant Morris to Defendant Black Pelican, LLC, while failing, and continuing to fail, to make an equivalent distribution to Plaintiff as a beneficiary of the Shaver Account;

d.　By undervaluing the Black Pelican Restaurant Property at the time of the transfer to herself and Defendant at $190,000.00, which is the value per an appraisal that pre-dated the loan, minus the amount of the loan;

e.　By upon information and belief, improperly transferring to or using for the benefit of herself, Defendant Morris, and/or an entity in which she and/or Defendant Morris held an interest in or acted on behalf of in a fiduciary capacity an amount of at least $2,460,000.00 in loan proceeds from RBC Centura Bank secured by the Black Pelican Restaurant Property;

f.　By failing to disclose and actively concealing from Plaintiff prior to the sale of the BIS Condo Project her plan for distributing the proceeds from the sale of the assets of Defendant BIS, Inc., including her plan to pay $615,594.69 to herself and only $262,087.59 to the Shaver Plan;

g.　By causing the Shaver Plan to distribute Sugar Creek III to herself and Defendant Morris in equal shares as beneficiaries of the Shaver Account, while failing, and continuing to fail, to make an equivalent distribution to Plaintiff as a beneficiary;

h.　By contending the distributions of Sugar Creek III to Defendant Lee and Defendant Morris had a total value of $500.00 in 2008, though Sugar Creek III owns a one-half undivided interest in real property that was appraised at more than $3,000,000.00 in 2010 and received more than $2,360,000.00 from the Shaver Plan from 2005 through 2008;

i.  By effectively transferring Shaver Plan funds in an amount in excess of $2,360,000.00 to Defendant Sugar Creek III and/or Defendant Sugar Creek II due to failing to enforce the promissory note dated April 1, 2008 which upon information and belief directly or indirectly benefitted Defendant Lee;

j.  By failing to make any distributions of the Shaver Plan assets to Plaintiff as a 40% beneficiary, while making distributions of more than $850,000.00 to herself and more than $1,500,000.00 to Defendant Morris;

k.  By informing Plaintiff as recently as October 2016 that Defendant Lee no longer considers Plaintiff a beneficiary of the Shaver Account, but a mere creditor, a statement never made by Defendant Lee or anyone on her behalf prior to that time;

l.  By failing to recover any amounts Defendant Lee has improperly received or has been unjustly enriched as a result of her constructive fraud and breaches of fiduciary duties; and

m.  In such other ways as Plaintiff discovers during the course of litigation and at the trial of this matter.

192.  Upon information and belief, as a result of Defendant Lee's constructive fraud, Plaintiff and the Shaver Plan have been damaged and are entitled to recover from Defendant Lee an amount in excess of $1,000,000.00, and possibly exceeding $5,000,000.00, as well as punitive damages under N.C. Gen Stat. § 1D-1, *et seq.*, and all attorneys' fees and costs incurred by Plaintiff in prosecuting this action.

193.  Plaintiff and the Shaver Plan are further entitled to an order (i) requiring Defendant Lee to disgorge any monetary amounts she has received from the above-alleged transactions, (ii) requiring Defendant Lee to restore to the Shaver Plan all monetary amounts they have lost as a

direct and proximate result of Defendant Lee's constructive fraud and (iii) imposing restitutionary liens on her real estate interest in the Black Pelican Seafood Restaurant owned by Black Pelican, LLC and her interest in the real property owned by Defendant Sugar Creek III, and all other real property interests of Defendant Lee, in favor of the Shaver Plan in said amount, (iv) requiring Defendant Lee to convey her interest in Defendant Sugar Creek III back to the Shaver Plan, and (v) imposing constructive trusts of all property interests Defendant Lee has obtained from the above-alleged transactions.

<u>**SIXTH CAUSE OF ACTION**</u>
**(Violations of the North Carolina Unfair and Deceptive Trade Practices Act: Against Defendant PFMS, Inc. and Defendant Lee)**

194.    Plaintiff realleges and incorporates by reference Paragraphs 1 through 193.

195.    At all relevant times, Defendant PFMS, Inc. and Defendant Lee were engaged in commerce in the State of North Carolina.

196.    The above-alleged transactions in which Defendant PFMS, Inc. and Defendant Lee breached her fiduciary duties and/or committed constructive fraud were in or affecting commerce, and constitute unfair and deceptive trade practices proscribed by Chapter 75 of the North Carolina General Statutes.

197.    Upon information and belief, Defendant PFMS, Inc.'s and Defendant Lee's unfair and deceptive trade practices have damaged Plaintiff, and Plaintiff is entitled to recover from Defendant Lee an amount in excess of $1,000,000.00, and possibly exceeding $5,000,000.00, as shall be shown at the trial of this matter.

198.    Plaintiff is further entitled to have its compensatory damages trebled and to recover its attorneys' fees incurred in this action pursuant to Chapter 75 of the North Carolina General Statutes.

## SEVENTH CAUSE OF ACTION
### (Breach of Contract and the Implied Covenant of Good Faith and Fair Dealing: Against Defendant PFMS, Inc. and Defendant Lee)

199.    Plaintiff realleges and incorporates by reference Paragraphs 1 through 198.

200.    Defendant PFMS, Inc. and Defendant Lee have failed to comply with the terms of the Shaver Plan to make distributions of the Shaver Plan assets to the beneficiaries within five (5) years of Paul Shaver's death on July 30, 2006.

201.    Defendant PFMS, Inc. and Defendant Lee have failed to make any distributions of the Shaver Estate assets to Plaintiff and further have failed to distribute all assets of the Shaver Plan to date, in breach of contract and the implied covenant of good faith and fair dealing, as required by the terms of the Shaver Plan and Section 401(a)(9) of the Internal Revenue Code of 1986 and the regulations thereunder.

202.    Upon information and belief, Defendant PFMS, Inc. and Defendant Lee are also in breach of contract by failing to maintain after December 31, 2007 a separate account for each beneficiary of the Shaver Plan reflecting each beneficiary's account balance in the funds of the Shaver Account.

203.    Upon information and belief, as a direct and proximate result of Defendant PFMS, Inc.'s and Defendant Lee's breach of contract and the implied covenant of good faith and fair dealing, Plaintiff has been damaged and is entitled to recover from Defendant Lee an amount in excess of $4,000,000.00.

204.    Defendant PFMS, Inc.'s and Defendant Lee's breaches of contract and the implied duty of good faith and fair dealing are imputed to the Shaver Plan, which are therefore jointly and severally liable with Defendant PFMS, Inc. and Defendant Lee for Plaintiff's damages proximately caused by the same.

## EIGHTH CAUSE OF ACTION
### (Unjust Enrichment:  Against Defendant Lee)

205.    Plaintiff realleges and incorporates by reference Paragraphs 1 through 204.

206.    Due to Defendant PFMS, Inc.'s and Defendant Lee's breach of fiduciary duties and constructive fraud, Defendant Lee, directly and/or indirectly, has received improper distributions and loan proceeds as a beneficiary of the Shaver Account, including but not limited to (a) a one-half undivided interest in the Black Pelican Restaurant Property, (b) some or all of the at least $2,460,000.00 in loan proceeds from RBC Centura Bank secured by the Black Pelican Restaurant Property, (c) the $780,000.00 of value not accounted for in the distribution of the Black Pelican Restaurant Property further described in Paragraph 61, (d) a 50.001% ownership interest in Sugar Creek III, (e) some or all of the $2,360,000.00 in Shaver Plan loans to Defendant Sugar Creek III and/or to Defendant Sugar Creek II, and (f) approximately $763,000.00 in cash, while Plaintiff has received no distributions to date.

207.    Additionally, Defendant PFMS, Inc. and Defendant Lee improperly paid $615,594.69 of the proceeds of the sale of the assets of BIS, Inc. to Defendant Lee personally, while failing to repay and writing off the loans made to Defendant BIS, Inc. by the Shaver Plan.

208.    Upon information and belief, Defendant Lee was unjustly enriched, directly and/or indirectly, by more than $1,000,000.00, and possibly exceeding $5,000,000.00, in that she distributed to herself, and received and accepted, these property interests and monetary amounts, while knowing that she was depriving the Shaver Plan of assets and loan repayments, and while depriving, and continuing to deprive, Plaintiff of its share of the Shaver Account as a beneficiary.

209.    Defendant Lee, as trustee under the Shaver Plan and in further breach of her fiduciary duties, has improperly refused and neglected to bring an action against herself to recover these improper distributions and transfers on behalf of the Shaver Plan.

210.     Plaintiff and the Shaver Plan have been damaged as a result of Defendant Lee's unjust enrichment, and are entitled to recover of Defendant Lee an amount in excess of $1,000,000.00, and possibly exceeding $5,000,000.00, for the same, as shall be proven at trial.

211.     Plaintiff and the Shaver Plan are further entitled to an order (i) imposing constructive trusts on all property interests that Defendant Lee has obtained from her unjust enrichment, (ii) imposing restitutionary liens on Defendant Lee's interest in the Black Pelican Seafood Restaurant Property owned by Black Pelican, LLC and her interest in the real property owned by Defendant Sugar Creek III, and all other real property interests of Defendant Lee, in favor of the Shaver Plan, in the amount of her unjust enrichment, and/or (iii) requiring Defendant Lee to convey her interest in Defendant Sugar Creek III back to the Shaver Plan.

212.     The requested remedies are appropriate so that the Shaver Plan can be made whole and the beneficiaries can receive what they should have received had the provisions of the Shaver Plan been adhered to.

## NINTH CAUSE OF ACTION
### (Unjust Enrichment:  Against Defendant Morris)

213.     Plaintiff realleges and incorporates by reference Paragraphs 1 through 212.

214.     Due to Defendant PFMS Inc.'s and Defendant Lee's breach of fiduciary duties and/or constructive fraud, Defendant Morris, directly and/or indirectly, has received improper distributions and loan proceeds as a beneficiary of the Shaver Account, including (a) a one-half undivided interest in the Black Pelican Restaurant Property, (b) some or all of the at least $2,460,000.00 in loan proceeds from RBC Centura Bank secured by the Black Pelican Restaurant Property, (c) the $780,000.00 of value not accounted for in the distribution of the Black Pelican Restaurant Property further described in Paragraph 61, (d) a 49.999% ownership interest in Defendant Sugar Creek III, (e) some or all of the $2,360,000.00 in Shaver Plan loans to Defendant

Sugar Creek III and/or to Defendant Sugar Creek, and (f) approximately $1,422,166.00 in cash, while Plaintiff has received no distributions to date.

215.    Upon information and belief, Defendant Morris was unjustly enriched, directly and/or indirectly, by more than $1,000,000.00, and possibly exceeding $5,000,000.00, in that she received and accepted these property interests and monetary amounts in excess of her share as a beneficiary of the Shaver Account at the expense of Plaintiff and while knowing that Plaintiff was not paid its share, or in fact any distribution, of the Shaver Plan assets.

216.    Defendant Lee, as trustee under the Shaver Plan and in further breach of her fiduciary duties, has improperly refused and neglected to bring an action against Defendant Morris to recover these improper distributions and transfers on behalf of the Shaver Plan and/or Plaintiff.

217.    Plaintiff and the Shaver Plan have been damaged as a result of Defendant Morris's unjust enrichment, and are entitled to recover of Defendant Morris an amount in excess of $1,000,000.00, and possibly exceeding $5,000,000.00 for the same, as shall be shown at trial.

218.    Plaintiff and the Shaver Plan are further entitled to an order (i) imposing constructive trusts on all property interests that Defendant Morris has obtained as a result of her unjust enrichment, (ii) imposing restitutionary liens on Defendant Morris's real estate interest in the Black Pelican Seafood Restaurant Property owned by Black Pelican, LLC and the real property interests of Defendant Sugar Creek III, and all other real property interests of Defendant Morris, in favor of the Shaver Plan, in the amount of her unjust enrichment, and/or (iii) requiring Defendant Morris to convey her interest in Defendant Sugar Creek III back to the Shaver Plan.

### TENTH CAUSE OF ACTION
**(Unjust Enrichment:  Against Defendant Black Pelican, LLC)**

219.    Plaintiff realleges and incorporates by reference Paragraphs 1 through 218.

220. In 2008, Defendant PFMS, Inc. and Defendant Lee transferred the Black Pelican Restaurant Property from the Shaver Plan to Defendant Morris and Defendant Lee, who simultaneously conveyed this property in the same deed to Black Pelican, LLC, of which Defendant Lee and Defendant Morris are both 50% owners.

221. Defendant PFMS, Inc. and Defendant Lee failed, and continues to fail, to make an equivalent distribution of the same to Plaintiff, which is a breach of their fiduciary duties and which constitutes constructive fraud by Defendant Lee.

222. Upon information and belief, Defendant Black Pelican, LLC was unjustly enriched in that it received and accepted (a) the Black Pelican Restaurant Property at the expense of Plaintiff, while its owners, Defendant Lee and Defendant Morris, knew that Plaintiff had not received an equivalent distribution, (b) some or all of the at least $2,460,000.00 in loan proceeds from RBC Centura Bank secured by the Black Pelican Restaurant Property, (c) the $780,000.00 of value not accounted for in the distribution of the Black Pelican Restaurant Property further described in Paragraph 61, and (d) a 50.001% ownership interest in Sugar Creek III.

223. Defendant Lee, as trustee under the Shaver Plan and in further breach of her fiduciary duties, has improperly refused and neglected to bring an action against Defendant Black Pelican, LLC, an entity of which she is a member/manager and 50% owner, to recover this improper transfer on behalf of Shaver Plan and/or Plaintiff.

224. Plaintiff and the Shaver Plan have been damaged as a result of Defendant Black Pelican, LLC's unjust enrichment, and are entitled to recover of Defendant Black Pelican, LLC an amount in excess of $75,000.00, and possibly exceeding $3,000,000.00, for the same, as shall be shown at trial.

225.     Plaintiff, the Shaver Plan are further entitled to an order (i) imposing constructive trusts on all property interests that Black Pelican, LLC has obtained as a result of its unjust enrichment, and (ii) imposing a restitutionary lien on the Black Pelican Seafood Restaurant Property, and all other real property interests of Black Pelican, LLC, in favor of the Shaver Plan, in the amount of its unjust enrichment, and/or (ii) requiring Black Pelican, LLC to convey the Black Pelican Seafood Restaurant Property back to the Shaver Plan.

## ELEVENTH CAUSE OF ACTION
### (Unjust Enrichment:  Against One or More of the Black Pelican Defendants)

226.     Plaintiff hereby realleges and incorporates by reference Paragraphs 1 through 225.

227.     Defendant Lee breached her fiduciary duties to the Shaver Plan by securing the $2,000,000.00 loan of Defendant Black Pelican Seafood Company, Inc. to Defendant BIS, Inc., while failing to secure, and thus subordinating, the loans in excess of $8,000,000.00 that the Shaver Plan made to Defendant BIS, Inc.

228.     Upon information and belief, in 2015 Defendant PFMS, Inc. and Defendant Lee paid one or more of the Black Pelican Defendants $1,559,010.34, which distribution repaid approximately 77.9% of its $2,000,000.00 loan.

229.     By contrast, in 2015 Defendant PFMS, Inc. and Defendant Lee paid the Shaver Plan $262,087.59, which constituted a repayment of approximately 3.2% of the more than $8,000,000.00 that the Shaver Plan loaned to Defendant BIS, Inc.

230.     Defendant PFMS, Inc. and Defendant Lee further breached their fiduciary duties to the Shaver Plan in 2015 by not distributing all net proceeds of the sale of the assets of Defendant BIS, Inc., excluding reasonable closing costs, to repay the Shaver Plan's BIS Loans in excess of $8,000,000.00.

231. Upon information and belief, one or more Black Pelican Defendants, each of which Defendant Lee serves as an officer or owner, have been unjustly enriched in the amount of $1,559,010.34 by receiving and accepting the improper distribution of the same at the expense of the Shaver Plan, while knowing Defendant PFMS, Inc. and Defendant Lee wrongfully failed to pay the Shaver Plan all net proceeds of the sale of the assets of Defendant BIS, Inc.

232. Defendant Lee, as trustee under the Shaver Plan and in further breach of her fiduciary duties, has improperly refused and neglected to bring an action against one or more of the Black Pelican Defendants to recover this improper distribution to one or more of the Black Pelican Defendants on behalf of the Shaver Plan and/or Plaintiff.

233. Plaintiff and the Shaver Plan have been damaged as a result the unjust enrichment of one or more of the Black Pelican Defendants, and are entitled to recover from Defendant Black Pelican Seafood Company, Inc., Defendant Black Pelican, LLC, and/or Defendant Black Pelican Ventures, Inc. $1,559,010.34, as shall be shown at trial.

234. Plaintiff and the Shaver Plan are further entitled to an order imposing (i) constructive trusts on all property interests obtained by Defendant Black Pelican Seafood Company, Inc., Defendant Black Pelican, LLC and/or Defendant Black Pelican Ventures, Inc. as a result of their unjust enrichment and (ii) restitutionary liens on all real property interests of the Black Pelican Defendants which received any part of the $1,559,010.34 distribution from Defendant Lee, in the appropriate amounts, in favor of the Shaver Plan.

**TWELFTH CAUSE OF ACTION**
**(Unjust Enrichment: Against Defendant Lancaster Plan)**

235. Plaintiff hereby realleges and incorporates by reference Paragraphs 1 through 234.

236.     Defendant Lee breached her fiduciary duties to the Shaver Plan in 2015 by not distributing all net proceeds of the sale of the BIS Condo Project, excluding reasonable closing costs, to repay the Shaver Plan's BIS Loans in excess of $8,000,000.00.

237.     In 2015 Defendant Lee paid Defendant Lancaster Plan $262,087.59 of the sale of the assets of Defendant BIS, Inc., which distribution repaid approximately 26.2% of the $1,000,000.00 loan made by Defendant Lancaster Plan to Defendant BIS, Inc.

238.     By contrast, in 2015 Defendant PFMS, Inc. and Defendant Lee paid the Shaver Plan $262,087.59, which constituted a repayment of approximately 3.2% of the more than $8,000,000.00 that the Shaver Plan loaned to Defendant BIS, Inc.

239.     Defendant Lee also distributed half of the net proceeds of the sale of the real estate of the BIS Condo Project (or $1,039,184.34) each to the Shaver Plan and to Defendant Lancaster Plan, although at the time of the these distributions (i) the Shaver Plan had loaned more than eight times more money than Defendant Lancaster Plan for the BIS venture and (ii) approximately $8,000,000.00 remained due and owing to the Shaver Plan.

240.     Upon information and belief, Defendant Lancaster Plan, under which Defendant Lee serves as a trustee, has been unjustly enriched by up to $1,301,271.93 by receiving and accepting the distributions alleged above, at the expense of the Shaver Plan, while knowing Defendant PFMS, Inc. and Defendant Lee wrongfully failed to pay all net proceeds of the BIS Condo Project to the Shaver Plan.

241.     Defendant Lee, as trustee under the Shaver Plan and in further breach of her fiduciary duties, has improperly refused and neglected to bring an action against Defendant Lancaster Plan to recover these improper distributions on behalf of the Shaver Plan and/or Plaintiff.

242.     Plaintiff and the Shaver Plan have been damaged as a result the unjust enrichment of Defendant Lancaster Plan, and are entitled to recover from Defendant Lancaster Plan $1,301,271.93, as shall be shown at trial.

243.     Plaintiff and the Shaver Plan are further entitled to an order imposing (i) constructive trusts on all property interests that Defendant Lancaster Plan has obtained as result of its unjust enrichment and (ii) restitutionary liens on all real property interests of Defendant Lancaster Plan, in favor of the Shaver Plan, in the amount of its unjust enrichment.

## THIRTEENTH CAUSE OF ACTION
### (Subrogation:  Against Defendant BIS, Inc.)

244.     Plaintiff realleges and incorporates by reference Paragraphs 1 through 243.

245.     In 2014, Defendant PFMS, Inc. and Defendant Lee breached her fiduciary duties to the Shaver Plan by using Shaver Plan funds to pay off the entirety of the RBC loan in excess of $3,000,000.00 to Defendant BIS, Inc.

246.     The Shaver Plan was a guarantor of the RBC BIS Loan.

247.     Due to its payoff of the RBC BIS Loan, the Shaver Plan is subrogated to RBC's claims and rights to repayment against Defendant BIS, Inc. and is entitled to enforce any security interest in any property that was used to secure the loan.

248.     Defendant Lee, as trustee under the Shaver Plan and in further breach of her fiduciary duties, has improperly refused and neglected to bring an action against Defendant BIS, Inc., an entity for which Defendant Lee serves as President, to recover these loan payoff funds on behalf of the Shaver Plan.

249.     The Shaver Plan therefore is entitled to and requests damages in excess of $3,000,000.00 from Defendant BIS, Inc., and an order enforcing any security interest in any property that was used to secure the RBC BIS Loan.

## FOURTEENTH CAUSE OF ACTION
### (Breach of Contract, Breach of Promissory Note and/or Unjust Enrichment: Against Defendant BIS, Inc.)

250.    Plaintiff realleges and incorporates by reference Paragraphs 1 through 249.

251.    Defendant PFMS, Inc. and Defendant Lee breached their fiduciary duties to the Shaver Plan by making loans in excess of $8,000,000.00 to Defendant BIS, Inc., an entity for which Defendant Lee serves as President, (i) knowing that it was improbable or impossible that Defendant BIS, Inc. would repay even this amount in full to the Shaver Plan and (ii) by failing to enforce on behalf of the Shaver Plan a certain promissory note dated April 16, 2009 in the amount of at least $8,181,163.00 issued by Defendant BIS, Inc. in favor of the Shaver Plan.

252.    Upon information and belief, Defendant BIS, Inc. has failed to repay this loan amount to the Shaver Plan, in breach of the terms of the promissory note.

253.    In the alternative, upon information and belief, Defendant BIS, Inc. has been unjustly enriched by accepting and receiving in excess of $8,000,000.00 of Shaver Plan funds without repaying the same at the expense of the Shaver Plan, knowing it would not repay the Shaver Plan for this amount, and having no intention of doing so.

254.    Defendant Lee, as trustee under the Shaver Plan and in further breach of her fiduciary duties, has improperly refused and neglected to bring an action against Defendant BIS, Inc. to recover repayment of this loan on behalf of the Shaver Plan and/or Plaintiff.

255.    Plaintiff and the Shaver Plan have been damaged as a result of Defendant BIS, Inc.'s breach of contract and/or unjust enrichment, and are entitled to recover from Defendant BIS, Inc. in excess of $8,000,000.00, as shall be shown at trial.

256.    Plaintiff and the Shaver Plan are further entitled to an order imposing (i) constructive trusts on all property interests that Defendant BIS, Inc. has obtained as a result of its

unjust enrichment and (ii) restitutionary liens on all real property interests of Defendant BIS, Inc., in favor of the Shaver Plan, in the amount of its unjust enrichment.

**FIFTEENTH CAUSE OF ACTION**
**(Contribution and/or Unjust Enrichment:  Against Defendant Lancaster Plan,**
**Defendant Shaver Estate, Defendant John Lancaster and Defendant BIR, Inc.)**

257.    Plaintiff realleges and incorporates by reference Paragraphs 1 through 256.

258.    In 2014, Defendant PFMS, Inc. and Defendant Lee breached their fiduciary duties to the Shaver Plan by using Shaver Plan funds to pay off the entirety of the RBC loan in excess of $3,000,000.00 to Defendant BIS, Inc., and thereby ignored the guarantees on said loan made by Defendant Lancaster Plan, Defendant Shaver Estate, Defendant John Lancaster and Defendant BIR, Inc. without seeking contribution or payment from any of these Defendants.

259.    The Shaver Plan was one of five guarantors of the RBC BIS Loan, and as such the Shaver Plan was not responsible for paying off the entirety of RBC BIS Loan, but rather only its pro-rata share, despite Defendant PFMS, Inc.'s and Defendant Lee's wrongful act of using Shaver Plan funds to pay off the entire loan.

260.    Upon information and belief, Defendant Lancaster Plan, Defendant Shaver Estate, Defendant John Lancaster and Defendant BIR, Inc. are liable for contribution to the Shaver Plan in an amount in excess of $2,400,000.00 for the Shaver Plan's payoff of the RBC BIS Loan; and Defendant Lee, as trustee under the Shaver Plan and in further breach of her fiduciary duties, has improperly refused and neglected to bring an action against these defendants to recover their pro-rata shares of the RBC BIS Loan payoff on behalf of the Shaver Plan.

261.    In the alternative, Defendant Lancaster Plan, Defendant Shaver Estate, Defendant John Lancaster and Defendant BIR, Inc. (entities which Defendant Lee served as either trustee, executor, officer or shareholder) were unjustly enriched and benefitted in an amount in excess of

$2,400,000.00 by the Shaver Plan's payoff of the RBC BIS Loan, at the expense of the Shaver Plan, and each of these defendants knew or should have known that Defendant Lee's use of Shaver Plan funds to make this payoff was wrongful, as the Shaver Plan was only one of five guarantors of RBC BIS Loan.

262.    The Shaver Plan is therefore entitled to recover and requests (i) damages in excess of $2,400,000.00 from Defendant Lancaster Plan, Defendant Shaver Estate, Defendant John Lancaster and Defendant BIR, Inc., in pro-rata amounts from each, and (ii) the imposition of constructive trusts on all property interests that these Defendants obtained as a result of their unjust enrichment.

## SIXTEENTH CAUSE OF ACTION
### (Breach of Contract, Enforcement of Promissory Note and/or Unjust Enrichment: Against Defendant Sugar Creek II and Defendant Sugar Creek III)

263.    Plaintiff hereby realleges and incorporates by reference Paragraphs 1 through 262.

264.    Between 2005 and 2008, Defendant PFMS, Inc. and Defendant Lee breached their fiduciary duties to the Shaver Plan by transferring or making subordinate loans in excess of $2,360,000.00 to Defendant Sugar Creek II and/or Defendant Sugar Creek III knowing that it was improbable that these companies would be able to repay this amount, and by failing to enforce the promissory note evidencing the debt of Defendant Sugar Creek II and/or Defendant Sugar Creek III on said loans.

265.    Upon information and belief, Defendant Sugar Creek II and Defendant Sugar Creek III have failed to pay their obligations to the Shaver Plan under said promissory note and in breach of contract.

266.    In the alternative, upon information and belief, Defendant Sugar Creek II and/or Defendant Sugar Creek III, an entity for which Defendant Lee serves as member/manager, have

been unjustly enriched by accepting and receiving in excess of $2,360,000.00 without any repayment of the same, at the expense of the Shaver Plan, knowing that they would not be able to repay the Shaver Plan for this amount, and having no intention of doing so.

267.　Defendant PFMS, Inc. and Defendant Lee, as trustee under the Shaver Plan and as president and sole director of Defendant PFMS, Inc. in further breach of their fiduciary duties, have improperly refused and neglected to bring an action against Defendant Sugar Creek II and Defendant Sugar Creek III to enforce the promissory note or to recover repayment of these improper transfers and/or loans on behalf of the Shaver Plan and/or Plaintiff.

268.　Plaintiff and the Shaver Plan have been damaged as a direct and proximate result of Defendant Sugar Creek II's and Defendant Sugar Creek III's breach of the promissory note, breach of contract and/or unjust enrichment, and are entitled to recover from Defendant Sugar Creek II and/or Defendant Sugar Creek III in excess of $2,360,000.00, as shall be shown at trial.

269.　Plaintiff and the Shaver Plan are further entitled to an order imposing (i) constructive trusts on all property interests obtained by Defendant Sugar Creek II and Defendant Sugar Creek III as a result of their unjust enrichment and (ii) restitutionary liens on all real property interests of Defendant Sugar Creek II and Defendant Sugar Creek III, in favor of the Shaver Plan, in the amounts of their unjust enrichment, respectively.

## SEVENTEENTH CAUSE OF ACTION
### (Breach of Contract and/or Unjust Enrichment:  Against Sugar Creek I)

270.　Plaintiff realleges and incorporates by reference Paragraphs 1 through 269.

271.　Between 2007 and 2009, Defendant PFMS, Inc. and Defendant Lee breached their fiduciary duties to the Shaver Plan by making loans of approximately $491,864.00 to Defendant Sugar Creek I, knowing it was improbable that Defendant Sugar Creek I would repay this amount

to the Shaver Plan and by failing to demand any repayment of this amount from Defendant Sugar Creek I to the Shaver Plan.

272.     Upon information and belief, Defendant Sugar Creek I has failed to repay this loan amount to the Shaver Plan, in breach of contract for said loan.

273.     In the alternative, upon information and belief, Defendant Sugar Creek I (an entity for which Defendant Lee serves as an officer and shareholder) has been unjustly enriched by accepting and receiving approximately $491,864.00 without repayment of the same, at the expense of the Shaver Plan, knowing it would not repay the Shaver Plan for this amount, and having no intention of doing so.

274.     Defendant PFMS, Inc. and Defendant Lee, as trustee under the Shaver Plan and president and sole trustee of Defendant PFMS, Inc., in further breach of their fiduciary duties, have improperly refused and neglected to bring an action against Defendant Sugar Creek I to recover repayment of this loan on behalf of the Shaver Plan and/or Plaintiff.

275.     Plaintiff and the Shaver Plan have been damaged as a direct and proximate result of Defendant Sugar Creek I's breach of contract and/or unjust enrichment, and are entitled to recover of Defendant Sugar Creek I approximately $491,864.00, as shall be shown at trial.

276.     Plaintiff and the Shaver Plan are further entitled to an order imposing (i) constructive trusts on all property interests that Defendant Sugar Creek I has obtained as a result of its unjust enrichment and (ii) restitutionary liens on all real property interests of Defendant Sugar Creek I, in favor of the Shaver Plan, in the amount of its unjust enrichment.

## EIGHTEENTH CAUSE OF ACTION
### (Accounting)

277.     Plaintiff realleges and incorporates by reference Paragraphs 1 through 276.

278.    Plaintiff is entitled to and requests an accounting of all Defendants based on their breaches of fiduciary duties, other wrongdoings, and/or unjust enrichment.

## RESERVATION OF CLAIMS

Plaintiff hereby reserves the right to amend its claims and to assert additional claims as information of the same becomes known to Plaintiff in discovery and the trial of this matter.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Shriners Hospitals for Children respectfully prays that this Court:

1.    Enter judgment against Defendant PFMS, Inc. and Defendant Lee in favor of the Shaver Plan in an amount in excess of $10,000,000.00, or such other amount as is found to be due to them for losses and damages proximately caused by Defendant Lee's violations of ERISA and/or of North Carolina law, and that Defendant Lee be ordered to restore said amounts to the Shaver Plan, together with interest, punitive damages, and treble damages, as allowed by law;

2.    Order that the Shaver Plan set off the individual Shaver Plan accounts of any Defendant against the amount of losses, including lost opportunity costs, resulting from their fiduciary breaches and prohibited transactions, as authorized by 29 U.S.C. § 1056(d)(4) and/or by North Carolina law, if the losses are not otherwise restored to the Shaver Plan by the Defendants and reallocated to Shriners Hospitals;

3.    Order that the trustee under the Shaver Plan restore all amounts owed to the Shaver Plan account of Shriners Hospitals and distribute said amount to the same in accordance with the terms of the Shaver Plan;

4.    Enter judgment jointly and severally against Defendant PFMS, Inc., Defendant Lee, the Shaver Plan in favor of Plaintiff in an amount in excess of $4,000,000.00, or such other amount as is found to be due to it for losses and damages proximately caused by Defendant Lee's violations

of ERISA and/or North Carolina law, together with interest, punitive damages, and treble damages, all allowed by law;

5.    Immediately remove Defendant Lee from her positions as trustee under the Shaver Plan and president of Defendant PFMS, Inc., and temporarily and permanently enjoin Defendant Lee from any further association with the Shaver Plan and Defendant Lancaster Plan;

6.    Temporarily enjoin all persons and entities associated with the Shaver Plan from distributing to any person, in any way, any assets the Shaver Plan currently holds or owns;

7.    Immediately appoint an independent fiduciary as trustee under the Shaver Plan, as president of Defendant PFMS, Inc. and/or a receiver for the Defendant PFMS, Inc. for the following purposes:

      a.    To pursue, in his or her discretion, all state law remedies available to the Shaver Plan for the recovery of assets, funds and damages from all persons and entities liable for any sums to the Shaver Plan;

      b.    To make distributions to Plaintiff, taking into account all prior distributions the Shaver Plan has made to date; and

      c.    To manage and administer the Shaver Plan in accordance with its terms.

8.    Order the non-fiduciary Defendants to rescind any and all prohibited transactions and ERISA violations in which they have engaged as parties in interest and/or knowing participants, and/or to restore to the Shaver Plan all assets transferred therefrom in relation to or as a part of any prohibited transaction;

9.    Order Defendant PFMS, Inc. and Defendant Lee to disgorge any monetary amounts they have personally received from transactions in which they breached their fiduciary duties or committed constructive fraud, and requiring Defendant PFMS, Inc. and Defendant Lee to restore

to the Shaver Plan all monetary amounts they have lost as a proximate result of Defendant PFMS, Inc.'s and Defendant Lee's breach of fiduciary duties and/or constructive fraud;

10.     Enter judgment in favor of Plaintiff against Defendant Sarah K. Morris in an amount in excess of $1,000,000.00;

11.     Enter judgment in favor of Plaintiff against Defendant Black Pelican, LLC in an amount in excess of $75,000.00;

12.     Enter judgment in favor of the Shaver Plan against one or more of the Black Pelican Defendants in the amount of $1,559,010.34;

13.     Enter judgment in favor of the Shaver Plan against Defendant Lancaster Plan in an amount in excess of $1,901,271.93;

14.     Enter judgment in favor of the Shaver Plan against Defendant BIS, Inc. in an amount in excess of $8,000,000.00, and an order allowing the Shaver Plan to enforce the security interests in property that was used to secure the RBC BIS Loan;

15.     Enter judgment in favor of the Shaver Plan against Defendant Shaver Estate in an amount in excess of $600,000.00;

16.     Enter judgment in favor of the Shaver Plan against Defendant John Lancaster in an amount in excess of $600,000.00.

17.     Enter judgment in favor of the Shaver Plan against Defendant BIR, Inc. in an amount in excess of $600,000.00.

18.     Enter judgment in favor of the Shaver Plan against Defendant Sugar Creek II and/or Defendant Sugar Creek III in an amount in excess $2,360,000.00;

19.     Enter judgment in favor of the Shaver Plan against Defendant Sugar Creek I in the amount of $491,864.00.

20.     Enter an order imposing constructive trusts on all property interests obtained by Defendants as a result of their unjust enrichment;

21.     Enter an order imposing restitutionary liens against the Black Pelican Restaurant Property, and any real estate owned by any Defendants that have been inequitably and unjustly enriched at the expense of Plaintiff and the Shaver Plan, as shall be proven at trial;

22.     Order an accounting of all Defendants that have been committed breaches of fiduciary duties or other wrongdoings, and/or have been unjustly enriched;

23.     Enter judgment taxing all attorneys' fees and costs incurred by Plaintiff in this matter against Defendant PFMS, Inc., Defendant Lee, and all other appropriate Defendants, as allowed by law;

24.     Allow a trial by jury; and

25.     Grant such other and further relief as the Court deems just, equitable and proper.


This the 17th day of February, 2020.


**BATTS, BATTS & BELL, LLP**


By: /s/ Joseph G. McKellar
    Joseph G. McKellar
    N.C. State Bar No. 35437
    Jeffrey A. Batts
    N.C. State Bar No. 13418
    Joseph L. Bell, Jr.
    N.C. State Bar No. 18082
    Post Office Box 8228
    Rocky Mount, NC 27804-1228
    Telephone:  252-977-6450
    Facsimile:  252-972-7500
    Email:  jmckellar@battslaw.com
    jabatts@battslaw.com
    jbelljr@battslaw.com

**BROOKS, PIERCE, MCLENDON,
HUMPHREY & LEONARD, LLP**


By: /s/ James C. Adams, II
    James C. Adams, II
    N.C. State Bar No. 18063
    230 N. Elm Street, Suite 2000
    Greensboro, NC  27401
    Telephone:  (336) 373-8850
    Facsimile:  (336) 378-1001
    Email:  jadams@brookspierce.com