

EXHIBIT 2

PAUL F. M. SHAVER III TRUST

**TABLE OF CONTENTS**

| | | Page |
|---|---|---|
| **PART 1 - COMPOSITION AND DISTRIBUTION** | | 1 |
| 1.1. | Trust Corpus | 1 |
| 1.2. | Reservation of Rights | 1 |
| 1.3. | Payments During Grantor's Life | 1 |
| 1.4. | Life Insurance | 1 |
| 1.5. | Trustee's Duties Upon Grantor's Death | 2 |
| 1.6. | Valuation of Gifts | 2 |
| 1.7. | Credit Shelter Allocation | 3 |
| 1.8. | Trust for Brother | 3 |
| 1.9. | Residence Trust | 4 |
| 1.10. | Specific Gifts | 4 |
| 1.11. | LOAN FUND | 4 |
| 1.12. | Jack's Trust | 6 |
| 1.13. | Residence Trust | 9 |
| 1.14. | Trusts for Grantor's Named Children | 9 |
| 1.15. | Trust for Sarah Morris | 11 |
| 1.16. | Residue of Trust Estate | 13 |
| | | 14 |
| **PART 2 - TRUSTEES** | | 14 |
| 2.1. | Trustees | 14 |
| 2.2. | Reliance by Successor Trustee | 15 |
| 2.3. | Change of Trustee | 15 |
| 2.4. | Resignation of Trustee | 15 |
| **PART 3 - ADMINISTRATIVE PROVISIONS** | | 16 |
| 3.1. | Powers | 16 |
| 3.2. | Several Trustees | 18 |
| 3.3. | Spendthrift Clause | 18 |
| 3.4. | Trustee's Discretion | 19 |
| 3.5. | Generation-Skipping Transfer Tax | 19 |
| 3.6. | Power to Terminate | 21 |
| 3.7. | Trustee Accountings | 21 |
| 3.8. | Consolidation of Trust Assets | 22 |
| 3.9. | Immediate Entitlement | 22 |
| 3.10. | Special Termination | 22 |
| 3.11. | Survivorship | 22 |
| **PART 4 - DEFINITIONS** | | 23 |
| 4.1. | Gender | 23 |
| 4.2. | Number | 23 |
| 4.3. | Trust Estate | 23 |

Case 2:20-cv-00010-FL    Document 28-2    Filed 04/15/20    Page 1 of 35

## TABLE OF CONTENTS
(continued)

Page

4.4.    Grantor's Child, Grantor's Children, Grantor's Issue ...................................................23
4.5.    Code, General Statutes.............................................................................................24
4.6.    Gross Estate, Taxable Estate.....................................................................................24
4.7.    Available GST Exemption.........................................................................................24

EXHIBIT A ..........................................................................................................................26

EXHIBIT B..........................................................................................................................27

EXHIBIT C..........................................................................................................................28

Case 2:20-cv-00010-FL    Document 28-2    Filed 04/15/20    Page 2 of 35

# PAUL F. M. SHAVER III TRUST

THIS TRUST AGREEMENT, made and entered into this _____ day of _____, 2002, at Kitty Hawk, Dare County, North Carolina, between PAUL F. M. SHAVER III as Grantor and JULIA LEE, SARAH MORRIS, and LEONARD BENNETT as Trustees (hereinafter in this Agreement sometimes referred to collectively as "the Trustee"), is in four parts. Part 1 contains the provisions dealing with the composition and distribution of the property forming the corpus of the trust. Part 2 names the persons who will administer the trust. Part 3 sets forth the provisions governing that administration. Part 4 defines certain terms used in the rest of the Agreement.

## PART 1 - COMPOSITION AND DISTRIBUTION

1.1.    **Trust Corpus.** The Grantor owns and delivers or will deliver to the Trustee as owner certain property which is listed on EXHIBIT A attached to this Agreement, or will name the Trustee as the beneficiary of certain life insurance policies to be listed on a supplemental EXHIBIT A.

1.2.    **Reservation of Rights.** The Grantor or any other person shall have the right to add to the trust estate, by will or otherwise, other property acceptable to the Trustee. The Grantor reserves the right to alter, amend, or revoke this Agreement in whole or in part at such time as the Grantor may see fit by written notice delivered to the Trustee; provided, however, that if altered or amended, the duties, powers, or responsibilities of the Trustee shall not be substantially changed without its consent.

1.3.    **Payments During Grantor's Life.** The Trustee shall receive, hold, manage, invest, and reinvest any and all property received as part of the trust estate, and

ROCKYMOUNT/014902-002/257510 v.5 05/23/02

shall pay to or for the benefit of the Grantor during the Grantor's lifetime such amounts of the income and principal of this trust as the Grantor may in writing request; and, in addition, the Trustee may pay to or for the benefit of the Grantor such additional amounts of the income and principal of this trust as the Trustee, in its discretion, may from time to time deem necessary or advisable for the maintenance, health, welfare, support, and comfort of the Grantor, or for the payment of premiums on insurance on the Grantor's life, whether or not the Grantor is capable at any such time of making any such request. Any income not so paid shall be accumulated and annually, or more often if convenient, added to principal and invested.

     1.4.    **Life Insurance.**  The Grantor agrees that any life insurance policies delivered to the trust will name the Trustee as beneficiary thereof, and the Grantor shall also have the right to designate the Trustee as beneficiary of other insurance policies. As to any such policies, the Grantor reserves all rights, powers, and authorities in connection therewith. During the Grantor's lifetime, the Trustee shall have no responsibility with respect to any such policies of life insurance, whether for the payment of premiums or otherwise, except to hold such policies in safekeeping if requested to do so by the Grantor. Upon the death of the Grantor, the Trustee shall not be required to engage in litigation to enforce payment of such policies without indemnification satisfactory to the Trustee for any resulting expense or liability, including, without limitation, counsel fees.

     1.5.    **Trustee's Duties Upon Grantor's Death.**  Upon the Grantor's death, the Trustee shall hold, manage, administer, and distribute the trust estate, including any property that may be added thereto under the will of the Grantor, or otherwise, as hereinafter set forth in this Agreement; provided, however, that any obligations of the United States which are redeemable at par for the payment of federal estate tax shall,

2

upon the written request of the Grantor's Executor, be paid over and distributed to the Grantor's Executor, free of trust, for the purpose of paying such tax. If the Grantor's Executor shall request sums to pay any estate, inheritance, transfer, or other taxes (including the supplemental estate tax on certain qualified plan benefits and any interest and penalties on any such taxes, including any generation-skipping transfer taxes on direct skips) imposed by reason of the Grantor's death upon or on account of any property or interest in property, whether held by the Grantor, or held in this trust, or otherwise, or to pay legal debts of the Grantor's estate, or the costs of administration of the Grantor's estate, the Trustee shall pay any and all such sums out of the residue of the trust estate.

1.6. **Valuation of Gifts.** For the purpose of establishing the sums disposed of under this Agreement, the values finally fixed in the federal estate tax proceeding relating to the Grantor's estate shall be used. The Trustee may satisfy each gift or allocation in cash or in specific property, or in an undivided interest therein, or partly in cash and partly in property, and in installments or at one time; and the Trustee may do so without regard to the income tax basis of specific property allocated to any beneficiary (including any trust) and without making pro rata distributions of specific assets; provided, however, each asset distributed in kind shall be valued at its date or dates of distribution value.

1.7. **Credit Shelter Allocation.** The Trustee shall fund and set apart from the trust estate a sum, to be added to the LOAN FUND to be administered under Section 1.11 of this Agreement, equal to, the largest amount that can pass free of federal estate tax under this Section by reason of the unified credit and the state death tax credit (provided use of this credit does not require an increase in the state death taxes paid) allowable to the Grantor's estate, but no other credit, and after taking account of the Grantor's

3

Case 2:20-cv-00010-FL    Document 28-2    Filed 04/15/20    Page 5 of 35

adjusted taxable gifts and property disposed of by preceding Sections of this Agreement and property passing outside of this Agreement (whether by the Grantor's Will or otherwise) which is includable in the Grantor's gross estate and does not qualify for the charitable deduction, and after taking account of charges to principal that are not allowed as deductions in computing the Grantor's federal estate tax. The Grantor recognizes that no sum may be disposed of under this Section or that any sum so disposed of may be affected by the action of the Trustee or the Grantor's Executor in exercising certain tax elections.

1.8.    **Trust for Brother.** The Trustee shall allocate to JACK'S SHARE, to be administered under Section 1.12 of this Agreement, assets having a value which will at the time of such distribution produce an annuity of principal and income in the amount of Twelve Thousand Dollars ($12,000.00) per year, adjusted for changes in the Consumer Price Index (All items, urban) from the date of this Agreement until the date of death of the Grantor, based upon (i) the life expectancy of the Grantor's brother, JACK SHAVER, and (ii) the then market interest rate for annuities as determined by the Trustee.

1.9.    **Residence Trust.** The Trustee shall allocate to the RESIDENCE TRUST, the primary residence of the Grantor in Nags Head Woods, Nags Head, North Carolina, the furnishings therein, and the permanent improvements located thereon. The determination of the Trustee as to the property passing under this Section shall be conclusive upon all persons interested in Grantor's estate and this Trust Agreement. The RESIDENCE TRUST shall be administered under Section 1.13 of this Agreement.

1.10.   **Specific Gifts.** The Trustee shall pay over and distribute the following property to the persons designated:

Case 2:20-cv-00010-FL    Document 28-2    Filed 04/15/20    Page 6 of 35

**1.10.1  Gifts for Grantor's Named Children.** The Trustee shall allocate to separate CHILDREN'S SHARES for the two (2) named children of the Grantor, KIM CARRITHERS and LEONARD BENNETT, a share of the Grantor's estate equal to Five Percent (5%) each of the Grantor's taxable estate to be administered under Section 1.14 of this Agreement.

**1.10.2  Race Equipment.** All of the race equipment of the Grantor owned at the time of his death, including personal automobiles and tractors, shall be distributed to BILL JORDAN of Grafton, Virginia, if he survives the Grantor.

**1.10.3  Stock in Peninsula Land Development, Inc.** If the Grantor is the owner of stock in Peninsula Land Development, Inc. and such stock is not purchased by the other shareholders, the Trustee shall transfer the stock to DONNA HARRAH upon the payment by her of all promissory notes owed by her to Grantor or any entity in which he has an ownership interest, or, in the event the stock is not purchased under either of the foregoing circumstances, the Trustee shall offer the stock to the employees of such corporation at the price determined for federal estate tax purposes and upon such terms of payment as the Trustee deems reasonable. If the offer does not result in the sale of all of the Grantor's stock in such corporation, the unsold shares shall become part of the residue of this trust.

**1.10.4  Gift to Business Associate.** Twenty percent (20%) of the interest of the Grantor in the capital stock of Barrier Island Realty, Inc. and Black Pelican Seafood Co., Inc., the membership interests in Paulie's, LLC, and the ownership interest of the Grantor in other business entities owned by him at the date of

Case 2:20-cv-00010-FL    Document 28-2    Filed 04/15/20    Page 7 of 35

Grantor's death (collectively "Business Interests") shall be distributed to the
Grantor's business associate, JULIA LEE, if she survives the Grantor, together
with a twenty percent (20%) portion of the beneficial interest of the Grantor in his
account balance in the Paul F. M. Shaver III, Inc. Profit Sharing Plan (a
beneficiary designation providing for such share is being executed of even date
herewith).

 **1.10.5 Gift to Sarah Morris.** Forty percent (40%) of the interest of the
Grantor in Business Interests shall be allocated to the SARAH MORRIS SHARE,
if she survives the Grantor, together with a forty percent (40%) portion of the
beneficial interest of the Grantor in his account balance in the Paul F. M. Shaver
III, Inc. Profit Sharing Plan (a beneficiary designation providing for such share is
being executed of even date herewith), all of such interests to be administered
under Section 1.15 of this Agreement.

 **1.11. LOAN FUND.** In addition to the gift to the LOAN FUND under the
provisions of Section 1.7, the Trustee shall allocate a part of the Trust Estate sufficient to
increase the LOAN FUND to an aggregate of Two Million Dollars ($2,000,000.00), after
the payment of taxes and expenses, to a LOAN FUND.  Such FUND shall be
administered by the Trustee as follows:

 **1.11.1 Participants.** The following persons (herein the "Participants")
shall be eligible to participate in the LOAN FUND:

  **1.11.1.1**  The following named children of the Grantor: KIM
CARRITHERS AND LEONARD BENNETT.

  **1.11.1.2**  The children of the Grantor's named children.

Case 2:20-cv-00010-FL    Document 28-2    Filed 04/15/20    Page 8 of 35

1.11.1.3    The Grantor's sister, SALLY S. CUDWORTH, and his brother, BILL SHAVER.

**1.11.2 Purposes for Loans.** The Trustee may use the principal and income of the LOAN FUND to make loans to the Participants, in such amount and upon such terms, conditions rates of interest, and security determined by the Trustee to be fair and adequate, for the following purposes:

1.11.2.1    For college education, but such amounts shall not exceed the cost of an "in-state" student at a public educational institution, so long as the Participant is proceeding at a reasonable pace toward the completion of a degree; upon completion of a degree program, the loan shall be forgiven.

1.11.2.2    For business purposes that the Trustee deems to be for economically viable purposes with interest to set at a rate of five percent (5%) per annum; provided, however, no loan or loans outstanding at any time to any individual shall exceed Twenty Percent (20%) of the LOAN FUND.

**1.11.3 Termination of LOAN FUND.** Subject to the limiting provisions set forth in Section 3.10 of this Agreement, upon the death of the surviving Participant designated in this Section 1.11, the Trustee shall distribute, free of trust, the remaining principal, as then constituted, and all accrued or undistributed income of this trust in the same manner as the CHARITABLE SHARE as more fully identified in Section 1.16 of this Agreement.

**1.11.4 Liability of Trustee.** The Trustee of the LOAN FUND shall not

Case 2:20-cv-00010-FL    Document 28-2    Filed 04/15/20    Page 9 of 35

be personally liable to the beneficiaries of the trust or to any other party for any losses due to the Trustee's failure to observe the prudent man standard of General Statutes Section 36A-2(a) or the prudent investor standard of Article 15 of General Statutes Chapter 36A, or any future standard applicable in North Carolina, with respect to any act or omission in (i) determining whether any such loan is or remains a proper investment, or (ii) diversifying any such loans. With respect to such matters the Trustee shall be liable only for losses caused by the Trustee's dishonesty or reckless indifference to the interests of the beneficiaries after the Trustee has actual knowledge that action should be taken to change the investment in any such loan. The Grantor does not intend that this provision shall in any way restrict the exercise of the powers given to the Trustee with respect to such loan.

    **1.11.5 Liability of Successor Trustee.** A successor Trustee of the LOAN FUND shall not have any duty that may otherwise be imposed by law to pursue any claim against any predecessor Trustee for loss arising from such predecessor's failure to observe the prudent man standard or the prudent investor standard identified in Section 1.11.4, or any future standard applicable in North Carolina, with respect to any act or omission in (i) determining whether any loan was or remained a proper investment, or (ii) diversifying any such loans. A successor Trustee shall not be personally liable to the beneficiaries of the trust or to any other party for any loss resulting from a failure to pursue any such claim. The Grantor does not intend that this provision shall in any way restrict a successor Trustee's power or a beneficiary's right to pursue any such claim against a predecessor Trustee.

Case 2:20-cv-00010-FL     Document 28-2     Filed 04/15/20     Page 10 of 35

**1.12. Jack's Trust.** JACK'S SHARE shall be held as JACK'S TRUST on the following terms and conditions:

**1.12.1 Share for Grantor's Brother.** Until the termination of the trust created by Grantor's mother for the benefit of JACK SHAVER, the Trustee shall accumulate any income of this trust. Subsequent to the termination of the trust created by Grantor's mother for the benefit of JACK SHAVER, the Trustee, in its discretion, may pay to or for the benefit of Grantor's brother, JACK SHAVER, amounts of the income and principal of the FAMILY TRUST for room and board in reasonable comfort of such brother. Any income not so distributed shall, at least annually, be added to principal and become a part thereof.

**1.12.2 Death of Jack.** Upon the death of the Grantor's brother Jack, the Trustees shall distribute, free of trust, the remaining principal, as then constituted, and all accrued or undistributed income of this trust in the same manner as the CHARITABLE SHARE as more fully identified in Section 1.16 of this Agreement.

**1.13. Residence Trust.** The RESIDENCE TRUST shall be held by the Trustee for the following uses and benefits:

**1.13.1 Lifetime Use By Sarah Morris.** The Trustee shall make the residence and its furnishings available for use and occupancy by SARAH MORRIS so long as she desires to use it as a personal residence. During the period that any property is held in this trust for the use and occupancy of SARAH MORRIS, she shall be permitted to use and occupy the same free of any rent; and all taxes, insurance, assessments, repairs and other charges necessary to maintain

9

Case 2:20-cv-00010-FL   Document 28-2   Filed 04/15/20   Page 11 of 35

said property shall be paid out of the income of the SARAH MORRIS TRUST to be administered under Section 1.15.

    **1.13.2 Termination of Occupancy.** Upon her death or delivery of written advice to the Trustee that she no longer desires to use the premises, the Trustee shall reassume possession of the premises and proceed with its sale under Section 1.13.3 of this Agreement. Should the occupancy terminate upon advice to the Trustee that she no longer desires to occupy such property as a home, the Trustee shall add the proceeds of sale of the property to the principal of the SARAH MORRIS TRUST under Section 1.15 for her lifetime. The notification to the Trustee shall be in writing subscribed by SARAH MORRIS and acknowledged in the manner required for a deed to be recorded in the State of North Carolina.

    **1.13.3 Options to Grantor's Named Children.** Upon termination of occupancy of the residence by SARAH MORRIS, the Trustee shall offer to sell the residence premises to Grantor's son, LEONARD BENNETT. The offering price shall be fifty percent (50%) of the fair market value of the premises as determined by an appraisal to be secured by the Trustee. Upon determination of the sales price and the election of Grantor's son to purchase the premises, the Trustee shall convey the premises upon receipt of the sales price. If LEONARD BENNETT does not exercise the option within ninety (90) days of receipt of notice to him of the determination of the sales price, the Trustee shall give the same option to KIM CARRITHERS, if she does not exercise the option within ninety (90) days, the Trustee shall sell the residence at public or private sale. If SARAH MORRIS is living at the time of the termination of her occupancy, the

10

Case 2:20-cv-00010-FL    Document 28-2    Filed 04/15/20    Page 12 of 35

provisions of Section 1.13.2 shall apply to the disposition of the proceeds. If her

occupancy has occurred by reason of her death, the proceeds of sale shall be

distributed by the Trustee, free of trust, in the same manner that the

CHARITABLE SHARE under Section 1.16 is distributed.

1.14. **Trusts for Grantor's Named Children.** The CHILDREN'S SHARE

shall be divided into a sufficient number of equal shares to create one share for each

named child of the Grantor who is then living and one share for the then living issue, *per*

*stirpes*, of each named child of the Grantor who is then deceased. Each such share shall

then be paid over and distributed, or held, managed, and administered as a separate trust

by the Trustee, as follows:

1.14.1 **Trust for Child.** The Trustee, in its discretion, may pay to or for

the benefit of such child and such child's issue amounts of the income and

principal of such child's trust for the maintenance, health, education, and support

in reasonable comfort of such child and such child's issue, bearing in mind that

the Grantor's primary concern is for such child and the Grantor's secondary

concern is for such child's issue. Any income not so distributed shall, at least

annually, be added to principal and become a part thereof.

1.14.2 **Death of Child.** Upon the death of such child before receiving

such child's entire trust, the Trustee shall hold the remaining principal, as then

constituted, and all accrued or undistributed income of such child's trust, for the

benefit of such child's issue, in such amounts or proportions in trust, as such child

may have appointed, by specific reference to this power, in such child's will;

provided, however, if any portion of the child's trust has not been allocated part of

11

the available GST Exemption (the Non-Exempt Share), Trustee shall distribute
the remaining principal, as then constituted, and all accrued or undistributed
income of the Non-Exempt Share of such child's trust, to such appointee or
appointees, including such child's estate, or in such amounts or proportions, either
outright or in trust, as such child may have appointed, by specific reference to this
power, in such child's will.. If such powers are not effectively or fully exercised,
that part of the trust estate not so appointed shall be held in trust for such child's
then living issue, *per stirpes*, or if such child shall die leaving no issue living at
the time of such child's death, to the Grantor's then living issue of the Grantor's
named children, *per stirpes*. The Trustee is authorized to rely, and is relieved of
liability in so relying, upon any instrument admitted to probate in common or
solemn form as the will of such child. If no instrument is admitted to probate
within sixty (60) days after the death of such child, the Trustee may assume that
such child died intestate and shall be protected in acting in accordance with such
assumption.

     **1.14.3 Share for Issue.** Each such share created for the issue of a
deceased named child of the Grantor shall be held for the benefit of the then
living issue of such deceased child, *per stirpes*. The Trustee, in its discretion,
may pay to or for the benefit of such issue amounts of the income and principal of
such issue's trust for the maintenance, health, education, and support in
reasonable comfort of such issue, bearing in mind that the Grantor's primary
concern is for such issue and the Grantor's secondary concern is for the
subsequent beneficiaries of this trust. Any income not so distributed shall, at least
annually, be added to principal and become a part thereof.

ROCKYMOUNT/014902-002/257510 v 5 05/23/02

**1.14.4 Death of Issue of Grantor's Named Child.** Upon the death of the issue of Grantor's named child who were identified as the beneficiaries in Section 1.14.1 or 1.14.2, the Trustees shall distribute the remaining principal, as then constituted, and all accrued or undistributed income of this trust, free of trust, in the same manner as the CHARITABLE SHARE as more fully identified in Section 1.16 of this Agreement.

**1.15. Trust for Sarah Morris.** The SARAH MORRIS SHARE shall be held as the SARAH MORRIS TRUST on the following terms and conditions:

**1.15.1 Distributions.** At any time after the Grantor's death, the Trustee, shall pay to Sarah Morris the income of this trust in convenient installments, at least quarterly, and in its discretion, may pay to or for the benefit of SARAH MORRIS amounts of the principal of this trust for her maintenance, health, and support in reasonable comfort, bearing in mind that the Grantor's primary concern is for maintenance, health, and support in reasonable comfort of SARAH MORRIS and his secondary concern is for subsequent beneficiaries of the SARAH MORRIS TRUST. For purposes of this trust, income shall be determined after the payment of expenses as provided in Section 1.13.1 of this Agreement, so long as the Residence is used by SARAH MORRIS as a personal residence.

**1.15.2 Death of Sarah Morris.** Upon the death of SARAH MORRIS, the Trustees shall distribute the remaining principal, as then constituted, and all accrued or undistributed income of this trust, free of trust, in the same manner as the CHARITABLE SHARE as more fully identified in Section 1.16 of this

ROCKYMOUNT/014902-002/257510 v.5 05/23/02

Agreement.

1.16. **Residue of Trust Estate.** The residue of this trust estate shall be allocated to and paid over and distributed as the CHARITABLE SHARE.

1.16.1 **Charitable Beneficiary.** The CHARITABLE SHARE shall be paid over and distributed to the endowment fund of SHRINERS HOSPITALS FOR CHILDREN, a corporation, in care of International Shrine Headquarters, 2900 Rocky Point Drive, Tampa, Florida 33607-1460.

1.16.2 **Identification of Charity.** In the event that the legal name of any organization named in this Section 1.16 shall not be or shall cease to be the legal name of the charitable donee at the time of distribution by the Trustee, the Grantor directs that such gift shall not lapse but shall go the organization that, in the judgment of the Trustee, succeeds the present organization that the Grantor has identified wherever it may be located and whatever its name may be.

## PART 2 - TRUSTEES

2.1. **Trustees.** JULIA LEE, SARAH MORRIS, and LEONARD BENNETT shall act as Trustees of any trust created under this Agreement, without bond and without compensation. If any individual for any reason fails to serve or ceases to act, then the persons or firms designated in EXHIBIT B, in the order named, shall act as Co-Trustees, without bond. The initially named Trustees shall serve without compensation. Any successor Co-Trustee shall receive reasonable compensation. If all individuals for any reason fail to serve or cease to act, then two (2) of the persons or firms designated in EXHIBIT B, in the order named, shall act as Co-Trustees, without bond. Should a bank fiduciary become a Trustee or Co-Trustee hereunder, such bank shall act as Trustee under

14

Case 2:20-cv-00010-FL    Document 28-2    Filed 04/15/20    Page 16 of 35

this Agreement, without bond, but shall receive and be paid such commissions as are customarily charged by the bank under its regularly adopted schedule of compensation for like services at the time any services hereunder are rendered.

2.2.    **Reliance by Successor Trustee.** Any successor Trustee is authorized and directed to accept from any prior Trustee the assets delivered by such predecessor on the basis of the predecessor's accounting for such assets without requiring an audit or other independent accounting of the transactions, acts or omissions of such prior Trustee, and any successor Trustee shall not have any duty, responsibility, obligation or liability whatsoever for the acts or omissions of such prior Trustee.

2.3.    **Change of Trustee.** At any time after the Grantor's death, a majority in interest of the then current income beneficiaries who are not minors shall have the right to nominate and appoint a successor individual or corporate Trustee; provided, however, that any successor corporate Trustee must be a corporation having managed assets under trust of not less than $500,000,000. In no event may a successor Trustee who is related or subordinate to any income beneficiary of this Trust, as defined in Section 672(c) of the Code, be appointed by the income beneficiaries under this Section.

2.4.    **Resignation of Trustee.** Any Trustee serving hereunder shall have the right to resign at any time by giving thirty (30) days' written notice to the then current income beneficiaries who are not minors. Thereafter, if there is no successor Trustee named in Section 2.1, above, who is willing and able to serve, a majority in interest of the then current income beneficiaries who are not minors have the right, within such thirty (30) day period, to nominate and appoint a successor individual or corporate Trustee, and such beneficiaries shall notify the resigning Trustee in writing of such appointment;

15

Case 2:20-cv-00010-FL    Document 28-2    Filed 04/15/20    Page 17 of 35

provided, however, that any successor corporate Trustee must be a corporation having managed assets under trust of not less than $500,000,000. In the event no successor Trustee is appointed within such thirty (30) day period, the resigning Trustee may resign under the provisions of Chapter 36A of the General Statutes. In no event may a successor Trustee who is related or subordinate to any income beneficiary of this Trust, as defined in Section 672(c) of the Code, be appointed by the income beneficiaries under this Section.

## PART 3 - ADMINISTRATIVE PROVISIONS

3.1.  Powers. In addition to, and not in substitution of, any inherent, implied, or statutory powers granted to trustees generally, the powers enumerated in General Statutes Section 32-27, a copy of which is attached hereto as EXHIBIT C, are incorporated by reference and granted to the Trustee, subject to the restrictions of General Statutes Section 32-26(b); provided, however, that the provisions of General Statutes Section 32-27(29) are expressly not incorporated herein. In addition to these powers, and not in limitation thereof, the following specific powers are granted to the Trustee and may be exercised without any adjustment of the resulting value of the interest of any beneficiary or any adjustment between principal and income:

ROCKYMOUNT/014V02-002/257510 v.5 05/23/02

Case 2:20-cv-00010-FL    Document 28-2    Filed 04/15/20    Page 18 of 35

**3.1.1   Allocation.** To determine, irrespective of statute or rule of law, what items shall be fairly and equitably charged or credited to income and what items to principal, and to so allocate or apportion receipts and expenditures, regardless of whether such items are charged or credited to income and principal as provided in Chapter 37 of the General Statutes; and to determine whether to establish depreciation or amortization reserves.

**3.1.2   Distributions.** To make distributions in cash or in specific property, or in an undivided interest therein, or partly in cash and partly in property, and in installments or at one time, and to do so without regard to the income tax basis of specific property allocated to any beneficiary (including any trust) and without making pro rata distributions of specific assets; provided, however, each asset distributed in kind shall be valued at its date or dates of distribution value.

**3.1.3   Facility of Payments.** To make distributions directly to any beneficiary under this Agreement or to such beneficiary's legal guardian, or to otherwise pay to or apply for the use or benefit of such beneficiary any income or principal distribution as the Trustee deems necessary or advisable.

**3.1.4   Transactions Between Related Entities.** To sell any assets of any trust created under this Agreement to the beneficiaries thereof, or to itself as trustee or personal representative of any other trust or estate at the fair market value thereof; to purchase assets from any other trust or estate, or from the beneficiaries of any trust created under this Agreement for any trust created under this Agreement at the fair market value thereof; and to lend money to such other

17

Case 2:20-cv-00010-FL     Document 28-2     Filed 04/15/20     Page 19 of 35

trusts or estates, to the beneficiaries thereof, or to the beneficiaries of any trust created under this Agreement at rates of interest and upon security determined by the Trustee to be fair and adequate; provided, however that the Grantor or the beneficiaries of any trust created under this Agreement are the respective grantors or decedents of such other trusts or estates.

**3.1.5 Charitable Deduction.** Notwithstanding any other provision of this Agreement, no power or authority granted to the Trustee under this Agreement (whether specifically or by reference) or by law shall be exercised so that such exercise would cause any gift under this Agreement to or for the benefit of a charity which would otherwise qualify for the federal estate tax charitable deduction to fail to qualify for such deduction.

**3.2. Several Trustees.** In the exercise of any power granted under this Agreement, the Trustees shall act unanimously (except to the extent any Trustee has no power to act, in accordance with the provisions of Section 3.4, below); provided, however, any Trustee shall have the authority to delegate to any other Trustee the power to perform purely ministerial acts in the administration of any trust created hereunder.

**3.3. Spendthrift Clause.** To the extent permitted by law, none of the beneficiaries under this Agreement shall have any power to dispose of or to charge, by way of anticipation or otherwise, any interest given to such beneficiary. All sums payable to any beneficiary shall be free and clear of debts, contracts, alienations, and anticipations of such beneficiary, and all liabilities for levies, attachments, and proceedings of any kind, at law or in equity, and, in the case of a married person, free from the control of such beneficiary's spouse.

Case 2:20-cv-00010-FL   Document 28-2   Filed 04/15/20   Page 20 of 35

3.4.    **Trustee's Discretion.** Wherever in this Agreement the Trustee is given authority to pay to or apply for a beneficiary amounts of income and principal in the Trustee's discretion, such discretion, unless otherwise specifically defined or limited, shall be considered to mean amounts deemed necessary or advisable by the Trustee for such beneficiary's maintenance, health (including medical, dental, hospital, and nursing expenses), education (including collegiate and professional), and support in reasonable comfort; provided, however, that no Trustee shall participate in the exercise of any discretionary power over income or principal, or in any consideration of the exercise thereof, if such Trustee is or could be a beneficiary of such discretionary power, whether directly or indirectly, including, without limitation, any exercise of such discretionary power that could have the effect of discharging in whole or in part such Trustee's legal obligation of support of any beneficiary hereunder. In exercising the authority to pay to or apply for a beneficiary amounts of income and principal in the Trustee's discretion, the Trustee may, but need not, take into account income or resources available to such beneficiary from other sources.

3.5.    **Generation-Skipping Transfer Tax.**

3.5.1    The Trustee shall divide any trust fund established or directed to be established under this Agreement into two separate shares in such manner (otherwise consistent with the provisions of this trust Agreement), and shall allocate property among such shares, as the Executors of the estate of the Grantor may direct. Such shares shall be known as the "Exempt Share" and the "Nonexempt Share". If such Executors allocate any part or all of the Grantor's GST exemption so that it covers an entire fund established or directed to be estab- blished under this Agreement, such entire fund shall be deemed to be an "Exempt

19

Case 2:20-cv-00010-FL    Document 28-2    Filed 04/15/20    Page 21 of 35

Share". If such Executors allocate no part of such GST exemption to such a fund, such entire fund shall be deemed to be a "Nonexempt Share".

3.5.2    Subject to the provisions of Section 3.5.1, if an Exempt Share shall have been established under any fund pursuant to Section 1.14 of this Agreement, the Trustee shall divide each trust fund established or directed to be established under such sections of this Agreement into an Exempt Share and a Nonexempt Share; shall allocate to the Exempt Share of each such trust only property passing from the Exempt Share of any trust under such sections, and shall allocate to the Nonexempt Share of such trust under such sections only property passing from the Nonexempt Share of any trust under such sections.

3.5.3    Subject to the provisions of Section 3.5.1 and 3.5.2, the Trustee in the exercise of discretion may divide any fund established or directed to be established under this Agreement into an Exempt Share and a Nonexempt Share (including power to designate an entire fund as an Exempt Share or a Nonexempt Share), and allocate property among such shares.

3.5.4    For all purposes of this Agreement, whenever any fund is divided into an Exempt Share and a Nonexempt Share, such shares shall be treated as separate trusts, to be held, administered and accounted for separately.

3.5.5    In making any distributions at the death of the Grantor to the issue then living of a deceased child of the Grantor, pursuant to Section 1.14 of this Agreement, the Trustee shall insofar as possible allocate property from a Nonexempt Share to any person or trust as to whom such distribution would be a direct skip for Federal generation-skipping transfer tax purposes but for the

Case 2:20-cv-00010-FL    Document 28-2    Filed 04/15/20    Page 22 of 35

special rule treating such person as belonging to an older generation.

3.5.6   To the extent feasible, when making distributions to or for the benefit of skip persons and non-skip persons (as those terms are used in connection with the Federal generation-skipping transfer tax), the Trustee shall make distributions to non-skip persons first from a Nonexempt Share and shall make distributions to skip persons first from an Exempt Share. However, payments for educational or medical expenses of skip persons, the payment of which would not constitute generation-skipping transfers, shall be made first from a Nonexempt Share.

3.5.7   The Trustee may at any time in the exercise of sole discretion make distributions of principal from a Nonexempt Share to non-skip persons who are beneficiaries of such trust, for the purpose of eliminating or reducing the generation-skipping transfer tax, even to the extent of terminating the trust.

3.6.   **Power to Terminate.** Subject to the limitations of Section 3.5, if the Trustee possesses the power of principal invasion with respect to any trust created under this Agreement, the Trustee shall have the power to terminate any such trust whenever the Trustee deems it advisable for reasons of economy of administration, tax reasons, or other reasons, by distributing the assets of such trust to the then current income beneficiary or beneficiaries of such trust. The Trustee shall have the power to distribute the assets of such trust to such of the beneficiaries, in such amounts or proportions, as the Trustee, in its sole discretion, shall deem necessary or appropriate.

3.7.   **Trustee Accountings.** The Trustee shall not be required to qualify or to file any periodic inventory or accounting with respect to any trust created under this

Agreement with any court, even though otherwise required by law, but it shall file annual accounts of receipts and disbursements of income and principal with each adult beneficiary and with the legal guardian or the person having custody of each minor beneficiary.

3.8.  **Consolidation of Trust Assets.** If at any time the Trustee is the Trustee of more than one trust the terms of which are substantially similar and the beneficiaries of which are identical, then the Trustee, in its sole discretion, may, for reasons of economy of administration, tax reasons, or other reasons, consolidate those trust assets and administer them as one trust under the terms of one of the trusts; provided, however, in no event shall the Trustee consolidate any trusts which do not have the same inclusion ratio (as that term is defined in Section 2642 of the Code) for purposes of the federal generation-skipping transfer tax.

3.9.  **Immediate Entitlement.** If any distribution is directed to be made under this Agreement to a trust at a time when the beneficiary of that trust would be entitled to receive from the Trustee immediate distribution of the entire principal of such trust, then instead of making distribution to such trust, the Trustee shall make distribution directly to the beneficiary or beneficiaries to whom, and in the same manner and proportions as, the Trustee would have been required to make distribution under such trust.

3.10.  **Special Termination.** Any trust created under this Agreement still in existence on the day twenty-one (21) years after the death of the last to die of all the beneficiaries hereunder named or described who are living at the date of the Grantor's death shall terminate and be paid, free of trust, in the same manner as the CHARITABLE SHARE as more fully identified in Section 1.16 of this Agreement.

22

Case 2:20-cv-00010-FL    Document 28-2    Filed 04/15/20    Page 24 of 35

3.11.   **Survivorship.**  Any beneficiary who shall not be living thirty (30) days after the date of the Grantor's death shall be deemed to have predeceased the Grantor, and the trust estate shall be administered and distributed in all respects in accordance with such presumption.

## PART 4 – DEFINITIONS

4.1.   **Gender.**  The neuter gender shall include the masculine and the feminine, the masculine gender shall include the feminine, and the feminine gender shall include the masculine, as the context may require.

4.2.   **Number.**  The singular number shall include the plural, and the plural number shall include the singular, as the context may require.

4.3.   **Trust Estate.**  The term "trust estate" shall mean the property subject to the trust at any time.

4.4.   **Grantor's Child, Grantor's Children, Grantor's Issue.**   The term "Grantor's children" or "Grantor's named children" shall be limited to mean KIM CARRITHERS and LEONARD BENNETT; the term "Grantor's child" shall mean either of them; and the term "children of Grantor's named children" shall mean the children of Grantor's children (whether born or adopted before or after the date of this Agreement). The terms "Grantor's child" and "Grantor's children" shall also include any child of the Grantor born or adopted after the date of this Agreement, and the term "children of Grantor's named children" shall also include such children and their children (whether born or adopted after the date of this Agreement).

23

**4.5.   Code, General Statutes.**   The term "Code" shall mean the Internal Revenue Code of 1986, as amended from time to time, and the term "General Statutes" shall mean the General Statutes of North Carolina, as amended from time to time.

**4.6.   Gross Estate, Taxable Estate.**   The terms "gross estate" and "taxable estate" shall refer to Sections 2031 and 2051 of the Code, respectively.

**4.7.   Available GST Exemption.**   The term "available GST exemption" shall mean an amount equal to the GST exemption provided by Section 2631(a) of the Code that has not been allocated by the Grantor (or by operation of law) to property transferred by the Grantor during the Grantor's lifetime.   For this purpose, if the Grantor died without filing a gift tax return which is required to be filed and which has a due date (including extensions) after the Grantor's death, then the Grantor shall be deemed to have allocated GST exemption to all the property with respect to which the Grantor is the transferor (as defined in Section 2652(a) of the Code) that (1) may at some time be subject to the federal generation-skipping transfer tax, (2) is required to be reported on such gift tax return, (3) is to or for the benefit of the Grantor's issue, and (4) does not qualify for any other exemption or exclusion from the federal generation-skipping transfer tax.   However, the Grantor shall not be deemed to have allocated GST exemption to any trust if the entire trust principal may, at any time, either be required under the terms of the governing instrument to be paid to a child of the Grantor or to a person treated as a child of the Grantor under Section 2612(c)(2) of the Code (other than as an invasion of principal in the discretion of the Trustee or pursuant to a standard), or be subject to federal estate tax by reason of the death of a child of the Grantor or the death of a person treated as a child of the Grantor under Section 2612(c)(2) of the Code.

ROCKYMOUNT/014902-002/2137510 v.1 05/23/01

Case 2:20-cv-00010-FL     Document 28-2     Filed 04/15/20     Page 26 of 35

IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement

in duplicate the day hereinabove written, adopting as their respective seals the typed

"(SEAL)" adjacent to their signature.

_____ (SEAL)
**PAUL F. M. SHAVER III,** Grantor

_____ (SEAL)
**JULIA LEE,** Trustee

_____ (SEAL)
**SARAH MORRIS,** Trustee

_____ (SEAL)
**LEONARD BENNETT,** Trustee

25

IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement in duplicate the day hereinabove written, adopting as their respective seals the typed "(SEAL)" adjacent to their signature.

_____ (SEAL)
PAUL F. M. SHAVER III, Grantor

_____ (SEAL)
JULIA LEE, Trustee

_____ (SEAL)
SARAH MORRIS, Trustee

_____ (SEAL)
LEONARD BENNETT, Trustee

25

2007 13:07 FROM:                                    TO:^13 261 0943          P.33/39

# EXHIBIT A

## PAUL F. M. SHAVER III TRUST

Trust u/a PAUL F. M. SHAVER III, Grantor

and

JULIA LEE, SARAH MORRIS, and, LEONARD BENNETT, Trustees

## RECEIPT OF PROPERTY

The undersigned Trustees hereby acknowledge receipt of the following described property which is to be held in trust in the **PAUL F. M. SHAVER III TRUST** for the purposes set forth in the foregoing Agreement of which this schedule is specifically made a part:

Cash        $25,00.

This 24 day of _mAy_ _____, 2002.

_____(SEAL)
JULIA LEE, Trustee

_____(SEAL)
SARAH MORRIS, Trustee

_____(SEAL)
LEONARD BENNETT, Trustee

ROCKYMOUNTAIL14902:002/2375 10 v 3 05/72)/02

Case 2:20-cv-00010-FL    Document 28-2    Filed 04/15/20    Page 29 of 35

## EXHIBIT A

## PAUL F. M. SHAVER III TRUST

### Trust u/a PAUL F. M. SHAVER III, Grantor

and

### JULIA LEE, SARAH MORRIS, and, LEONARD BENNETT, Trustees

## RECEIPT OF PROPERTY

The undersigned Trustees hereby acknowledge receipt of the following described property which is to be held in trust in the **PAUL F. M. SHAVER III TRUST** for the purposes set forth in the foregoing Agreement of which this schedule is specifically made a part:

Cash    $25.00.

This _____ day of _____, 2002.

_____(SEAL)
**JULIA LEE**, Trustee

_____(SEAL)
**SARAH MORRIS**, Trustee

_____(SEAL)
LEONARD BENNETT, Trustee

26

ROCK YMOUNT/014902-002/357510 v 5 05/23/02

Case 2:20-cv-00010-FL    Document 28-2    Filed 04/15/20    Page 30 of 35

## EXHIBIT B

## PAUL F. M. SHAVER III TRUST

Trust u/a PAUL F. M. SHAVER III, Grantor

and

## JULIA LEE, SARAH MORRIS, and, LEONARD BENNETT, Trustees

## SUCCESSOR TRUSTEE

1.   The Successor Trustee named by the Grantor in an acknowledged written instrument attached to this Agreement or in his will.

2.   Debbie Burgess

3.   The Successor Trustee named by the last serving Trustee or Successor Trustee in an acknowledged written instrument attached to this Agreement or in his or her will.

ROCKYMOUNT/014902-002/257310 v 5 05/23/02

## EXHIBIT C

## PAUL F. M. SHAVER III TRUST

Trust u/a PAUL F. M. SHAVER III, Grantor

and

JULIA LEE, SARAH MORRIS, and, LEONARD BENNETT, Trustees

## NORTH CAROLINA GENERAL STATUTES SECTION 32-27

28

Case 2:20-cv-00010-FL    Document 28-2    Filed 04/15/20    Page 32 of 35

STATE OF NORTH CAROLINA

COUNTY OF Dare

I, Wendy L. Lane, a Notary Public for said County and State, do hereby certify that PAUL F. M. SHAVER III as Grantor personally appeared before me this day and acknowledged the due execution of the foregoing instrument.

Witness my hand and notarial seal this 24TH day of May, 2002.

Wendy B. Lane
Notary Public

My Commission Expires: July 23, 2006

(Notary Seal)

STATE OF North Carolina

COUNTY OF Dare

I, Wendy L. Lane, a Notary Public for said County and State, do hereby certify that JULIA LEE as Trustee personally appeared before me this day and acknowledged the due execution of the foregoing instrument.

Witness my hand and notarial seal this 24th day of May, 2002.

Wendy B. Lane
Notary Public

My Commission Expires: July 23, 2006

(Notary Seal)

29

Case 2:20-cv-00010-FL     Document 28-2     Filed 04/15/20     Page 33 of 35

STATE OF NORTH CAROLINA

COUNTY OF ___Dare___

I, ___Wendy L. Lane___, a Notary Public for said County and State, do hereby certify that SARAH MORRIS as Trustee personally appeared before me this day and acknowledged the due execution of the foregoing instrument.

Witness my hand and notarial seal this __24th__ day of ___May___,

___Wendy L. Lane___
Notary Public

My Commission Expires: __July 23, 2006__

(Notary Seal)


STATE OF _____

COUNTY OF _____

I, _____, a Notary Public for said County and State, do hereby certify that LEONARD BENNETT as Trustee personally appeared before me this day and acknowledged the due execution of the foregoing instrument.

Witness my hand and notarial seal this _____ day of _____, 2002.

_____
Notary Public

My Commission Expires: _____

(Notary Seal)

30

ROCKYMOUNT/014902-002/237510 v.5 05/23/02

STATE OF NORTH CAROLINA

COUNTY OF _____

    I, _____, a Notary Public for said County and State, do hereby certify that SARAH MORRIS as Trustee personally appeared before me this day and acknowledged the due execution of the foregoing instrument.

    Witness my hand and notarial seal this _____ day of _____, 2002.

                                _____

                                  Notary Public

My Commission Expires: _____

(Notary Seal)


STATE OF Virginia

CITY OF Newport News

    I, Donna L. Winters, a Notary Public for said County and State, do hereby certify that LEONARD BENNETT as Trustee personally appeared before me this day and acknowledged the due execution of the foregoing instrument.

    Witness my hand and notarial seal this 24th day of May 2002.

                                  *Donna L. Winters*

                                  Notary Public

My Commission Expires: 8/31/04

(Notary Seal)

ROCKYM(X)DNT/014902-662/257310 v.5 05/13/02