IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION

NO. 2:20-CV-10-FL

| | | |
|---|---|---|
| SHRINERS HOSPITALS FOR CHILDREN, a nonprofit corporation, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| THE PAUL F.M. SHAVER, III, PROFIT SHARING PLAN; THE PAUL F.M. SHAVER, III, INC., EMPLOYEE TRUST; PAUL F.M. SHAVER, III, INC.; JULIA P. LEE; BARRIER ISLAND STATION, INC.; JOHN T. LANCASTER, profit sharing plan; PFMS HOLDING, INC.; JTL HOLDING, INC.; BLACK PELICAN SEAFOOD COMPANY, INC; BLACK PELICAN, LLC; BLACK PELICAN VENTURES, INC.; SUGAR CREEK I, INC.; SUGAR CREEK II, LLC; SUGAR CREEK III, LLC; ESTATE OF PAUL F.M. SHAVER, III; SARAH K. MORRIS; BARRIER ISLAND REALTY, INC; and THE JOHN T. LANCASTER, INC. PROFIT SHARING PLAN, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | ORDER |
| Defendants. [1] | ) ) | |

This matter is before the court on motion to dismiss filed by defendants The Paul F.M.

Shaver, III, Profit Sharing Plan (the "Shaver Plan"); The Paul F.M. Shaver, III, Inc. Employee

Trust (the "Shaver Trust"); Paul F.M. Shaver, III, Inc. ("PFMS, Inc."); PFMS Holding, Inc.

("PFMS Holding"); Barrier Island Realty, Inc. ("Barrier Island Realty"), Barrier Island Station,

---

[1]    The court has constructively amended the case caption to reflect the correct spelling of defendant Barrier Island Station's name, and it will direct the clerk to so amend the docket.

Inc. ("Barrier Island Station"), Black Pelican Seafood Company, Inc. ("Black Pelican Seafood Company"), Black Pelican Ventures, Inc. ("Black Pelican Ventures"); Black Pelican, LLC ("Black Pelican"); Estate of Paul F.M. Shaver, III (the "Shaver Estate"); Julia P. Lee ("Lee"); Sarah K. Morris ("Morris"); Sugar Creek I, Inc. ("Sugar Creek I"); Sugar Creek II, LLC ("Sugar Creek II"); Sugar Creek III, LLC ("Sugar Creek III") (collectively "the Shaver defendants") (DE 27) pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(c); and motion to dismiss filed by defendants JTL Holding, Inc. ("JTL Holding"); John T. Lancaster ("Lancaster"), and John T. Lancaster, Inc. Profit Sharing Plan (the "Lancaster Plan") (collectively "the Lancaster defendants") (DE 29), also pursuant to Rules 12(b)(6) and 12(c). The issues raised have been briefed fully, and in this posture, are ripe for ruling. For the following reasons, the Shaver defendants' motion to dismiss is granted in part and denied in part, and the Lancaster defendants' motion to dismiss is granted in part and denied in part.

## STATEMENT OF THE CASE

Plaintiff commenced this action February 17, 2020, under the Employee Retirement Income Security Act of 1974 ("ERISA") as amended, 29 U.S.C. § 1001 et seq., seeking to recover benefits under a profit-sharing plan. Plaintiff alleges breach of fiduciary duty in violation of ERISA §§ 404(a)(1)(A), (B), (C) and (D); prohibited transactions in violation of ERISA § 406; and failure to make distributions, in violation of ERISA § 502(a)(1)(B). Plaintiff also brings state law claims for breach of fiduciary duty, constructive fraud, unfair and deceptive trade practices, breach of contract and the implied covenant of good faith and fair dealing, unjust enrichment, subrogation, contribution, and accounting. Plaintiff seeks compensatory, punitive, and treble damages, disgorgement, injunctive relief, attorneys' fees, costs, interest, and jury trial.

2

On April 15, 2020, the Shaver defendants moved to dismiss plaintiff's complaint for failure to state a claim upon which relief can be granted. In support of their motion, the Shaver defendants rely upon the following documents: 1) last will and testament of Paul F. M. Shaver, III; 2) defendant Shaver Trust; 3) the Shaver Plan; 4) the Shaver Plan's designation of beneficiaries; 5) the Shaver Plan's 2006 Internal Revenue Service ("IRS") Form 5500 filing; and 6) the articles of incorporation of defendant Black Pelican Ventures, Inc. That same day, the Lancaster defendants filed their motion to dismiss pursuant to Rule 12(b)(6), relying upon documents including: 1) the Shaver Plan; 2) the Shaver Plan's IRS Form 5500 filings made in 2006, 2007, and 2008; 3) the Shaver Plan's commercial guaranty; 4) defendant Lancaster's commercial guaranty; and 5) commercial guaranty of the John T. Lancaster, Inc. Employee Trust.

Plaintiff responded in opposition to the instant motions on June 4, 2020, relying upon 1) the Shaver Plan's beneficiary designation; 2) an "amended offer in compromise excerpt"; 3) Paul F. M. Shaver, III's commercial guaranty; and 4) commercial guaranty of defendant Barrier Island Realty. On June 17, 2020, the Lancaster defendants and the Shaver defendants replied in support of their respective motions to dismiss. In support, the Shaver defendants attach to their reply: 1) a memorandum in support of motion to amend answer and counterclaims, filed by the Shaver defendants in Shriners Hospital for Children v. The Paul F.M. Shaver, III, Inc. Profit Sharing Plan et al, 2:17-CV-21-BO (E.D.N.C.); 2) affidavit of Louis E. Wooten, III; and 3) affidavit of Kelsey Mayo.

## STATEMENT OF FACTS

The facts alleged in the complaint may be summarized as follows. Plaintiff is a nonprofit hospital that provides health care to seriously ill children without regard to ability to pay. (Compl. (DE 1) at 1). Because plaintiff is a charitable organization, it depends in part upon the beneficence

of its donors, such as Paul F. M. Shaver, III, a businessman who occasionally piloted burned and injured children to and from plaintiff's locations. (Id. at 2). Upon his death in 2006, Paul F. M. Shaver, III left plaintiff a portion of his assets to assist in its charitable mission. (Id.). The distribution of Paul F. M. Shaver, III's assets is described more particularly below.

A.     Shaver Plan

Paul F. M. Shaver, III maintained an interest in the Shaver Plan, and he designated beneficiaries of that interest as follows: 1) plaintiff is a 40% beneficiary; 2) defendant Morris, Paul F.M. Shaver, III's companion, is also a 40% beneficiary; 3) and defendant Lee, one of Paul F.M. Shaver, III's business associates, is a 20% beneficiary. (Id. at 2, 6). Defendant PFMS, Inc., a corporation wholly owned by defendant Shaver Estate, is the plan administrator of the Shaver Plan. (Id. at 7). At all times relevant to the instant action, defendant Lee has been an employee and president of defendant PFMS, Inc., and she has also been the sole trustee under the Shaver Plan. (Id.).

In the year of Paul F. M. Shaver, III's death, 2006, the Shaver Plan's assets were valued at $15,411,472.00, according to defendant Shaver Estate's tax return. (Id. at 15). By 2016, the Shaver Plan's assets had depleted to $2,314,814.00, according to the Shaver Plan's IRS Form 5500 filing. (Id.). Although section 6.02 (D) of the Shaver Plan allegedly required distribution of plaintiff's entire interest by July 30, 2011, plaintiff has yet to receive a distribution of any kind from the Shaver Plan. (Id. at 2, 6, 15). Despite this, defendants Lee and Morris allegedly have falsely represented to the IRS that plaintiff has received millions of dollars, and they allegedly are claiming charitable deductions based on their misrepresentations to the IRS. (Id. at 5).

B.     Barrier Island Station Project

Before Paul F. M. Shaver, III's death, he partnered with defendant Lancaster in a condominium project known as Barrier Island Station. (Id. at 11). For purposes of this project, defendant Barrier Island Station[2] obtained a $8,000,000.00 loan from RBC Centura Bank ("RBC loan"). (Id. at 13). The RBC loan was guaranteed by: 1) the Shaver Plan; 2) defendant Lancaster Plan; 3) Paul F.M. Shaver, III, and following his death on July 30, 2006, defendant Shaver Estate; 4) defendant Lancaster; and 5) defendant Barrier Island Realty. (Id.).

Following Paul F.M. Shaver, III's death, defendant Lee, as trustee of the Shaver Plan and president of defendant PFMS, Inc., caused the Shaver Plan to loan defendant Barrier Island Station more than $8,000,000.00. (Id.). In recognition of the loan, defendant Lee, as president and sole director of defendant Barrier Island Station, issued the Shaver Plan an unsecured promissory note in the amount of at least $8,181,163.00. (Id.). In 2014, defendant Lee paid off the remainder of the RBC loan with the Shaver Plan loan, allegedly without contribution or payment from any of the co-guarantors. (Id.).

In 2015, the assets of defendant Barrier Island Station were sold to Heritage Investments, LLC for approximately $5,800,000.00 (Id. at 18). Defendant Lee allegedly made no effort to recoup from the asset sale the vast majority of the $8,000,000.00 loan the Shaver Plan made to defendant Barrier Island Station. (Id. at 20). In addition, defendant Lee allegedly did not inform plaintiff that the asset sale to Heritage Investments, LLC closed, despite plaintiff's repeated requests for information about this matter. (Id.).

C.    Black Pelican Oceanfront Restaurant

---

[2]        Paul F.M. Shaver, III and defendant Lancaster established identical ownership structures through various companies for the Barrier Island Station condominium project. (Compl. (DE 1) ¶ 34). In particular, defendant PFMS Holding owned 49% of defendant Barrier Island Station; defendant JTL Holding owned 49% of defendant Barrier Island Station; and defendant Lee owned the remaining two percent of defendant Barrier Island Station. (Id. ¶ 39). In addition, defendant PFMS Holding was wholly owned by the Shaver Plan, and defendant JTL Holding was wholly owned by defendant Lancaster Plan. (Id. ¶ 40).

The Shaver Plan owned the building and land associated with Black Pelican Oceanfront Restaurant ("Black Pelican Restaurant Property") until November 13, 2008, when defendant Lee allegedly distributed a one-half undivided interest in the Black Pelican Restaurant Property to herself and defendant Morris, as beneficiaries of the Shaver Plan. (Id. at 15-16). Defendant Lee allegedly failed to distribute any interest in the Black Pelican Restaurant Property to plaintiff. (Id. at 16).

D.     Sugar Creek Restaurant Project

Defendants Sugar Creek II and Sugar Creek III each own as tenants in common an undivided one-half interest in real property in Dare County, North Carolina, used for the operation of Sugar Creek Seafood Restaurant. (Id. at 24). The Shaver Plan owned defendant Sugar Creek III until December 31, 2007, when defendant Lee distributed defendant Sugar Creek III to herself and defendant Morris, as beneficiaries of the Shaver Plan. (Id. at 24). Defendant Lee allegedly failed to make any distribution of defendant Sugar Creek III to plaintiff. (Id.).

Moreover, from 2005 until 2008, defendant Lee transferred more than $2,360,000.00 from the Shaver Plan to defendants Sugar Creek II and Sugar Creek III. (Id. at 26). In return, the Shaver Plan accepted a promissory note on April 1, 2008, for some portion of the amount, which allegedly was never secured by a deed of trust. (Id.). Defendant Lee allegedly failed to enforce the promissory note, and no payments under the note have been made. (Id.).

Additional allegations pertinent to the instant motions will be discussed below.

**COURT'S DISCUSSION**

A.     Standard of Review

"After the pleadings are closed--but early enough not to delay trial--a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings is

evaluated on the same standard as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Burbach Broad. Co. of Delaware v. Elkins Radio Corp., 278 F.3d 401, 406 (4th Cir. 2002). To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (quotations omitted).

B.      Analysis

        1.      ERISA Claims

The Shaver and Lancaster defendants seek dismissal of plaintiff's claims for breach of fiduciary duty in violation of ERISA §§ 404(a)(1)(A), (B), (C) and (D); prohibited transactions in violation of ERISA § 406; and failure to make distributions, in violation of ERISA § 502(a)(1)(B), on grounds that the Shaver Plan is not an "employee benefit plan" within the meaning of ERISA, and therefore, is not entitled to ERISA protection. In its response, plaintiff concedes that ERISA does not govern the Shaver Plan. (See Response (DE 41) at 5). Accordingly, plaintiff's claims brought pursuant to ERISA are dismissed without prejudice.

        2.      Breach of Fiduciary Duty and Constructive Fraud

7

Plaintiff brings state law claims for breach of fiduciary duty and constructive fraud against defendants Lee and PFMS, Inc. A claim of breach of fiduciary duty requires "(1) a showing of a fiduciary relationship, (2) thereby establishing a fiduciary duty, and (3) a breach of that duty." Dalton v. Camp, 353 N.C. 647, 654 (2001). Moreover, "[t]he elements of a claim for breach of fiduciary relationship are the same as those for constructive fraud." King v. Bryant, 369 N.C. 451, 465 n. 3 (2017).

Here, plaintiff has plausibly alleged that defendants Lee and PFMS, Inc. breached their fiduciary duties to plaintiff, through their administration of the Shaver Plan. (Compl. (DE 1) ¶¶ 183-185). The Shaver defendants, however, dispute the existence of a fiduciary relationship between the parties. According to the Shaver defendants:

> [p]laintiff alleges it is a 40% beneficiary of the Shaver Account and then relies on that erroneous allegation to make its claims for breach of fiduciary duty and constructive fraud . . . Plaintiff is not a 40% beneficiary of the Shaver Account, but rather, is at best a contingent or remainder beneficiary of Shaver's profit Sharing Plan as set out in the Beneficiary Designation.

(Mem. (DE 31) at 16). Importantly, a motion to dismiss "tests the sufficiency of a complaint; it does not, however, "resolve contests surrounding the facts." King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016) (citations omitted). Here, plaintiff raises a plausible contest of the facts, and therefore, the Shaver defendant's attempt to discredit plaintiff's allegations regarding its status as a beneficiary does not provide a basis for dismissal.[3]

Next, the Shaffer defendants seek dismissal of plaintiff's claims, on grounds that plaintiff's damages cannot be proved with sufficient certainty that a jury may determine them, relying upon Fortune v. First Union Nat'l Bank, 323 N.C. 146, 150 (1988). However, Fortune is inapposite,

---

[3] The court recognizes that the Beneficiary Designation is "integral to and explicitly relied on in the complaint", allowing the court to consider it while reviewing the instant motions. CACI Int'l, Inc. v. St. Paul Fire & Marine Ins. Co., 566 F.3d 150, 154 (4th Cir. 2009). However, issues surrounding interpretation of the Beneficiary Designation preclude judgment as a matter of law.

8

where it addressed the certainty of damages in the context of a post-trial motion, rather than a motion to dismiss or motion for judgment on the pleadings. Taking plaintiff's allegations as true, as the court must do at this preliminary stage, plaintiff plausibly alleges damages. (<u>See</u> Compl. (DE 1) ¶¶ 4, 129).

The Shaver defendants also argue that plaintiff's claim for damages will modify the terms of Paul F. M. Shaver, III's will and trust. However, the allegations in plaintiff's complaint, which are the focus of the court's present inquiry, do not compel such an inference. Finally, the Shaver defendants argue that even assuming plaintiff is a 40% beneficiary, its claims for breach of fiduciary duty and constructive fraud are time barred by the three-year statute of limitations. According to the Shaver defendants, these claims would have accrued on or before June 30, 2011, when plaintiff was required to receive its distributions under the Shaver Plan. In contrast, plaintiff argues that under the continuing wrong doctrine, the statute of limitations does not begin to run until the alleged fiduciary, here defendant Lee, has been removed from her position.

North Carolina law recognizes the continuing wrong doctrine. <u>See</u> <u>Williams v. Blue Cross Blue Shield of N. Carolina</u>, 357 N.C. 170, 179 (2003) ("When [the continuing wrong] doctrine applies, a statute of limitations does not begin to run until the violative act ceases."); <u>Babb v. Graham</u>, 190 N.C. App. 463, 481 (2008) (under the continuing wrong doctrine, the statute of limitations for a constructive trust claim based upon breach of fiduciary duty did not begin to run until the trustee who refused to make distributions was removed as trustee).

In light of the continuing wrong doctrine, the validity of the Shaver defendant's statute of limitations defense is not clear from the face of plaintiff's complaint, and therefore, does not provide a basis for dismissal at this juncture. <u>See</u> <u>Brockington v. Boykins</u>, 637 F.3d 503, 506 (4th Cir. 2011) (Dismissal under Rule 12(b)(6) based on affirmative defenses "is appropriate when the

face of the complaint clearly reveals the existence of a meritorious affirmative defense."); <u>King</u>, 825 F.3d at 214 ("A Rule 12(b)(6) motion . . . does not . . . resolve contests surrounding . . . the applicability of defenses.").

In sum, the Shaver defendants' motion to dismiss plaintiff's claims for breach of fiduciary duty and constructive fraud are denied.

3.    Unfair and Deceptive Trade Practices

Plaintiff asserts claims for unfair and deceptive trade practices against defendants Lee and PFMS, Inc.  In North Carolina, "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful."  N.C. Gen. Stat. § 75-1.1(a).  "In order to establish a prima facie claim for unfair trade practices, a plaintiff must show: (1) defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff." <u>Dalton</u>, 353 N.C. at 656.  "The determination of whether an act or practice is an unfair or deceptive practice that violates [N.C. Gen. Stat.] § 75– 1.1 is a question of law for the court."   <u>Gray v. N. Carolina Ins. Underwriting Ass'n</u>, 352 N.C. 61, 68 (2000).

Under the UDTPA, "commerce" is limited to "business activities."  N.C. Gen. Stat. § 75-1.1(b).  For purposes of the UDTPA, the term "business activities" connotes "the manner in which businesses conduct their regular, day-to-day activities, or affairs, such as the purchase and sale of goods, or whatever other activities the business regularly engages in and for which it is organized", and it has been construed in light of the statute's ultimate goal, to benefit consumers.  <u>HAJMM Co. v. House of Raeford Farms, Inc.</u>, 328 N.C. 578, 594, (1991).  As such, the statute does not apply to all wrongs committed in a business setting.  <u>Id.</u> at 593.  In particular, employer-employee

relations, securities transactions, and the internal operations of a single market participant do not fall within the ambit of the UDTPA. Id.; White v. Thompson, 364 N.C. 47, 53 (2010).

Here, plaintiff claims defendants Lee and PFMS, Inc., as administrator and trustee of the Shaver Plan, withheld assets allegedly owed to plaintiff under the Shaver Plan and wrongfully distributed those assets to others, in the form of asset distributions and loans. (Compl. (DE 1) at 2-3). The administration of a profit-sharing plan occurs within the confines of single market participant, and thus is not "in or affecting commerce." See White, 364 N.C. at 53 (holding that defendant's breach of fiduciary duty to his partners occurred within a single market participant and thus was not "in or affecting commerce."); Haynes v. B & B Realty Group, LLC, 179 N.C. App. 104, 112 (2006) (denying plaintiff's purported rights under profit sharing agreement not in or affecting commerce).

Plaintiff contends that the alleged acts did not occur within a single market participant due to the sheer multitude of entities involved. However, plaintiff does not allege that defendants Lee's and PFMS, Inc.'s conduct was unfair to the other entities. (Compl. (DE 1) ¶¶ 213-243) (alleging that the other entities were unjustly enriched). Rather, the alleged unfairness of their conduct was confined to a single market participant, the Shaver Plan. See White, 364 N.C. at 53-54) ("[T]his argument overlooks that the unfairness of defendant['s] conduct did not occur in his dealings with Smithfield Packing. Defendant [ ] was found to have breached his fiduciary duty to his partners through his conduct within the ACE partnership . . . [w]e determined that this conduct, the potential unfairness of which was confined to within a single business, was not within the Act's purview.").

The cases cited by plaintiff are instructively distinguishable. First, plaintiff relies on Sara Lee Corp. v. Carter, 351 N.C. 27 (1999), a case where defendant, an employee of plaintiff, sold plaintiff computer equipment at inflated prices through certain businesses, while concealing his

ownership interests in those businesses. The North Carolina Supreme Court held "[t]rusting that these were legitimate transactions secured at competitive prices in the marketplace, plaintiff regularly conducted business with the companies in which defendant had an interest . . . defendant and plaintiff clearly engaged in buyer-seller relations in a business setting." Sara Lee, 351 N.C. at 33. Here in contrast, plaintiff and defendants Lee and PFMS, Inc. did not exchange goods in the marketplace, or interact outside of the context of the Shaver Plan.

Other cases relied on by plaintiff, Mosley & Mosley Builders, Inc. v. Landin Ltd., 97 N.C. App. 511, 514 (1990), and Gosai v. Abeers Realty & Dev. Mktg., Inc., 166 N.C. App. 625 (2004), are also inapposite. Although property is tangentially involved in the instant matter, since defendants Lee and PMFS, Inc. allegedly distributed the Black Pelican Restaurant Property to defendant Lee, as an asset of the Shaver plan, here defendants Lee and PMFS, Inc. did not lease plaintiff commercial property in outlet mall, as the defendant did in Landin, or sell plaintiff real estate as a real estate broker, as the defendant did in Gosai.

In sum, because defendants Lee and PFMS, Inc.'s alleged conduct was not "in or affecting commerce", plaintiff's unfair and deceptive trade practices claims must be dismissed without prejudice. The Shaver defendants' motion to dismiss is granted in this part.

4.      Breach of Contract

Plaintiff asserts breach of contract claims against defendants Lee and PFMS, Inc. Under North Carolina law, the "elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of that contract." Crosby v. City of Gastonia, 635 F.3d 634, 645 (4th Cir. 2011) (quotations omitted).

Here, plaintiff has not alleged either of the foregoing elements. Conceding as much, plaintiff indicates in its brief, "[w]hile breach of contract may not be the correct cause of action

that remedies these wrongs (breach of trust is probably the more appropriate term for the claim), Plaintiff has pled these very same failings by Defendant Lee and Defendant PFMS, Inc. as fiduciary breaches under North Carolina law." (Mem. (DE 42) at 15). Where plaintiff fails to allege the elements of breach of contract, and where any such claim would be duplicative of her breach of fiduciary duty claims, plaintiff's breach of contract claims against defendants Lee and PFMS, Inc. are dismissed without prejudice, and the Shaver defendant's motion to dismiss is granted in this part.

     5.     Unjust Enrichment

Plaintiff asserts unjust enrichment claims against defendants Lee, Morris, Black Pelican, Black Pelican Ventures, Black Pelican Seafood Company and Lancaster Plan. A claim for unjust enrichment "operates as an equitable remedy based upon a quasi-contract or a contract implied in law which provides a measure of recovery for the reasonable value of services rendered." Ron Medlin Const. v. Harris, 364 N.C. 577, 580 (2010) (internal quotations omitted) (quoting Whitfield v. Gilchrist, 348 N.C. 39, 42 (1998); Potter v. Homestead Pres. Ass' n, 330 N.C. 569, 578 (1992)). To prevail on a claim for unjust enrichment, plaintiff must 1) confer a benefit on defendant, 2) the benefit must not have been conferred officiously or gratuitously, 3) the benefit must be measurable, and 4) defendant must have consciously accepted the benefit. Booe v. Shadrick, 322 N.C. 567, 570 (1988) (citing Wells v. Foreman, 236 N.C. 351 (1952)). The court addresses plaintiff's unjust enrichment claims against the Shaver defendants and the Lancaster defendants, in turn below.

     a.     Shaver Defendants

Here, plaintiff plausibly alleges that defendants Lee, Morris, Black Pelican, Black Pelican Ventures, and Black Pelican Seafood Company were unjustly enriched by certain benefits, in the form of improper distributions and loan proceeds, conferred by the Shaver Plan, since plaintiff, an

13

alleged 40% beneficiary, did not receive any distributions. (Comp. (DE 1) ¶¶ 206, 214, 220, 222, and 228). See, e.g., Norman v. Nash Johnson & Sons' Farms, Inc., 140 N.C. App. 390, 417 (2000) (minority shareholders stated a claim for unjust enrichment against majority shareholders and businesses with which the corporation had dealings, which were allegedly controlled by the majority shareholders, based on the majority shareholder's alleged diversion of corporate assets). Disputing plaintiff's alleged status as a 40% beneficiary, the Shaver defendants argue that the distributions from the Shaver Plan to defendants Lee and Morris are "different than the possible distribution to Plaintiff, as clearly stated in the Beneficiary Designation." (Mem. (DE 31) at 22). At this stage, the court does not resolve factual disputes, especially where the parties dispute the meaning and import of the Beneficiary Designation.[4] Instead, the court takes as true plaintiff's plausible allegation that it was a 40% beneficiary.

Next, the Shaver defendants compare the instant case to Duo-Fast Carolinas, Inc. v. Scott's Hill Hardware & Supply, No. 16 CVS 9343, 2018 WL 264607 (N.C. Super. Jan. 2, 2018), a case where the North Carolina Business Court found that "Plaintiff does not allege, let alone provide evidence, that it conferred a benefit on Defendants or how the facts in this case would support a claim for a contract implied in law." The relevance of Duo Fast Carolinas to the instant matter is not readily apparent, where the plaintiff in that case asserted an unjust enrichment claim against its former employee for misappropriation of trade secrets. In any event, at this stage, plaintiff is not required to provide evidence of any benefits conferred, and its plausible allegations of the same are sufficient to survive motion to dismiss.

---

[4]     The court adheres to its earlier analysis set forth in footnote three.

14

Finally, the Shaver defendants contest the alleged liability of Black Pelican Ventures, arguing it was not in existence when the alleged distributions or loans were made and that it is not affiliated with Black Pelican or Black Pelican Seafood Company. In support, the Shaver defendants attach to their brief a copy of Black Pelican Ventures Articles of Incorporation. However, the court will not resolve such factual disputes at this stage, and it takes plaintiff's plausible allegations as true. Accordingly, the Shaver defendants' motion to dismiss is denied in this part.

b.    Defendant Lancaster Plan

As relevant here, plaintiff alleges that the Shaver Plan and defendant Lancaster Plan each owned 49% of defendant Barrier Island Station, and they each owned an undivided one-half interest in certain real property, intended to be used for the Barrier Island Station condominium project, known as the Offices and the Undeveloped Land. (Compl. (DE 1) ¶¶ 35, 39). According to plaintiff, the Barrier Island Station project was operating at a loss before the death of Paul F. M. Shaver, III, and between 2006 and 2014, defendant Lancaster Plan loaned approximately $1,000,000.00 to defendant Barrier Island Station, while the Shaver Plan loaned in excess of $8,000,000.00 to defendant Barrier Island Station. (Id. ¶¶ 53, 54).

In 2015, the Offices, the Undeveloped Land, defendant Barrier Island Station, and defendant Barrier Island Station's assets were sold to Heritage Investments, LLC. (Id. ¶ 55). Defendant Lee, as president of defendant Barrier Island Station, allegedly paid $262,087.59 to both defendant Lancaster Plan and the Shaver Plan as proceeds from the sale of Barrier Island Station's assets. (Id. ¶ 75). Defendant Lee, as trustee and fiduciary under the Shaver Plan, allegedly accepted the $262,087.59 distribution on behalf of the Shaver Plan, and as co-trustee and co-fiduciary of defendant Lancaster Plan, she allegedly accepted the $262,087.59 distribution on

15

behalf of defendant Lancaster Plan. (Id. ¶ 76-77). Additionally, from the sale of the Offices and the Undeveloped Land, defendant Lee allegedly paid $1,039,000.00 to both the Shaver Plan and defendant Lancaster Plan. (Id. ¶¶ 84-86).

Where the Shaver Plan's loan to defendant Barrier Island Station allegedly exceeded defendant Lancaster's loan to defendant Barrier Island station by $7,000,000.00, and where the proceeds of the sale of defendant Barrier Island Station were allegedly distributed equally to the Shaver Plan and defendant Lancaster Plan, plaintiff plausibly alleges a claim of unjust enrichment against defendant Lancaster Plan. Embree Const. Grp., Inc. v. Rafcor, Inc., 330 N.C. 487, 496, 411 S.E.2d 916, 923 (1992) (holding that the benefit conferred for purposes of an unjust enrichment claim need not be a direct benefit); Metric Constructors, Inc. v. Bank of Tokyo-Mitsubishi, Ltd., 72 F. App'x 916, 921 (4th Cir. 2003) ("Under North Carolina law, [for purposes of an unjust enrichment claim] it is sufficient for a plaintiff to prove that it has conferred some benefit on the defendant, without regard to the directness of the transaction.").

The Lancaster defendants attempt to distinguish the sale of defendant Barrier Island Station's assets from the sale of the Offices and the Undeveloped Land, arguing that the complaint "conflates" the two. (Mem (DE 30) at 16). However, plaintiff's plausible allegations must be taken as true at this stage, and where plaintiff alleges that the sale of the assets was "concurrent" with the sale of the Offices and Undeveloped Land, (see Compl. (DE 1) ¶ 84) and the same buyer, Heritage Investments, LLC, purchased the assets, the Offices and the Undeveloped Land, (see id. ¶ 55), plaintiff is entitled to the reasonable inference that the sales were connected or related in some way.

Next, the Lancaster defendants allege that no benefit was conferred. However, as plaintiff notes, the Shaver Plan's alleged $8,000,000.00 loan to defendant Barrier Island Station, a venture

the Lancaster Plan itself allegedly loaned $1,000,000.00 to keep afloat, allowed defendant Barrier Island Station to continue to operate, and it made possible the eventual sale of defendant Barrier Island Stations assets, along with the Offices and Undeveloped Land, to Heritage Investments, LLC.

Finally, the Lancaster defendants argue that any benefit conferred by the Shaver Plan was gratuitous because defendant Lancaster Plan did not solicit or induce the Shaver Plan to forgive all sums owed to the Shaver Plan and accept an equal distribution from the sale. According to the Lancaster defendants, "[i]f the cancellation of the Shaver Plan loan was wrongful, it was the sole act of [defendant] Lee 'as trustee of the Shaver Plan and president and sole director Defendant PFMS, Inc.'" (Reply (DE 43) at 6) (citing Compl. (DE 1) ¶¶ 72-74). However, this argument ignores the fact that defendant Lee also allegedly served as co-trustee and co-fiduciary of defendant Lancaster Plan and president of defendant Barrier Island Station. (Compl. (DE 1) ¶¶ 75, 77). Taking the allegations in plaintiff's complaint as true, in light of defendant Lee's multiple capacities, it can be reasonably inferred that the Shaver Plan's acceptance of equal distribution was not gratuitous. Accordingly, the Lancaster defendants' motion is denied in this part.

6. Subrogation

Plaintiff seeks subrogation from defendant Barrier Island Station, on grounds that the Shaver Plan allegedly paid off the entirety of the RBC loan, in excess of $3,000,000.00, to defendant Barrier Island Station. (Compl. (DE 1) ¶¶ 245, 247). Seeking dismissal of this claim, the Shaver defendants argue that "[p]laintiff has made no allegation that it holds this right of subrogation and not the Plan." (Mem. (DE 31) at 24). However, this argument ignores the fact that plaintiff brings this claim on behalf of the Shaver plan. (See Compl. (DE 1) ¶ 249).

17

Accordingly, the Shaver defendants' basis for dismissal fails, and their motion is denied in this part.

   7.   Breach of Promissory Notes

Plaintiff asserts claims for "breach of contract, breach of promissory note and/or unjust enrichment" against defendants Barrier Island Station, Sugar Creek II, and Sugar Creek III, and "breach of contract and/or unjust enrichment" against defendant Sugar Creek I. As stated previously, under North Carolina law, the "elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of that contract." Crosby v. City of Gastonia, 635 F.3d 634, 645 (4th Cir. 2011) (quotations omitted). Here, plaintiff alleges defendant Barrier Island Station issued the Shaver Plan a promissory note on April 16, 2009, in the amount of at least $8,181,163.00, and it breached the promissory note by failing to repay the loan amount. (Compl. (DE 1) ¶¶ 251-52). Likewise, plaintiff alleges defendants Sugar Creek II and/or Sugar Creek III issued the Shaver Plan a promissory note for loans in excess $2,360,000.00, and they breached the promissory note by failing to repay the Shaver Plan. (Id. ¶¶ 264-65). Finally, plaintiff alleges the Shaver Plan loaned approximately $491,864.00 defendant Sugar Creek I and defendant Sugar Creek I failed to repay this loan, in breach of contract for said loan. (Id. ¶¶ 271-72). Accordingly, plaintiff plausibly alleges breach of contract against defendants Barrier Island Station, Sugar Creek II, and Sugar Creek III, and Sugar Creek I.

The Shaver defendants argue that "[t]here is no allegation that any promissory note is in default." (Mem. (DE 31) at 23). However, this argument fails, where plaintiff alleges defendants Barrier Island Station, Sugar Creek II, and Sugar Creek III, and Sugar Creek I breached the respective promissory notes or contracts by failing to repay amounts due thereunder. Next, the Shaver defendants argue that "none of the Defendants named in these causes of action are in privity

of contract with Plaintiff." (Id.). This argument ignores the fact that plaintiff brings these claims on behalf of the Shaver Plan, which plaintiff alleges was a party to the promissory notes or contracts at issue.[5] (Compl. (DE 1) ¶¶ 255, 256). Accordingly, the Shaver defendant's motion to dismiss must be denied in this part.

8. Contribution and Unjust Enrichment

Plaintiff asserts claims for "contribution and/or unjust enrichment" against defendants Lancaster Plan, Shaver Estate, Lancaster, and Barrier Island Realty. As relevant here, plaintiff alleges that, although the Shaver Plan and defendants Lancaster Plan, Shaver Estate, Lancaster, and Barrier Island Realty were all guarantors of the RBC loan, and each responsible for paying its pro-rata share of the RBC loan, the Shaver Plan paid off the entirety of the RBC loan in excess of $3,000,000.00 to defendant Barrier Island Station. (Compl. (DE 1) ¶¶ 258-259).

a. Contribution

Plaintiff seeks contribution from defendants Lancaster Plan, Shaver Estate, Lancaster, and Barrier Island Realty, alleged co-guarantors of the RBC loan. A claim for "[c]ontribution is enforceable when the complaining surety has made compulsory payment" such as when "creditors have brought suit" or when "the principal debtor is insolvent." Greenville Supply Co. v. Whitehurst, 202 N.C. 413 (1932).

Here, plaintiff alleges defendant Barrier Island Station obtained the RBC loan, which was guaranteed jointly and severally by the Shaver Plan, and defendant Lancaster Plan, Shaver Estate, Lancaster, and Barrier Island Realty. (Comp. (DE 1) ¶¶ 44-45). In 2009, the Shaver Plan allegedly loaned defendant Barrier Island Station in excess of $8,000,000.00, while defendant Barrier Island

---

[5] At this stage, plaintiff's allegations provide a plausible basis for standing. See Fortune v. First Union Nat. Bank, 323 N.C. 146, 149 (1988) (holding that a trust beneficiary may bring claims where executor or trustee mismanaged the property he holds in a fiduciary capacity). The parties have not briefed the standing issue but can raise it at a later stage of the case.

19

Station was "operating at a loss." (Id. ¶¶ 46-47, 54). Then, in 2014, allegedly using a portion of the Shaver Plan's Loan, defendant Barrier Island station paid off the entirety of the RBC Loan, without contribution or payment from any of the co-guarantors. (Id. ¶ 50). In light of the foregoing allegations, plaintiff states a claim for contribution.

Defendants argue, however, that the Shaver Plan's loan to defendant Barrier Island Station could not have been used to pay off the RBC loan, since the Shaver Plan loaned the funds to defendant Barrier Island Station five years before the RBC loan was paid off. However, it is plausible that defendant Barrier Island Station used a portion of its loan from the Shaver Plan to pay off the RBC loan, where plaintiff alleges that defendant Barrier Island Station was operating at a loss when it received the loan from the Shaver Plan. Since defendant Barrier Island Station was operating at a loss, it is unlikely that it was able to pay off the RBC loan through generation of capital on its own, instead of funds received from outside sources, such as the Shaver Plan.

Next, defendants argue that plaintiff fails to state a claim for contribution because plaintiff did not allege that defendant Barrier Island Station was "insolvent" when the Shaver Plan loaned the funds. Although plaintiff does use the word "insolvent", plaintiff alleges that defendant Barrier Island Station was "operating at a loss", and construing this allegation in the light most favorable to plaintiff, plaintiff has stated a claim for contribution. Accordingly, the Shaver defendants' and the Lancaster defendants' motions are denied in this part.

b.    Unjust Enrichment

The Lancaster defendants argue plaintiff's unjust enrichment claims fail as a matter of law because contracts govern the guaranty obligations of the parties, and where a contract governs the claim, the law will not imply a contract. As plaintiff notes, however, plaintiff pleaded its unjust

20

enrichment claims in the alternative, an approach expressly authorized by Federal Rule of Civil Procedure 8(d)(2).[6]

Next, the Lancaster defendants argue that plaintiff's unjust enrichment claim fails because any benefit was conferred officiously, since defendants PFMS, Inc. and Lee paid off the RBC loan with funds from the Shaver Plan, and neither defendant Lancaster Plan nor defendant Lancaster induced such payment. However, as stated above, the Lancaster defendants' argument ignores the fact that defendant Lee was co-trustee of defendant Lancaster Plan, and it can be reasonably inferred that this capacity influenced her decision to make the payment. Accordingly, the Lancaster defendants' motion to dismiss is denied in this part.

9.    Accounting

Plaintiff seeks an accounting from all defendants based on alleged breaches of fiduciary that duties. The Shaver defendants argue that an accounting is a remedy for alleged breaches of fiduciary duty and constructive fraud, and since those claims fail, the associated remedy must fail as well. However, as stated in more detail above, plaintiff's claims for breach of fiduciary duty and constructive trust survive motion to dismiss. The Shaver defendants also argue that "plaintiff has had its accounting" in light of its purported involvement in other litigation. However, the court's present inquiry is confined to allegations in the complaint. As such, the Shaver defendants' motion is denied in this part.

10.    Constructive Trust

---

[6]    The Lancaster defendants seek to distinguish cases relied on by plaintiff, arguing those cases involve provision of services upon a defendant, which is absent here. However, the ability to allege unjust enrichment in the alternative is not limited to cases where services are involved.

As part of plaintiff's fourth cause of action, plaintiff seeks "constructive trusts on all property interests that any Defendant in this matter has obtained as result of [defendants Lee's and PFMS, Inc.'s alleged] breaches of fiduciary duty." (Compl. (DE 1) ¶ 187). The Lancaster defendants argue plaintiff cannot seek a constructive trust against them because they are not listed as defendants in plaintiff's fourth cause of action. While plaintiff may not seek a constructive trust against the Lancaster defendants in relation to its fourth cause of action for breaches of fiduciary duty, plaintiff may seek a constructive trust against property of the Lancaster defendants in relation to its 12th and 15th causes of action for unjust enrichment, where the Lancaster defendants are named as defendants under those claims, (see Compl. (DE 1) ¶¶ 243, 262), and where those claims are allowed to proceed, as stated in more detail herein.

## CONCLUSION

Based on the foregoing, the court orders as follows:

1.  The Shaver defendants' motion to dismiss (DE 27) and the Lancaster defendants' motion to dismiss (DE 29) are GRANTED IN PART and DENIED IN PART.

2.  Plaintiff's claims against all defendants for breach of fiduciary duty in violation, of ERISA §§ 404(a)(1)(A), (B), (C) and (D); prohibited transactions, in violation of ERISA § 406; and failure to make distributions, in violation of ERISA § 502(a)(1)(B); are DISMISSED WITHOUT PREJUDICE.

3.  In addition, plaintiff's claims for unfair and deceptive trade practices claim and breach of contract against defendants Lee and PFMS, Inc. are DISMISSED WITHOUT PREJUDICE.

4.  Plaintiff's remaining claims are ALLOWED TO PROCEED.

5.    The court LIFTS the stay entered April 16, 2020, and an initial order regarding planning and scheduling shall follow.

6.    The court dispenses with hearing because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

SO ORDERED, this the 18th day of February, 2021.


LOUISE W. FLANAGAN
United States District Judge

Case 2:20-cv-00010-FL   Document 45   Filed 02/18/21   Page 23 of 23